ISABELLE ORD (SBN 198224)
isabelle.ord@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Telephone: 415.836.2500
Facsimile: 415.836.2501

OLIVER M. KIEFER (SBN 332830)
oliver.kiefer@us.dlapiper.com
ASHLEY BARTON (SBN 335673)
ashley.barton@us.dlapiper.com
MATTHEW C. DANAHER (SBN 351055)
matt.danaher@us.dlapiper.com
**DLA PIPER LLP (US)**
4365 Executive Drive, Suite 1100
San Diego, CA 92121-2133
Telephone: 858.677.1400
Facsimile: 858.677.1401

Attorneys for Defendant
HILTON WORLDWIDE HOLDINGS INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

VISHAL SHAH, JONATHAN GABRIELLI, and CHRISTINE Q. WILEY, as individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

HILTON WORLDWIDE HOLDINGS INC.,

Defendant.

Case No. 5:25-cv-01018-EKL

**DEFENDANT HILTON WORLDWIDE HOLDINGS INC.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: June 11, 2025
Time: 10:00 a.m.
Judge: Hon. Eumi K. Lee
Courtroom: Courtroom 7
San Jose Courthouse
280 South First Street, 4th Fl.
San Jose, CA 95113

Complaint Filed: January 31, 2025

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE THAT on June 11, 2025 at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Eumi K. Lee, United States District Judge, Northern District of California, located at San Jose Courthouse, 280 South First Street, Courtroom 7, 4th Floor, San Jose, California 95113, Defendant Hilton Worldwide Holdings Inc. ("Hilton Holdings") will, and hereby does, move for an order dismissing the Complaint of Plaintiffs Vishal Shah, Jonathan Gabrielli, and Christine Q. Wiley ("Plaintiffs") under Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing, Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, and Federal Rule of Civil Procedure 12(b)(6) for failure to state claims upon which relief may be granted. The Motion is based upon this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the Request for Judicial Notice, the Declarations of Matthew C. Danaher and James O. Smith, all pleadings and papers on file in this matter, and upon such argument and other matters as may be presented at the time of the hearing or otherwise.

Hilton Holdings moves to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(1) on the ground that Plaintiffs fail to allege an actual and concrete injury-in-fact sufficient to confer Article III standing, instead alleging only a mere hypothetical injury.

Hilton Holdings also moves to dismiss under Federal Rule of Civil Procedure 12(b)(2) on the ground that Plaintiffs fail to establish that this Court may exercise either general or specific personal jurisdiction over Hilton Holdings because Hilton Holdings is not domiciled in California and did not expressly aim the conduct alleged at California. *See* Declaration of James O. Smith ("Smith Decl") ¶ 3. The failure to establish subject matter jurisdiction and personal jurisdiction results in dismissal. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).

Hilton Holdings moves to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiffs fail to: (1) state an invasion of privacy or intrusion upon seclusion claim because Plaintiffs do not allege Hilton Holdings engaged in intentional or offensive conduct; (2) plead a violation of the California Invasion of Privacy Act,

California Penal Code § 631(a) ("CIPA") because (i) Hilton Holdings was an intended party of any "communications," (ii) Plaintiffs fail to allege Hilton Holdings acted with the requisite intent, (iii) Plaintiffs cannot establish Hilton Holdings intended to aid and abet unlawful conduct by third parties; and (iv) Plaintiffs fail to allege the interception of "contents" of a communication; (3) plead a violation of CIPA, California Penal Code § 638.51 because the statute does not apply to the internet; (4) plead fraud, deceit and/or misrepresentation, breach of contract, and breach of implied covenant of good faith and fair dealing claims because (i) they fail to adequately allege damages, (ii) their equitable claims and remedies are foreclosed because legal remedies are adequate, (iii) their unjust enrichment claim is duplicative of the contract claim, (iv) their breach of implied covenant claim is superfluous, and (v) they fail to plead the requisite knowledge or intent under Rule 9(b) to support their fraud claim; and (5) plead a trespass to chattels claim because no significant interference with the functioning of Plaintiffs' devices occurred.

Dated: March 28, 2025

DLA PIPER LLP (US)

By: /s/ *Isabelle L. Ord*
ISABELLE ORD
*Attorneys for Defendant*
*HILTON WORLDWIDE HOLDINGS INC.*

# TABLE OF CONTENTS


Page

I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 2

A. The Hilton.com Website ........ 2

B. Plaintiffs' Interactions with Hilton.com ........ 3

III. ISSUES TO BE DECIDED ........ 3

IV. LEGAL STANDARDS ........ 4

A. Rule 12(b)(1): Standing ........ 4

B. Rule 12(b)(2): Personal Jurisdiction ........ 4

C. Rule 12(b)(6): Failure to State a Claim ........ 4

V. PLAINTIFFS SUFFERED NO INJURY-IN-FACT AND LACK STANDING ........ 5

VI. THE COURT LACKS PERSONAL JURISDICTION OVER HILTON HOLDINGS ........ 7

VII. CLAIMS 1–2: PLAINTIFFS' INVASION OF PRIVACY CLAIMS FAIL TO ALLEGE INTENTIONAL OR "HIGHLY OFFENSIVE" CONDUCT ........ 10

VIII. CLAIMS 3–4: PLAINTIFFS' CIPA CLAIMS FAIL TO ALLEGE INTENT OR CONTENTS OF COMMUNICATIONS, AND CONTAIN OTHER DEFICIENCIES ........ 12

A. The Section 631(a) Wiretapping Claim Fails to Allege the Contents of Plaintiffs' Communications or Intent to Commit an Unlawful Wiretap ........ 12

1. Plaintiffs cannot state a claim under section 631(a)'s first three clauses ........ 12

2. Plaintiffs fail to allege aiding and abetting liability under the fourth clause ........ 14

B. Plaintiffs' Section 638.51 Pen Register Claim Fails Because It Does Not Apply to the Internet and, Regardless, Statutory Exclusions Apply ........ 16

IX. CLAIMS 5-8: PLAINTIFFS' FRAUD, CONTRACT, AND QUASI-CONTRACT CLAIMS FAIL TO ALLEGE DAMAGES AND SUFFER FURTHER DEFICIENCIES ........ 18

A. Claims 5, 7, 8 Fail for Lack of Damages ........ 18

B. Plaintiffs' Equitable Claims and Remedies are Foreclosed by Sonner ........ 19

C. Plaintiffs' Unjust Enrichment Claim is Duplicative of the Contract Claim ........ 20

D. Plaintiffs' Breach of Implied Covenant Claim is Superfluous ............................. 21

E. Plaintiffs Do Not Adequately Plead the Requisite Knowledge or Intent to Support their Fraud Claim ............................. 21

X. CLAIM 9: THE TRESPASS TO CHATTELS CLAIM FAILS TO ALLEGE INTENTIONAL CONDUCT OR SIGNIFICANT INTERFERENCE WITH POSSESSION ............................. 22

XI. CONCLUSION ............................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AMA Multimedia, LLC v. Wanat*,
970 F.3d 1201 (9th Cir. 2020) .... 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .... 4

*B.K. v. Desert Care Network.*,
2024 WL 5338587 (C.D. Cal. Aug. 22, 2024) .... 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .... 4

*Bennett v. Ohio Nat'l Life Assurance Corp.*,
309 Cal. Rptr. 3d 780 (Cal. Ct. App. 2023) .... 18

*Best Carpet Values, Inc. v. Google, LLC*,
90 F.4th 962 (9th Cir. 2024) .... 22

*In re BPS Direct, LLC*,
705 F. Supp. 3d 333 (E.D. Pa. 2023) .... 6

*Casillas v. Berkshire Hathaway Homestate Ins. Co.*,
294 Cal. Rptr. 3d 841 (Cal. Ct. App. 2022) .... 23

*Cedar Park Assembly of God of Kirkland, Washington v. Kreidler*,
2025 WL 716341 (9th Cir. Mar. 6, 2025) .... 4

*Cole-Parmer Instrument Co. LLC v. Pro. Lab'ys, Inc.*,
2021 WL 3053201 (N.D. Cal. July 20, 2021) .... 9

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .... 11

*Daniels-Hall v. National Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) .... 5, 23

*Dillon v. Avis Budget Grp.*,
2018 WL 3475529 (C.D. Cal. 2018) .... 8

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .... 22, 23

*Elliot v. Cessna Aircraft Co.*,
2021 WL 2153820 (C.D. Cal. May 25, 2021) .... 9

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) .......... 14

*In re Facebook Internet Tracking Litig.*,
140 F. Supp. 3d 922 (N.D. Cal. 2015) .......... 5, 7

*Fladeboe v. Am. Isuzu Motors Inc.*,
58 Cal. Rptr. 3d 225 (Cal. Ct. App. 2007) .......... 18

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) .......... 7

*Gabrielli v. Insider, Inc.*,
2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) .......... 6

*Gerlinger v. Amazon.Com, Inc.*,
311 F. Supp. 2d 838 (N.D. Cal. 2004) .......... 20

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) .......... 7, 8

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 14, 19

*In re Google, Inc. Privacy Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 11

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 13

*Griffith v. Tiktok, Inc.*,
697 F. Supp. 3d 963 (C.D. Cal. 2023) .......... 19

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......... 10, 11

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .......... 10

*Heiting v. FKA Distributing Co.*,
2025 WL 736594 (C.D. Cal. Feb. 3, 2025) .......... 5

*Heiting v. Marriott Int'l, Inc.*,
743 F. Supp. 3d 1163 (C.D. Cal. Aug. 5, 2024) .......... 8

*Heiting v. Taro Pharms. USA*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......... 13

*Helm v. Alderwoods Grp., Inc.*,
696 F. Supp. 2d 1057 (N.D. Cal. 2009) .......... 21

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 693 (2024) .......... 9

*Hubbard v. Google LLC*,
2024 WL 3302066 (N.D. Cal. July 1, 2024) .......... 18, 19, 20

*Hughes v. Vivint, Inc.*,
2024 WL 5179916 (C.D. Cal. July 12, 2024), *adopted*, 2024 WL 5179917 (C.D. Cal. Aug. 5, 2024) .......... 6

*Intel Corp. v. Hamidi*,
71 P.3d 296 (Cal. 2003) .......... 22, 23

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 11, 22, 23

*Jayone Foods, Inc. v. Aekyung Indus. Co.*,
242 Cal. Rptr. 3d 705 (Cal. Ct. App. 2019) .......... 8

*Jones v. L.A. Cent. Plaza LLC*,
74 F.4th 1053 (9th Cir. 2023) .......... 4

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 13

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 11

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 4

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 12

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) .......... 4

*MG Freesites Ltd. v. DISH Techs. L.L.C.*,
712 F. Supp. 3d 1318 (N.D. Cal. 2024) .......... 8

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) .......... 13

*Mikulsky v. Noom, Inc.*
682 F. Supp. 3d 855 (S.D. Cal. 2023) .......... 5, 6

*Moledina v. Marriott Int'l, Inc.*,
635 F. Supp. 3d 941 (C.D. Cal. 2022) .......... 8

*Moore v. Carhartt, Inc.*,
2024 WL 1337899 (S.D. Cal. Mar. 28, 2024) ..... 9

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ..... 4

*Nichols v. Guidetoinsure, LLC*,
730 F. Supp. 3d 935 (N.D. Cal. 2024) ..... 8

*Paracor Fin. v. Gen. Elec. Capital Corp.*,
96 F.3d 1151 (9th Cir.1996) ..... 20

*Ruiz v. Gap, Inc.*,
380 F. App'x 689 (9th Cir. 2010) ..... 18

*Saeedy, et al. v. Microsoft Corp.*,
2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ..... 6, 7

*Sch. Dist. of Okaloosa Cnty. v. Superior Ct.*,
68 Cal. Rptr. 2d 612 (Cal. Ct. App. 1997) ..... 4

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ..... 4

*Shulman v. Group W Productions, Inc.*,
955 P.2d 469 (Cal. 1998) ..... 10

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422 (2007) ..... 1

*Smith v. Maryland*,
442 U.S. 735 (1979) ..... 16

*Smith v. YETI Coolers, LLC*,
2024 WL 4539578 (N.D. Cal. Oct. 21, 2024) ..... 14

*Smith v. YETI Coolers, LLC*,
2025 WL 877127 (N.D. Cal. Mar. 14, 2025) ..... 14

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ..... 19, 20

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016), *as revised* (May 24, 2016) ..... 5

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ..... 13

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ..... 4

*Tavernetti v. Superior Ct.*,
583 P.2d 737 (Cal. 1978) .......... 12

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 6

*United States v. Gonzalez, Inc.*,
412 F.3d 1102 (9th Cir. 2005), *amended on denial of reh'g*, 437 F.3d 854 (9th Cir. 2006) .......... 16

*Voltage Pictures, LLC v. Gussi S.A. de CV*,
92 F.4th 815 (9th Cir. 2024) .......... 4

*Walden v. Fiore*,
571 U.S. 277 (2014) .......... 9

*Welborn v. IRS*,
218 F. Supp. 3d 64 (D.D.C. 2016) .......... 7

*White v. Lee*,
227 F.3d 1214 (9th Cir. 2000) .......... 4

*Will Co. v. Lee*,
47 F.4th 917 (9th Cir. 2022) .......... 9

*Wilson v. Google LLC*,
2025 WL 901941 (N.D. Cal. Mar. 25, 2025) .......... 15

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 11

*Yunker v. Pandora Media, Inc.*,
2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) .......... 23

*Zepeda v. PayPal, Inc.*,
777 F. Supp. 2d 1215 (N.D. Cal. 2011) .......... 21

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 13

**Statutes**

Cal. Penal Code § 631 .......... 3

Cal. Penal Code § 631(a) .......... 12, 13, 14, 15

Cal. Penal Code §§ 638.50–53 .......... 17

Cal. Penal Code § 638.50(b) .......... 17

Cal. Penal Code § 638.51 .......... 3, 16, 18

Cal. Penal Code § 638.52 .......... 16

Cal. Penal Code § 638.52(c) .......... 16

Cal. Penal Code § 638.52(d)(1) .......... 16

Cal. Penal Code § 638.52(d)(3) .......... 16

**Other Authorities**

Fed. R. Civ. P. 9(b) .......... 2, 21

Fed. R. Civ. P. 12(b)(1) .......... 4

Fed. R. Civ. P. 12(b)(2) .......... 4

Fed. R. Civ. P. 12(b)(6) .......... 4

Senate Committee on Public Safety Analysis of California Assembly Bill 929, California 2015-2016 Regular Session (June 16, 2015) .......... 17

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This lawsuit is filed in the wrong court by serial litigants and is without merit. The Complaint should be dismissed because Plaintiffs fail to allege an injury-in-fact sufficient to confer Article III standing stemming from their brief interactions with www.hilton.com (the "Website"). The Complaint should also be dismissed because there is no basis for either general or specific personal jurisdiction over Hilton Holdings for Plaintiffs' alleged wrongs. Hilton Holdings is a holding company that is not registered to do business in California. Subject matter jurisdiction and personal jurisdiction are threshold issues. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). The Court may consider either jurisdictional challenge first, but the result is fatal: the Complaint should be dismissed, and the Court need not proceed to the merits of the claims. *See id.* at 423 ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction."). The Court's analysis should end here, but the Complaint also fails to plausibly state a single claim for relief.

Plaintiffs allege that in 2023 and 2024, they visited the Website "to browse information about Hilton's hotels and resorts." Compl. ¶¶ 75, 83, 91. The crux of Plaintiffs' allegations is that, upon visiting the Website, they were presented with a cookie banner that allowed them to "Opt Out" of certain common website cookies, but certain cookies were not disabled and transmitted data to third parties. *See id.* ¶¶ 25, 76-77, 84-85, 92-93. Absent from Plaintiffs' Complaint is any allegation that Hilton Holdings ***intended*** this malfunction—or that it actually caused Plaintiffs' private information to be collected or disclosed to third parties. Accordingly, Plaintiffs' sprawling Complaint, alleging everything from fraud to wiretapping, should be dismissed for multiple, independent reasons:

*First*, Plaintiffs fail to allege they suffered an actual injury-in-fact sufficient to confer Article III standing because they do not clearly allege any of their personal information was actually collected or disclosed or that they were injured by any alleged disclosure.

*Second*, there is no basis to exercise general or specific personal jurisdiction over Hilton Holdings stemming from Plaintiffs' brief Website visits, because Hilton Holdings is a Delaware

entity headquartered in Virginia, and a holding company that is not registered to do business in California. Further, the Complaint fails to allege Hilton Holdings expressly targets Californians.

*Third*, Plaintiffs' invasion of privacy and intrusion upon seclusion claims fail to allege any intentional or "highly offensive" conduct.

*Fourth*, Plaintiffs' CIPA claims fail because they do not allege Hilton Holdings or any third party intended to commit an unlawful "wiretap" and Plaintiffs' expressly plead themselves out of their novel "pen register" theory by alleging the cookies can generally capture "some" data elements that can be "contents" of communications.

*Fifth*, Plaintiffs' claims for fraud, breach of contract, and breach of the implied covenant of good faith and fair dealing fail to allege damages, their equitable claims and remedies are foreclosed because money damages are adequate, their unjust enrichment claim is duplicative of the contract claim, their breach of implied covenant claim is superfluous, and they fail to plead the requisite knowledge or intent to support their fraud claim to satisfy Rule 9(b).

*Sixth*, Plaintiffs' trespass to chattels claim fails because Plaintiffs do not allege intentional conduct or a significant interference with their devices.

For each of these reasons, the Complaint should be dismissed with prejudice.

## II. STATEMENT OF FACTS

### A. The Hilton.com Website

Hilton Holdings "is a Delaware corporation with its headquarters and principal place of business in McClean, Virginia." Compl. ¶ 9. It is the ultimate parent of a global hospitality enterprise. *See id.* ¶ 22. According to the Complaint, Hilton Holdings "owns and operates" the Website, which visitors may use to make hotel reservations and browse information about Hilton hotels. *See id* ¶ 22. The Website contains first and third-party cookies (*see id.* ¶ 23) and had a cookie banner (the "Cookie Banner"), which immediately displayed when a visitor navigated to the Website. *See id.* ¶ 25. The Cookie Banner informed visitors that the Website contains "cookies and similar technologies," provides a link to the Hilton Global Privacy Statement, and also provides a "Do Not Sell My Personal Information" link. *Id.* The Cookie Banner allowed visitors to select an "Opt Out" button to "opt out of cookies and similar technologies" identified

in the Hilton Global Privacy Statement, which describes how information is collected from the use of the Website and shared with third parties. See *id.* ¶ 1, n.1.

**B. Plaintiffs' Interactions with Hilton.com**

Plaintiffs allege they visited the Website in either 2023 or 2024 "to browse information about Hilton's hotels and resorts." Compl. ¶¶ 75, 83, 91. Plaintiffs do not allege they booked reservations, searched for specific properties, entered information into form fields, or interacted with the Website in a particular way. *See generally id.* On the Website, Plaintiffs claim they encountered the Cookie Banner and selected the "Opt Out" button on the Cookie Banner. *See id.* ¶¶ 76-77, 84-85, 92-93. Plaintiffs allege that despite clicking the "Opt Out" button, third-party tracking technology, such as cookies, continued to function on Plaintiffs' devices. *See id.* ¶¶ 80, 88, 96. The Complaint claims that as a result, Plaintiffs' "private" communications with the Website were intercepted by and disclosed to the third-party cookie providers. Plaintiffs do not allege the nature of their "private" communications or that any Plaintiff took any substantive actions on the Website beyond interacting with the Cookie Banner. *See id.* ¶¶ 80, 88, 96. Plaintiffs also do not allege that Hilton Holdings intentionally configured the Cookie Banner to malfunction, or that tracking occurred other than due to a good faith error. *See generally id.*[1]

## III. <u>ISSUES TO BE DECIDED</u>

A. Have Plaintiffs sufficiently pled injury-in-fact to establish Article III standing?

B. Have Plaintiffs sufficiently pled personal jurisdiction over Hilton Holdings?

C. Have Plaintiffs sufficiently stated claims for: (1) invasion of privacy; (2) intrusion upon seclusion; (3) wiretapping in violation of CIPA § 631; (4) use of a pen register in violation of CIPA § 638.51; (5) fraud, deceit, and/or misrepresentation; (6) unjust enrichment (7) breach of contract; (8) breach of the implied covenant for good faith and fair dealings; and (9) trespass to chattels?

---

[1] Every Hilton Honors member agrees to the Hilton Honors Terms & Conditions and Hilton Site Usage Agreement, which contain, among other terms, a forum-selection clause specifying all lawsuits must be filed in the Eastern District of Virginia and a class-action waiver. Based on the information in the Complaint, Hilton is presently not able to confirm whether Plaintiffs are subject to these agreements but reserves all rights.

## IV. LEGAL STANDARDS

### A. Rule 12(b)(1): Standing

A complaint should be dismissed if the court lacks subject matter jurisdiction due to a plaintiff's lack of Article III standing. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *see also Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Cedar Park Assembly of God of Kirkland, Washington v. Kreidler*, 2025 WL 716341, at *5 (9th Cir. Mar. 6, 2025) (quoting *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023)). The plaintiff, as "[t]he party invoking federal jurisdiction[,] bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

### B. Rule 12(b)(2): Personal Jurisdiction

"[P]ersonal jurisdiction refers to a court's power over a particular defendant[.]" *Voltage Pictures, LLC v. Gussi S.A. de CV*, 92 F.4th 815, 824 (9th Cir. 2024). "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007). "[T]he burden of proof is on the plaintiff to establish, by a preponderance of the evidence, a basis for jurisdiction." *See Sch. Dist. of Okaloosa Cnty. v. Superior Ct.*, 68 Cal. Rptr. 2d 612, 615 (Cal. Ct. App. 1997).

### C. Rule 12(b)(6): Failure to State a Claim

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts do not have to

"accept as true allegations . . . that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

## V. PLAINTIFFS SUFFERED NO INJURY-IN-FACT AND LACK STANDING

The Court should dismiss the Complaint because Plaintiffs lack Article III standing. Plaintiffs allege two theories of harm: (i) a privacy interest in the information they provided on the Website, and (ii) diminishment of the value of their information. Neither amount to an injury-in-fact sufficient to supply Article III standing.

A plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 331 (2016), *as revised* (May 24, 2016). Rather, "[a] plaintiff establishes an injury in fact when she shows that she suffered 'an invasion of a legally protected interest' that is "concrete and particularized." *Heiting v. FKA Distributing Co.*, 2025 WL 736594, at *2 (C.D. Cal. Feb. 3, 2025) (quoting *Spokeo*, 578 U.S. at 339).

***No Alleged Collection or Disclosure of Plaintiffs' Personal Information*:** "[S]ince this is a class action, at least one of the named plaintiffs must have suffered an injury in fact." *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 930 (N.D. Cal. 2015). While the Complaint defines a series of data elements as "Private Communications" that *may* be disclosed through cookies by Website users at large, Compl. ¶¶ 3, 22, 29, 33, 114, 144, 176, the Complaint does not allege that ***Plaintiffs themselves*** entered any personal information on the Website or took any action on the Website other than merely "brows[ing for] information about Hilton's hotels and resorts." *See* Compl. ¶¶ 75, 83, 91. Plaintiffs do not allege they provided any private information to Hilton through their interactions with the Website. Because there was no collection of private information, Plaintiffs cannot, and do not, allege the disclosure of private information.

In website "wiretapping" and similar cases, courts routinely hold plaintiffs lack Article III standing where, as here, plaintiffs fail to identify the personal information ***they*** entered on a defendant's website or whether the defendant actually collected the plaintiff's personal information. *See, e.g.*, *Mikulsky v. Noom, Inc.* 682 F. Supp. 3d 855, 864-65 (S.D. Cal. 2023) (collecting cases).

In *Mikulsky*, the plaintiff alleged a website operator used "session replay" software to "track and analyze website user interactions," capturing "mouse movements" and user generated information entered into form fields, the URLs of webpages visited, and other electronic communications. *Id.* at 860. The plaintiff alleged this software captured her "personal information" through details she entered into form fields on the website. *Id.* Nonetheless, the court concluded the plaintiff lacked standing. *Id*. at 865. The court reasoned that the plaintiff's failure to specify what "personal information" ***the plaintiff*** inputted on the website was fatal to alleging an injury-in-fact because the plaintiff's conclusory allegations did not allow the court to determine whether the information bore "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *See id.* at 864-65; *see also In re BPS Direct, LLC*, 705 F. Supp. 3d 333, 350-51 (E.D. Pa. 2023) ("[T]he mere fact Website Users allege [the defendants] intercepted electronic communications does not confer standing . . . [e]ven if the type of harm a statute is designed to protect resembles a type of harm traditionally protected, we cannot find harm where there is none.").

As Plaintiffs should know from their other litigation forays, the same result follows here. The Complaint does not allege Hilton Holdings collected ***Plaintiffs'*** "Private Communications" or that Hilton or third parties obtained any information about them through their limited use of the Website. Instead, Plaintiffs allege only an illusory harm based on a series of hypothetical and generalized allegations—the opposite of "concrete" and "particularized." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "As Plaintiff[s do] not clearly allege what personalized information of [theirs] was actually collected, [they] do[] not identify any harm to [their] privacy" and fail to establish standing. *Hughes v. Vivint, Inc.*, 2024 WL 5179916, at *5 (C.D. Cal. July 12, 2024), *adopted*, 2024 WL 5179917 (C.D. Cal. Aug. 5, 2024); *see also Gabrielli v. Insider, Inc.*, 2025 WL 522515, at *4 (S.D.N.Y. Feb. 18, 2025) (dismissing CIPA claims brought by ***Plaintiff Gabrielli*** for failure to allege an injury-in-fact); *Saeedy, et al. v. Microsoft Corp.*, 2023 WL 8828852, at *7 (W.D. Wash. Dec. 21, 2023) (dismissing CIPA, invasion of privacy, and similar claims brought by ***Plaintiff Shah*** for failure to allege injury-in-fact).

/////

***No Diminution in Value*:** The Complaint summarily alleges "Plaintiffs and Class members have also suffered harm in the form of diminution of the value of their private and personally identifiable information and communications." Compl. ¶ 167. This ignores that "[c]ourts have routinely rejected the proposition that an individual's personal identifying information has an independent monetary value." *Welborn v. IRS*, 218 F. Supp. 3d 64, 78 (D.D.C. 2016) (collecting cases); *see also In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d at 930 ("When confronted with data privacy claims similar to the ones brought by Plaintiffs, courts have found insufficient for standing purposes generalized assertions of economic harm based solely on the alleged value of personal information."); *Saeedy*, 2023 WL 8828852, at *7 (noting ***Plaintiff Shah and co-Plaintiffs*** failed to allege "they provided their data in a transaction in which they were not paid the fair value for the data provided.").

Here, the Complaint makes only generalized allegations about the value of certain data. *See* Compl. ¶¶ 70-73. None of the Plaintiffs plausibly allege "that they personally lost the opportunity to sell their information or that the value of their information was somehow diminished after it was collected by [a third party.]" *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d at 931-32. Because Plaintiffs have not demonstrated the alleged "conduct resulted in some concrete and particularized harm, they have not articulated a cognizable basis for standing pursuant to Article III." *Id.* at 932. Accordingly, each of Plaintiffs' claims fail for lack of Article III standing, and the Court's analysis can and should end here.

## VI. <u>THE COURT LACKS PERSONAL JURISDICTION OVER HILTON HOLDINGS</u>

The Complaint should independently be dismissed because Plaintiffs fail to meet their burden to plead facts sufficient to demonstrate general or specific personal jurisdiction over Hilton Holdings.

***No General Personal Jurisdiction*:** Hilton Holdings is not subject to the Court's general personal jurisdiction. General personal jurisdiction "extends to 'any and all claims' brought against a defendant," but only exists "when a defendant is 'essentially at home' in the State." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (*quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The general rule is that general jurisdiction is only proper over a corporation in its state of incorporation or in the state of its principal place of

business." *MG Freesites Ltd. v. DISH Techs. L.L.C.*, 712 F. Supp. 3d 1318, 1325 (N.D. Cal. 2024). Hilton Holdings is a Delaware corporation with its headquarters and principal place of business in McLean, Virginia. Smith Decl. ¶ 3, Ex. A. It is an ultimate parent of many Hilton companies but does not itself operate hotels. *See id.* ¶ 4. Thus, Hilton Holdings is not registered to do business in California. *See id.* ¶ 5. It is therefore not "essentially at home" in California. *Goodyear*, 564 U.S. at 919. There is no basis to exercise of general personal jurisdiction over Hilton Holdings. *See Dillon v. Avis Budget Grp.*, 2018 WL 3475529, at *4 (C.D. Cal. 2018) (finding no general jurisdiction in California for defendant even though the defendant "operate[d] so many physical rental locations" in California); *Moledina v. Marriott Int'l, Inc.*, 635 F. Supp. 3d 941, 948 n.1 (C.D. Cal. 2022) (noting no general jurisdiction even though defendant operated numerous hospitality locations).

***No Specific Personal Jurisdiction*****:** The Court also lacks specific personal jurisdiction over Hilton Holdings for these claims. "District courts in California [] apply a three-part test to determine whether they can exercise specific personal jurisdiction over a defendant: (1) the non-resident defendant must ***purposefully direct*** its activities or consummate some transaction with the forum or resident thereof, or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice." *Nichols v. Guidetoinsure, LLC*, 730 F. Supp. 3d 935, 939 (N.D. Cal. 2024) (emphasis added). Plaintiffs bear the burden of pleading the first two prongs. *See Jayone Foods, Inc. v. Aekyung Indus. Co.*, 242 Cal. Rptr. 3d 705, 713 (Cal. Ct. App. 2019).

The Complaint fails to allege Hilton Holdings purposefully directed its operation of a globally accessible website to California. "Purposeful direction requires the defendant to have '(1) committed an intentional act, (2) ***expressly aimed*** at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Nichols*, 730 F. Supp. 3d at 939 (emphasis added) (citation omitted). Plaintiffs have the burden of sufficiently pleading each prong. *See Heiting v. Marriott Int'l, Inc.*, 743 F. Supp. 3d 1163, 1169 (C.D. Cal. Aug. 5, 2024).

/////

In internet cases, the express aiming requirement is not satisfied where the complaint fails to allege the defendant specifically targeted users within the forum. *See AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1210-11 (9th Cir. 2020) (analyzing federal long-arm rule). When the alleged harm relates to interaction with a website, the "[m]ere passive operation of a website is insufficient to demonstrate express aiming." *Will Co. v. Lee*, 47 F.4th 917, 922 (9th Cir. 2022); *see also Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 693 (2024) ("[O]peration of an interactive website does not, by itself, establish express aiming."). "This is so even if Defendant knows, through the data it collects and the tracking tools it uses, the whereabouts of the persons who access its website." *Moore v. Carhartt, Inc.*, 2024 WL 1337899, at *2 (S.D. Cal. Mar. 28, 2024). Instead, "something more" is required to demonstrate purposeful direction. *Moore*, 2024 WL 1337899, at *3.

Here, the Complaint fails to allege the required "something more." Plaintiffs merely allege that the Website is globally accessible, that Plaintiffs could access from California, (Compl. ¶ 22), and that Hilton Holdings "regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and services provided to persons in the State of California." *Id.* ¶ 11. While other Hilton entities may engage in business in California, Hilton Holdings is a holding company that is not registered to do business in California. Smith Decl. ¶ 4. Though Plaintiffs allege they visited the Website from California, (*id.* ¶ 147), the Supreme Court has unequivocally held that is not enough to establish a court's personal jurisdictional. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum."); *see also Elliot v. Cessna Aircraft Co.*, 2021 WL 2153820, at *3 (C.D. Cal. May 25, 2021) ("[T]he fact that [d]efendant maintains an interactive website that reaches potential customers in California does not establish specific jurisdiction.").

The Complaint's reference to California in Hilton's Global Privacy Statement does not change this result. *See Cole-Parmer Instrument Co. LLC v. Pro. Lab'ys, Inc.*, 2021 WL 3053201, at *6 (N.D. Cal. July 20, 2021) ("[A]s courts in this district have recognized, compliance with California's privacy policy does not by itself demonstrate that Defendant intentionally targeted consumers in California.") (internal quotation marks and citation omitted). Because the Complaint

fails to allege Hilton Holdings expressly aimed the Website to California visitors, the Court lacks specific personal jurisdiction over Hilton Holdings, and the Motion to Dismiss should be independently granted on these grounds, too. Because the Complaint fails to establish this Court's subject matter jurisdiction or personal jurisdiction over Hilton Holdings, the Court's analysis can and should end here.

## VII. CLAIMS 1–2: PLAINTIFFS' INVASION OF PRIVACY CLAIMS FAIL TO ALLEGE INTENTIONAL OR "HIGHLY OFFENSIVE" CONDUCT

Plaintiffs fail to state an intrusion upon seclusion or invasion of privacy claim. Courts consider these claims together because of the similarities in their analyses. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022). To determine whether plaintiffs have sufficiently alleged these claims, courts first ask whether the complaint alleges the defendant "'***intentionally intrude[d]***, physically or otherwise, upon the solitude or seclusion of another." *Shulman v. Group W Productions, Inc.*, 955 P.2d 469, 490 (Cal. 1998) (emphasis added) (citations omitted). Second, under either theory, courts determine whether the invasion of privacy is "sufficiently serious in nature, scope, and actual or potential impact to constitute an ***egregious breach of the social norms*** underlying the privacy right." *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1193 (N.D. Cal. 2020) (emphasis added) (internal quotation marks and citation omitted). Plaintiffs cannot satisfy either prong of this analysis because Hilton Holdings' alleged conduct was (at best) unintentional and falls short of egregious or highly offensive conduct.

First, the Complaint does not (and cannot) allege any intentional conduct. Instead, Plaintiffs allege the cookies placed on Plaintiffs' browsers were the result of defects in the "Opt Out" button rather than intentional conduct by Hilton Holdings. *See* Compl. ¶ 29 ("Defendant failed to prevent cookies from being transmitted . . ."). For this reason alone, these claims fail because they rely on an alleged error rather than intentional conduct. *See Shulman*, 955 P.2d at 490 (noting the defendant must have "intentionally intrude[d]"); Judicial Council of California Civil Jury Instruction (CACI) No. 1800; Intrusion into Private Affairs (2025 edition) ("[t]o establish that [defendant] violated [plaintiff's] right to privacy … [plaintiff] must prove all of the following: …2. That [defendant] ***intentionally intruded***.)" (emphasis added).

Second, courts routinely reject intrusion upon seclusion and invasion of privacy claims involving website interactions where the plaintiffs do not allege the collection of their private information. As set forth above, *see* discussion *supra* Section V, Plaintiffs do not allege they provided any personal information on the Website or that Hilton Holdings collected any private information about them. But even if Plaintiffs had alleged ***their*** personal information was involved, the information allegedly collected and disclosed would not be "highly offensive" if intercepted.

The Complaint generally alleges "Private Communications" includes browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behavior, device and user information, geolocation data, session information, and referring URLs. Compl. ¶ 20. Courts have concluded disclosure of each of the data elements identified in the Complaint are ***not*** "highly offensive" invasions of privacy. *See In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 973, 988 (N.D. Cal. 2014) (disclosure of "personal identifying information, browsing habits, search queries, responsiveness to ads, demographic information, declared preferences and other information" not highly offensive); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (same for browsing history); *Hammerling*, 615 F. Supp. 3d at 1089 (same for geolocation information); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (same for unique device identification number, geolocation information); *see also Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) (disclosure of data about plaintiffs' use of the "website to 'research . . . doctors,' 'look for providers,' and 'search for medical specialists'" was not highly offensive because 'nothing about [the] information relates specifically to plaintiffs' health'"). "Even disclosure of very personal information"—which is ***not*** present here—"has not been deemed an egregious breach of social norms sufficient to establish a constitutional right to privacy." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014) (internal quotation marks and citation omitted). Therefore, Plaintiffs fail to satisfy either prong of the combined inquiry, and each claim fails and should be dismissed.

/////

/////

## VIII. CLAIMS 3–4: PLAINTIFFS' CIPA CLAIMS FAIL TO ALLEGE INTENT OR CONTENTS OF COMMUNICATIONS, AND CONTAIN OTHER DEFICIENCIES

### A. The Section 631(a) Wiretapping Claim Fails to Allege the Contents of Plaintiffs' Communications or Intent to Commit an Unlawful Wiretap

Plaintiffs fail to state a wiretapping claim under Section 631(a) of CIPA. Section 631(a) prohibits "three distinct and mutually independent patterns of conduct: [(1)] intentional wiretapping, [(2)] wilfully attempting to learn the contents or meaning of a communication in transit over a wire, and [(3)] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Superior Ct.*, 583 P.2d 737, 741 (Cal. 1978). A "fourth basis for liability" exists for anyone who "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done" any of the other three 631(a) bases for liability. Cal. Penal Code § 631(a); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021). Plaintiffs fail to plead a violation of any of the four clauses.

1. Plaintiffs cannot state a claim under section 631(a)'s first three clauses

To the extent Plaintiffs plead a violation of the first three clauses, Plaintiffs' claim fails as a matter of law.

***Clause 1*****:** The "overwhelming weight of authority" limits the first clause of Section 631(a) to its plain text—i.e., "telegraph[s] or telephone wire[s]." Cal. Penal Code § 631(a); *Mastel*, 549 F. Supp. 3d at 1135 (holding the first clause is inapplicable to wiretapping via the Internet, including wiretapping on a smartphone's mobile web browser). It is inconsequential that Plaintiffs (vaguely) allege they visited the Website on a "device." *See, e.g.*, Compl. ¶¶ 79, 87, 95. Doing so does not bring the communications within the scope of the first clause, and there is no basis for liability. *See Mastel*, 549 F. Supp. 3d at 1135 (rejecting argument that a "tool or device" exclusive to iPhones qualifies as a "telephone instrument" under the first clause).

***Clause 2*****:** Hilton Holdings cannot be liable under the second clause because Plaintiffs allege Hilton Holdings "owns and operates" the Website. Compl. ¶ 22. Hilton Holding is therefore a party to the communication. "[I]t is established that a party to the communication

/////

cannot be liable for recording its own conversations under § 631(a)." *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 744 (N.D. Cal. 2023).

Moreover, Plaintiffs fail to allege their visits to the Website involved the interception of the "contents" of their communications, as required under the second clause. Under Section 631(a), the "contents" of a communication means "the substance, purport or meaning of [the] communication"—i.e., the "intended message conveyed by the communication," which is distinct from "record information regarding the characteristics of the message that is generated in the course of [that] communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021). Non-actionable "record information" includes "webpage titles, webpage keywords, the date and times of website visits, IP addresses, page visits, purchase intent signals, and add-to-cart actions." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 n.9 (N.D. Cal. 2023).

While Plaintiffs allege several types of "record information" are transmitted to third parties through interactions on the Website, they do not allege the "contents" of ***their*** communications were ever intercepted. Plaintiffs also do not allege they ever inputted data by completing form fields or that they conducted searches on the Website that could include the "contents" of their communications. Plaintiffs merely allege they selected the "Opt Out" button on the banner and then browsed the Website. Compl. ¶¶ 76-77, 84-85, 92-93. That is not enough.

A court "will not assume out of whole cloth what the contents of any communications were." *Heiting v. Taro Pharms. USA*, 709 F. Supp. 3d 1007, 1018, 1021 (C.D. Cal. 2023) (granting motion to dismiss). For example, in *Mikulsky v. Bloomingdale's, LLC*, the court granted a motion to dismiss similar website wiretapping claims finding that allegations the website operator intercepted "interactions" with the website were not sufficient to allege "contents" of communications within the purview of California's wiretapping statute. 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024); *see also Katz-Lacabe*, 668 F. Supp. 3d at 944 (recognizing that "[o]f the nine types of information that Plaintiffs allege were captured [by cookies], only two . . . (1) referrer URLs; and (2) data entered into form fields" potentially implicated liability under section 631(a)). Here, the absence of "allegations describing the content of those conversations" dooms

Plaintiffs' wiretapping claim. *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 833 (N.D. Cal. 2020) (dismissing breach of contract claims and noting generic allegations provided "no basis upon which to infer that Plaintiffs' 'sensitive personal information' is implicated").

Therefore, Plaintiffs' allegations fail to plausibly allege Hilton Holdings is liable under the second clause.

***Clause 3*****:** Section 631(a)'s third clause is derivative of the first two and necessarily fails here as a matter of law. *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) ("Plaintiffs must establish that the information at issue . . . was obtained through a violation of the first or second clauses. Because [p]laintiffs have not done so, they also have failed to plead a violation of the third clause of § 631(a).").

2. <u>Plaintiffs fail to allege aiding and abetting liability under the fourth clause</u>

The fourth clause of 631(a) applies when a defendant "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above this section." Cal. Penal Code § 631(a). To be liable under the fourth clause, Plaintiffs must allege that Hilton Holdings had "both knowledge of the conduct that will violate the statute ***and a purpose of aiding, agreeing with, or employing the third party to commit those acts***." *Smith v. YETI Coolers, LLC*, 2024 WL 4539578, at *4 (N.D. Cal. Oct. 21, 2024) (emphasis added).

***Hilton had no intent to unlawfully wiretap*****:** First, to the extent Plaintiffs allege Hilton Holdings had a purpose to violate section 631(a), their allegations are insufficient. For example, in *Esparza v. UAG Escondido A1 Inc.*, the plaintiff alleged that the defendant car dealership was liable under Section 631(a) on an aiding and abetting liability theory because the dealer embedded a third-party's chat software onto its website. *See* 2024 WL 559241, at *1 (S.D. Cal. Feb. 12, 2024). The court held that simply alleging a website operator knowingly implemented certain software on its website was insufficient to establish aiding and abetting liability under clause four. *Id.* at *6*; see also Smith v. YETI Coolers, LLC*, 2025 WL 877127, *1 (N.D. Cal. Mar. 14, 2025) (granting motion to dismiss and finding allegations that the defendant knew third party software was placed on its website to "collect[] consumers' sensitive information" were "insufficient to

support a plausible inference that [d]efendant knowingly agreed with or employed [the software provider] to engage in conduct that violated the wiretapping statute.").

Likewise, Plaintiffs here allege that Defendant willfully aided and abetted Third Parties "[b]y configuring the Website . . . in [a] manner" that it "caused Plaintiffs' [] browsers to store the Third Parties' cookies and to transmit those cookies alongside Private Communications . . . to the Third Parties without Plaintiff[s'] and Class members' consent." Compl. ¶ 142. However, Plaintiffs also allege that Hilton Holdings used a Cookie Banner to affirmatively disclose cookies and provide options to customize the Website experience. *See* Compl. ¶ 1. Plaintiffs' allegations, accepted as true, indicate Hilton did *not* intend to aid the surreptitious collection of communications. At best, the Complaint suggests that the alleged failure of the "Opt Out" button was a good faith mistake rather than Hilton Holdings' *intentional* conduct.

***The "Third Parties" had no intent to unlawfully wiretap*:** Second, in any event, Plaintiffs have failed to plead that the "Third Parties" have the predicate liability necessary for an aiding and abetting claim. As set forth above, the first clause of section 631(a) fails as a matter of law when applied to internet communications. Further, there is no underlying violation of the second clause because the "Third Parties" lack the requisite intent.

Alleging a website operator allows third-party cookies to operate on its website does not plausibly allege that those third parties intended to commit an unlawful wiretap. Indeed, courts have rejected similar allegations. *See, e.g., B.K. v. Desert Care Network.*, 2024 WL 5338587, at *3 (C.D. Cal. Aug. 22, 2024) (rejecting arguments that Meta "intentionally received and used user data" from the defendants because plaintiffs "d[id] not allege that Meta knew or should have known that the data it received from [d]efendants was collected without users' consent"). In *Wilson v. Google LLC*, this Court recently confirmed this approach, denying a motion to dismiss where the complaint alleged the defendant "intentionally encourage[d]' website operators to use its tools in a way that circumvents users' privacy settings." 2025 WL 901941, at *6 (N.D. Cal. Mar. 25, 2025). Those allegations are nothing like the unintentional malfunction alleged here. Therefore, Plaintiffs fail to state a claim for aiding and abetting liability under the fourth clause. Their section 631(a) wiretapping claim fails.

### B. Plaintiffs' Section 638.51 Pen Register Claim Fails Because It Does Not Apply to the Internet and, Regardless, Statutory Exclusions Apply

Pen registers are devices law enforcement physically install to track every outbound number that a telephone dials, and trap and trace devices record every inbound number that a telephone receives by using electronic impulses to reveal the telephone number. *See Smith v. Maryland*, 442 U.S. 735, 736 n.1 (1979); *United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1112 (9th Cir. 2005), *amended on denial of reh'g*, 437 F.3d 854 (9th Cir. 2006). Plaintiffs allege that the third-party "cookies and the corresponding software code" each constitute "pen registers" because those cookies captured "the IP address and user-agent information" from Plaintiffs' computers. Compl. ¶ 155. This novel theory fails for numerous reasons.

***Plain Language*:** In 2015, the California Legislature enacted Section 638.51 and its accompanying statutes through A.B. 929 to allow California law enforcement agencies to obtain authorization to install pen register or trap and trace devices without running afoul of state law. *See* Request for Judicial Notice ("RJN"), Declaration of Matthew C. Danaher ("Danaher Decl."), Ex. A, Stats. 2015, Ch. 204, Sec. 2 ("An Act to add Sections 638.50, 638.51, 638.52, and 638.53 to the Penal Code") ("A.B. 929"). The plain language of California's pen register statutes limits their application to telephones. Among other requirements, a court order authorizing the use of a pen register or trap and trace device must specify the identity of the person "in whose name . . . the ***telephone line*** to which the pen register or trap and trace device is to be attached," and the number and location of the "***telephone line***" to which the pen register or trap and trace device would be attached. Cal. Penal Code § 638.52(d)(1), (3) (emphasis added). Moreover, section 638.52, also enacted as part of A.B. 929, provides that information acquired pursuant to a pen register or trap and trace device may only disclose location information "to the extent that the location may be determined from the ***telephone number***." Cal. Penal Code § 638.52(c) (emphasis added).

Thus, the plain language of A.B. 929 confirms it applies only to telephone numbers, not software that captures an IP address.

/////

***Legislative History*:** A.B. 929's legislative history underscores that the California legislature did not intend the statutes to apply to websites collecting IP addresses. A.B. 929 does not mention IP addresses or imply IP addresses are within the bill's purview. *See* RJN, Danaher Decl., Ex. B, Senate Committee on Public Safety Analysis of California Assembly Bill 929, California 2015-2016 Regular Session (June 16, 2015). Instead, the Legislative Counsel's Digest preceding the bill states that A.B. 929 "would clarify that any location information obtained by a pen register or a tra[p] and trace device is limited to the information that can be determined from the ***telephone number***." RJN, Danaher Decl., Ex. A, at 1 (emphasis added); *see also* Danaher Decl. Ex. B, at 11 ("Pen registers and track and trace devices generally track incoming and outgoing ***telephone calls***.") (emphasis added). The legislative history does not suggest the bill was intended to apply to websites or the collection of IP addresses or "user-agent information." And, given that A.B. 929 was enacted ***in 2015***, there can be no plausible argument that the Legislature was unaware of IP addresses or internet communications when it passed the law. Plaintiffs' invocation of CIPA's preamble language regarding "new devices and techniques" does not extend the statutes beyond telephones and rings hollow here. Compl. ¶ 152.

***Plaintiffs Plead These Tools Generally Capture Contents*:** In any event, Plaintiffs' generalized wiretapping allegations defeat their specific pen register claim. The pen register statutes define a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, ***but not the contents*** of a communication." Cal. Penal Code § 638.50(b) (emphasis added). As set forth above, Plaintiffs' wiretapping claims fail because they don't allege intentional conduct or that *their* contents of communications were intercepted. By pleading that "some" contents of communications are intercepted, Plaintiffs also plead themselves out of a pen register claim. The pen register statutes have no language or exception for when "some of the information" is the contents of the communication. *See* Cal. Penal Code §§ 638.50-53. Here, Plaintiffs allege "***[s]ome*** of the information collected" by third party cookies on the Website "does not constitute the content of Plaintiffs' [] communications." Compl. ¶ 157 (emphasis added). Thus, Plaintiffs' pen register claim fails because the cookies on

the Website they allege ***generally*** collect some contents of communications cannot, by definition, be pen registers.

For these reasons, the Court should dismiss Plaintiffs' Section 638.51 claim.

## IX. CLAIMS 5-8: PLAINTIFFS' FRAUD, CONTRACT, AND QUASI-CONTRACT CLAIMS FAIL TO ALLEGE DAMAGES AND SUFFER FURTHER DEFICIENCIES

### A. Claims 5, 7, 8 Fail for Lack of Damages

Plaintiffs' claims for common law fraud, deceit and/or misrepresentation (Claim Five), breach of contract (Claim Seven), and breach of the implied covenant of good faith and fair dealing (Claim Eight) each fail because they do not allege actual damages. *See Fladeboe v. Am. Isuzu Motors Inc.*, 58 Cal. Rptr. 3d 225, 243 (Cal. Ct. App. 2007) ("[A] defrauded party is ordinarily limited to recovering out-of-pocket damages.") (citation omitted); *Ruiz v. Gap, Inc.*, 380 F. App'x 689, 692 (9th Cir. 2010) (rejecting nominal damages argument and noting "a breach of contract claim requires a showing of appreciable and actual damage."); *Bennett v. Ohio Nat'l Life Assurance Corp*., 309 Cal. Rptr. 3d 780, 784 (Cal. Ct. App. 2023) ("[B]reach of the implied covenant of good faith and fair dealing, *i.e.*, bad faith, include[s] a damages element.").

Plaintiffs' damages allegations under their fraud claim boil down to "diminution of the value of their private and personally identifiable information and communications." Compl. ¶ 167. Under their breach of contract and implied covenant claims, Plaintiffs allege that they "were damaged in an amount at least equal to the difference in value between that which was promised and Defendant's partial, deficient, and/or defective performance." Compl. ¶¶ 190, 201. Plaintiffs do ***not*** allege they intended to participate in a market for their data or paid for some service for which they did not receive full value.

In similar cases, courts resoundingly conclude these allegations fail to plausibly allege damages. For example, in *Hubbard v. Google LLC*, the plaintiffs alleged that Google collected and used data from YouTube users to generate advertising revenue, that "there is a market for consumers to monetize Personal Information," and that "published analyses and studies have placed a value in excess of $200 on an individual's Personal Information." 2024 WL 3302066,

at *9 (N.D. Cal. July 1, 2024). The court nonetheless found that "Plaintiffs do not allege sufficient facts from which the Court may reasonably infer that Defendants' misappropriation reduced the value of Plaintiffs' information" and an "explanation as to how does not appear so obvious that the Court may simply infer one." *Id.*; *see also Griffith v. Tiktok, Inc.*, 697 F. Supp. 3d 963, 978 (C.D. Cal. 2023) ("In the absence of allegations that [p]laintiff incurred actual financial losses, for example because she wished to sell her browsing data but was unable to do so or would be paid less for the data, she has not plausibly alleged economic injury.").

Likewise, Plaintiffs do not allege they paid money to browse the Website. "[A] benefit of the bargain measure of damages is intended to give the injured party the benefit of his bargain and insofar as possible to place him in the same position he would have been in had the promisor performed the contract." *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 833 (N.D. Cal. 2020) (internal quotation marks and citation omitted) (rejecting plaintiffs' benefit of the bargain theory because "the FAC fails to allege that Plaintiffs actually provided consideration for the security services which they claim were not provided"). Because Plaintiffs do not allege they paid anything to browse the Website, they have not adequately alleged damages to support their fraud, breach of contract, and breach of implied covenant claims. These claims should be dismissed.

**B. Plaintiffs' Equitable Claims and Remedies are Foreclosed by *Sonner***

"To obtain any equitable relief in federal court, a plaintiff must allege that they lack an adequate remedy at law." *Hubbard*, 2024 WL 3302066, at *4 (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)). The *Hubbard* court held that "Plaintiffs' allegations of harm focus on economic injuries already suffered," "Plaintiffs do seek damages to remedy their harm," and "the legal remedy of damages should serve as an adequate form of retrospective relief for such harm." *Id.* at *4-6 (dismissing "all of Plaintiffs' requests for equitable relief," including for injunctive relief, restitution, audit and accounting, and disgorgement of profits, and "all of their claims for unjust enrichment."). "[W]here the unjust enrichment claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action." *Id.* at *6 (citation omitted).

Here, Plaintiffs have not pled that they lack an adequate remedy at law, and, like in *Hubbard*, seek damages for alleged injuries they already suffered. *See* Compl. ¶¶ 118, 129, 148, 160, 172, and 191. Plaintiffs "rel[y] on 'the same factual predicates'" under their unjust enrichment claim as alleged under their fraud, deception, and/or misrepresentation claims, for which they allege an adequate legal remedy exists. *Compare* Compl. ¶ 175 ("Defendant created and implemented a scheme to increase its own profits through a pervasive pattern of false statements and fraudulent omissions.") *with id.* ¶ 163 ("Defendant fraudulently and deceptively informed Plaintiffs and Class members that they could 'Opt Out' of cookies.") *and* ¶ 165 ("Defendant also gained financially from, and as a result of, its breach."). Under *Sonner* and its progeny, Plaintiffs' unjust enrichment claim and all requests for equitable relief—including the Prayer for "[a]n order for full restitution," "[a]n order requiring Defendant to disgorge revenues and profits wrongfully obtained," and "[a]n order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint"—are foreclosed and should be dismissed. Compl. Prayer ¶¶ E, F, G.

**C. <u>Plaintiffs' Unjust Enrichment Claim is Duplicative of the Contract Claim</u>**

"Under California law, unjust enrichment is an action in quasi-contract." *Gerlinger v. Amazon.Com, Inc*., 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) (*citing Paracor Fin. v. Gen. Elec. Capital Corp*., 96 F.3d 1151, 1167 (9th Cir.1996)). "An action based on quasi-contract cannot lie where a valid express contract covering the same subject matter exists between the parties." *Id.*

Plaintiffs allege the existence of a contract and rely on the language of that alleged contract as the basis for their unjust enrichment claims. *Compare* Compl. ¶ 176 (under claim for unjust enrichment) ("Defendant was unjustly enriched . . . through its misrepresentation that users could "Opt Out" of cookies) *with id.* ¶ 186 (under claim for breach of contract) ("The Website's Privacy Statement contains enforceable promises that Defendant made to Plaintiffs [] including, . . . If you would like to opt out of the sale of your personal information, you may do so by clicking on the banner. . . ."). "Accordingly, a valid express contract covering the same subject matter exists between the parties, and therefore an action in quasi-contract is inappropriate." *Gerlinger v.*

*Amazon.Com, Inc.*, 311 F. Supp. 2d at 856 (N.D. Cal. 2004) (holding that Plaintiffs cannot plead unjust enrichment in the alternative when they rely on contract).

**D. Plaintiffs' Breach of Implied Covenant Claim is Superfluous**

"If the allegations in a breach of implied covenant claim do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215, 1221 (N.D. Cal. 2011). Here, for their breach of contract and implied covenant claims, Plaintiffs allege that "Defendant's relationship with its users is governed by the Website's Privacy Statement," quote the same provisions from that alleged contract, regurgitate the same word-for-word allegations in support of breach, and seek the same relief. *Compare* Compl. ¶ 185 *with id.* ¶ 193, *id.* ¶ 187 *with id.* ¶ 195, and *id.* ¶ 191 *with id.* ¶ 202. Since Plaintiffs' allegations in support for their claims for breach of the implied covenant and breach of contract are the same, the implied covenant claim must be dismissed.

**E. Plaintiffs Do Not Adequately Plead the Requisite Knowledge or Intent to Support their Fraud Claim**

Under California law, the elements of common law fraud are "misrepresentation, ***knowledge of its falsity***, ***intent to defraud***, justifiable reliance and resulting damage." *Helm v. Alderwoods Grp., Inc.*, 696 F. Supp. 2d 1057, 1079 (N.D. Cal. 2009) (emphasis added). Rule 9(b) requires these elements "must be pled with sufficient particularity." *Id.* at 1079-80 (N.D. Cal. 2009). Thus, under Rule 9(b), Plaintiffs must plead specific "facts demonstrating that defendants knew the statements were false when they made them." *Id.* at 1080 (dismissing fraud claims).

Plaintiffs here allege that the misrepresentations about the ability to "opt out" of certain cookies were "known exclusively to, and actively concealed by Defendant . . . at the time they were made. Defendant knew, or *should have known*, how the Website functioned . . . and the third-party cookies in use on the Website, through testing the Website, evaluating its performance metrics . . . or otherwise, and knew, or *should have known*, that the Website's programming

allowed the third-party cookies to be placed. . . ." Compl. ¶ 165 (emphasis added). Plaintiffs do not allege any specific facts to show that Hilton Holdings *knew* that the alleged statements were false aside from a vague and speculative reference to "testing" of the Website—and the remaining allegations suggest only that Hilton Holdings *should have known*—which does ***not*** amount to the requisite knowledge. Further, Plaintiffs fail to make *any* allegation that Defendant intended to defraud them. Just as Plaintiffs' wiretapping and trespass claims suggest only a mistake (*see* discussion *supra* section VIII.A.2 and *infra* section X), so too here the allegations do not support an inference of knowledge of falsity or intent to deceive. The fraud claim should be dismissed on this additional basis.

## X. CLAIM 9: THE TRESPASS TO CHATTELS CLAIM FAILS TO ALLEGE INTENTIONAL CONDUCT OR SIGNIFICANT INTERFERENCE WITH POSSESSION

Plaintiffs' trespass to chattels claim similarly fails. "Under California law, trespass to chattels 'lies where an ***intentional*** interference with the ***possession*** of personal property' causes injury." *Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 968 (9th Cir. 2024) (emphasis added) (quoting *Intel Corp. v. Hamidi*, 71 P.3d 296, 302 (Cal. 2003)). As set forth by the California Supreme Court in *Intel Corp. v. Hamidi*, "[u]nder California law, decisions finding electronic contact to be a trespass to computer systems have generally involved some actual or threatened interference with the computers' functioning." *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 846 (N.D. Cal. 2024) (internal quotation marks omitted) (citing *Hamidi*, 71 P.3d at 926). Accordingly, a plaintiff must plead their harm rises to "a significant reduction in service constituting an interference with the intended functioning of the system, which is necessary to establish a cause of action for trespass." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012).

Here, Plaintiffs' trespass to chattels claim alleges that Hilton Holdings "intentionally caused third party software code to be stored" on Plaintiffs' devices which "interfered" with Plaintiffs' ability to use their devices. Compl. ¶ 206. Just as Plaintiffs' wiretapping claims blame a mistake and not intentional conduct (*see supra* section VIII.A.2), here too the conclusory allegations of "intent" are belied by the allegation that cookies were placed on Plaintiffs' browsers in error. *See*

Compl. ¶ 29 ("Defendant failed to prevent cookies from being transmitted . . ."). Courts do not have to "accept as true allegations . . . that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall*, 629 F.3d at 998.

The Complaint also fails to explain how Hilton Holdings' alleged conduct caused "a significant reduction in service" of Plaintiffs' devices. *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1069. The Complaint makes only conclusory allegations claiming Plaintiffs experienced a "loss in value" and "[r]eduction of storage, disk space, and performance" of their devices (Compl. ¶ 207), but these vague claims do not constitute the "significant reduction in service" necessary to state a trespass to chattels claim. *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1069. Since *Intel*, courts have routinely rejected similar claims when there are no allegations regarding a "significant reduction in service constituting an interference." *Casillas v. Berkshire Hathaway Homestate Ins. Co.*, 294 Cal. Rptr. 3d 841, 849 (Cal. Ct. App. 2022) (collecting cases); *see, e.g.*, *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *16 (N.D. Cal. Mar. 26, 2013) (dismissing claim because allegation that defendant "installed unwanted code that consumes portions of the memory on [plaintiff's] mobile device" failed to state a trespass to chattels claim). This is because "*Intel* implied that trespass to chattels would not lie to protect interests in privacy[.]" *Casillas*, 294 Cal. Rptr. 3d at 848.

Plaintiffs' allegations resemble those recently rejected in this District. In *Doe I v. Google LLC*, the plaintiffs brought a trespass claim "based on the alleged intrusion of Google source code onto the plaintiffs' computing devices when they visit[ed] their healthcare providers' websites." *Doe*, 741 F. Supp. 3d at 846 (Chhabria, J.). The court reasoned that "nothing about the source code or the existence of cookies physically impairs the functioning of the plaintiffs' computing devices." *Id.* So too here. Plaintiffs have failed to allege that the cookies—which are merely "small text files" (Compl. ¶ 17) ubiquitous on the Internet—"physically impair[ed] the functioning" of Plaintiffs' devices. Therefore, Plaintiffs' trespass to chattels claim should be dismissed.

## XI. <u>CONCLUSION</u>

For the reasons stated, Hilton Holdings respectfully requests that the Court grant its Motion to Dismiss Plaintiffs' Complaint in its entirety with prejudice.

Dated: March 28, 2025

DLA PIPER LLP (US)

By: /s/ *Isabelle L. Ord* __
ISABELLE ORD
*Attorneys for Defendant*
*HILTON WORLDWIDE HOLDINGS INC.*