**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
kali@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
anthony@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISHAL SHAH, JONATHAN GABRIELLI, and CHRISTINE Q. WILEY, as individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HILTON WORLDWIDE HOLDINGS INC.,<br><br>Defendant. | Case No. 5:25-cv-01018-EKL<br><br>PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS<br><br>Date: June 11, 2025<br>Time: 10:00 a.m.<br>Judge: Hon. Eumi K. Lee<br>Courtroom: Courtroom 7<br>San Jose Courthouse<br>280 South First Street, 4th Fl.<br>San Jose, CA 95113 |

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1
II. STATEMENT OF FACTS ..... 2
III. LEGAL STANDARD ..... 3
IV. ARGUMENT ..... 3
A. Plaintiffs Plead a Concrete Injury-in-fact. ..... 3
B. The Court Has Personal Jurisdiction Over Hilton. ..... 7
C. Hilton's Scattershot 12(b)(6) Arguments Fail. ..... 11
1. Plaintiffs adequately plead their common law privacy claims. ..... 11
a. Plaintiffs adequately allege intent. ..... 11
b. Plaintiffs allege that Hilton's invasion of privacy was highly offensive. ..... 12
D. Plaintiffs Have Adequately Pled CIPA Claims. ..... 14
1. Plaintiffs allege "contents" were intercepted. ..... 14
2. Plaintiffs allege "aiding" under CIPA. ..... 15
3. CIPA section 638.51 is not limited to telephones. ..... 19
E. Plaintiffs Adequately Plead Damages for Fraud and Breach of Contract. ..... 20
F. Sonner Does Not Apply to Plaintiffs Claims. ..... 22
G. Plaintiffs' Unjust Enrichment Claim May Proceed. ..... 23
H. Plaintiffs' Breach of Implied Covenant of Good Faith Claim is Proper. ..... 23
I. Plaintiffs' Fraud and Misrepresentation Claims Are Sufficiently Pled. ..... 24
J. Plaintiffs Sufficiently Plead Trespass to Chattels. ..... 24
V. LEAVE TO AMEND SHOULD BE GRANTED ..... 25
VI. CONCLUSION ..... 26

# TABLE OF AUTHORITIES

## CASES

*A.J. v. LMND Med. Grp.*, No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) .......... 23

*AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020) .......... 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 3

*B.K. v. Desert Care Network*, No. 2:23-cv-05021-SPG-PD, 2024 U.S. Dist. LEXIS 152953 (C.D. Cal. Aug. 22, 2024) .......... 19

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990) .......... 25

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 3

*Blake v. Dierdorff*, 856 F.2d 1365 (9th Cir. 1988) .......... 11, 24

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 (9th Cir. 2010) .......... 8

*Briskin v. Shopify, Inc.*, No. 22-15815, 2025 U.S. App. LEXIS 9410 (9th Cir. Apr. 21, 2025) .......... passim

*Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 16

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 15

*Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760 (N.D. Cal. Mar. 10, 2022) .......... 24

*Bruton v. Gerber Prod. Co.*, 703 F. App'x 468 (9th Cir. 2017) .......... 23

*Calder v. Jones*, 465 U.S. 783 (1984) .......... 8

*Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 23

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020) .......... 5, 6, 7

*Cantrell v. City of Long Beach*, 241 F.3d 674 (9th Cir. 2001) .......... 4

*Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000 (N.D. Cal. 2018) .......... 16

*Cole-Parmer Instrument Co. LLC v. Pro. Lab'ys, Inc.*, No. 20-CV-08493-LHK, 2021 U.S. Dist. LEXIS 135383 (N.D. Cal. July 20, 2021) .......... 10

*Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig.)*, 956 F.3d 589 (9th Cir. 2020) .......... passim

*Doe v. Amgen, Inc.*, No. 2:23cv7448-MCS-SSC, 2024 U.S. Dist. LEXIS 144579 (C.D. Cal. Aug. 13, 2024) .......... 16

*Doe v. Google LLC*, 741 F. Supp. 3d 828, 846 (N.D. Cal. 2024) .......... 25

*eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058 (N.D. Cal. 2000) .......... 25

*Elation Sys., Inc. v. Fenn Bridge LLC*, 71 Cal. App. 5th 958, 286 Cal. Rptr. 3d 762 (2020) .......... 22

*ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016) .......... 24

*Esparza v. UAG Escondido A1 Inc.*, No. 23cv0102 DMS(KSC), 2024 U.S. Dist. LEXIS 24429 (S.D. Cal. Feb. 12, 2024) .......... 17

*Fields v. Wise Media, LLC*, No. 12-CV-05160 WHA, 2013 U.S. Dist. LEXIS 136914, 2013 WL 5340490 (N.D. Cal. Sept. 24, 2013) .......... 25

*Fladeboe v. Am. Isuzu Motors Inc.*, 58 Cal. Rptr. 3d 225 (Cal. Ct. App. 2007) .......... 21

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 19, 20

*Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592 (N.D. Cal. 2021)................................. 13

*Hawkins v. Kroger Co.*, 906 F.3d 763 (9th Cir. 2018) ............................................................ 12

*Heerde v. Learfield Commc'ns, LLC*, No. 2:23-cv-04493-FLA (MAAx), 2024 U.S. Dist. LEXIS 137781 (C.D. Cal. 2024)............................................................ 15

*Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085 (9th Cir. 2023) ...................................... 9

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272 (2009)............................................................ 11

*Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 Cal. Rptr. 2d 834, 865 P.2d 633 (1994)............................................................ 13

*Hubbard v. Google LLC*, No. 19-cv-07016-SVK, 2025 U.S. Dist. LEXIS 6588 (N.D. Cal. Jan. 13, 2025) ............................................................ 22

*In re BPS Direct, LLC*, 705 F. Supp. 3d 333 (E.D. Pa. 2023) ...................................................... 6

*In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015)................................................ 15

*In re Facebook Privacy Litig.*, 192 F. Supp. 3d 1053 (N.D. Cal. 2016)..................................... 22

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019)............................................................ 23

*In re Google Location History Litig.*, 514 F. Supp. 3d 1147 (N.D. Cal. 2021)......................... 13

*In re Google Referrer Header Privacy Litig.*, 465 F. Supp. 3d 999 (N.D. Cal. 2020) ............................................................ 21

*In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012)................................. 25

*In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650 (N.D. Cal. 2024) .............................. 25

*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014) ............................................... 14, 15

*In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113 (N.D. Cal. 2018)............................................................ 21

*Intel Corp. v. Hamidi*, 30 Cal.4th 1342 (2003)............................................................ 25

*James v. Walt Disney Co.*, 701 F. Supp. 3d 942 (N.D. Cal. 2023).................................... 16, 17

*Jones v. Ford Motor Co.*, 85 F.4th 570 (9th Cir. 2023)............................................................ 5

*Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023).............. 13, 15, 23

*Kenyon v. W. Union Tel. Co.*, 100 Cal. 454 (1893) ............................................................ 21

*Kotlarsz v. Integrity Vehicle Servs., Inc.*, No. 8:24-cv-00569-FWS-JDE, 2024 U.S. Dist. LEXIS 213565 (C.D. Cal. Sep. 3, 2024)............................................................ 16

*Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096 (C.D. Cal. 2023) ................................................... 5

*Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 U.S. Dist. LEXIS 130778 (N.D. Cal. Sep. 23, 2016)............................................................ 5

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218 (9th Cir. 2011)................................... 7

*Medoff v. Minka Lighting, LLC*, No. 2:22-cv-08885-SVW-PVC, 2023 U.S. Dist. LEXIS 81398 (C.D. Cal. May 8, 2023)............................................................ 22

*Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833 (S.D. Cal. 2024) ............................... 15

*Mikulsky v. Noom*, 682 F. Supp. 3d 855 (S.D. Cal. 2023)............................................................ 6

*Mirmalek v. L.A. Times Communs. LLC*, No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024)............................................................ 19, 20

*Nguyen v. Stephens Institute*, 529 F. Supp. 3d 1047 (N.D. Cal. 2021)...................................... 12

*PPG Indus., Inc. v. Transamerica Ins. Co.*, 20 Cal. 4th 310, 84 Cal. Rptr. 2d 455, 975 P.2d 652 (1999) ........ 21

*Raffin v. Medicredit, Inc.*, No. CV 15-4912-GHK (PJWx), 2016 U.S. Dist. LEXIS 181819 (C.D. Cal. Dec. 19, 2016) ........ 5

*Redstone M&A Grp., LLC v. Lasalle Capital Grp. Ii-A, L.P.*, 634 F. Supp. 3d 1251 (N.D. Ga. 2022) ........ 4

*Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955 (N.D. Cal. Oct. 23, 2019) ........ 13, 16

*Rodriguez v. Aquatic Sales Sols. LLC*, 735 F. Supp. 3d 1208 (C.D. Cal. 2024) ........ 8

*Rodriguez v. Ford Motor Co.*, No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685 (S.D. Cal. Dec. 3, 2024) ........ 14

*Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074 (N.D. Cal. May 21, 2021) ........ 13

*Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 1290 (N.D. Cal. Jan. 3, 2024) ........ 7, 22

*Romo v. Stewart Title of Cal.*, 35 Cal. App. 4th 1609, 42 Cal. Rptr. 2d 414 (Ct. App. 1995) ........ 21

*Ruiz v. Gap, Inc.*, 380 F. App'x 689 (9th Cir. 2010) ........ 21, 22

*Scheibe v. Perfect Keto Grp. Ltd. Liab. Co.*, 700 F. Supp. 3d 928 (S.D. Cal. 2023) ........ 22

*Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698 (9th Cir. 2016) ........ 24

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) ........ 8

*Shah v. Capital One Fin. Corp.*, No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677 (N.D. Cal. Mar. 3, 2025) ........ 23

*Shah v. Fandom, Inc.*, No. 24-cv-01062-RFL, 2024 U.S. Dist. LEXIS 193032 (N.D. Cal. Oct. 21, 2024) ........ 19, 20

*Shahnaz Zarif v. Hwareh.com, Inc.*, No. 23-cv-0565-BAS-DEB, 2025 U.S. Dist. LEXIS 26519 (S.D. Cal. Feb. 12, 2025) ........ 17

*Silver v. Stripe, Inc.*, No. 4:20-cv-08196-YGR, 2021 U.S. Dist. LEXIS 141090 (N.D. Cal. July 28, 2021) ........ 13

*Smith v. Yeti Coolers, LLC*, No. 24-cv-01703-RFL, 2024 U.S. Dist. LEXIS 194481 (N.D. Cal. Oct. 21, 2024) ........ 17, 18

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) ........ 2, 22

*Spokeo Inc. v. Robins*, 578 U.S. 330 (2016) ........ 3, 4

*Sprague v. Frank J. Sanders Lincoln Mercury, Inc.*, 120 Cal. App. 3d 412, 174 Cal. Rptr. 608, 610 (Ct. App. 1981) ........ 21

*St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024) ........ 1, 12, 15, 16

*Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732 (N.D. Cal. 2023) ........ 9

*Tribeca Cos., LLC v. First Am. Title Ins. Co.*, 239 Cal. App. 4th 1088 (2015) ........ 21

*United States v. Christensen*, 828 F.3d 763 (9th Cir. 2015) ........ 17

*Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U. S. 765 (2000) ........ 4

*Will Co. v. Ka Yeung Lee*, 47 F.4th 917 (9th Cir. 2022) ........ 10

*Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043 (N.D. Cal. 2018) .......... 14
*Williams v. Pac. Sunwear of Cal. LLC*, No. CV-24-02015-PHX-JJT, 2024 U.S. Dist. LEXIS 196954 (D. Ariz. Oct. 30, 2024) .......... 8
*Wilson v. Google*, No. 24-cv-03176-EKL, 2024 U.S. Dist. LEXIS 55629 (N.D. Cal. Mar. 25, 2025) .......... 18
*Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 1
*Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 15

**Statutes**

Cal. Civ. Code § 1709 .......... 28
Cal. Civ. Code § 3333 .......... 29
Cal. Civ. Code § 3360 .......... 29
Cal. Penal Code § 631 .......... 21
Cal. Penal Code § 631(a) .......... 18
Cal. Penal Code § 638.50(b) .......... 25
Cal. Penal Code § 638.51 .......... 19
Cal. Penal Code § 638.51(a) .......... 25
Cal. Penal Code § 638.51(b) .......... 26

**RULES**

Fed. R. Civ. P. 11 .......... 11
Fed. R. Civ. P. 12(b)(6) .......... 3, 11
Fed. R. Civ. P. 8(a)(3) .......... 22
Fed. R. Civ. P. 9(b) .......... 24

## I. INTRODUCTION

Plaintiffs Vishal Shah, Jonathan Gabrielli, and Christine Wiley ("Plaintiffs") bring this Complaint against Hilton Worldwide Holdings Inc. ("Defendant") for aiding third parties to collect California users' private communications ***against their express instructions***. Hilton surreptitiously placed third-party tracking cookies on the devices of California Website visitors, even after they explicitly rejected and opted out of such cookies. As a result, Hilton caused the third parties to collect vast swaths of user data, including, without limitation, "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data" ***despite promising not to do so***. ECF 1 ¶ 3. This deceptive practice is a highly offensive violation of Plaintiffs' privacy rights, as well as a breach of Defendant's promises. *See, e.g., St. Aubin v. Carbon Health Techs., Inc*., No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *36 (N.D. Cal. Oct. 1, 2024) ("defendant's representations that sensitive information would not be disclosed" made that disclosure highly offensive).

Hilton attempts to avoid liability for its blatant privacy violations by arguing that Plaintiffs lacks standing to sue because they do not allege an "injury in fact." But "a concrete injury for Article III standing purposes occurs when [a] third party tracks a person's internet browser activity without authorization." *Yockey v. Salesforce, Inc*., 688 F. Supp. 3d 962, 969–70 (N.D. Cal. 2023) (cleaned up).

Plaintiffs have also established that this Court has specific personal jurisdiction over Hilton. The Complaint pleads that Defendant (1) purposefully availed itself of California laws and/or directed its conduct at this forum and its residents, (2) that Plaintiffs' claims arise out of or relate to the Hilton's forum-related conduct, and (3) exercising jurisdiction over Hilton would be reasonable. Under controlling Ninth Circuit caselaw, "an interactive platform" such as an online store that "'expressly aims' its wrongful conduct toward a forum state by its 'own choice,'" has "purposefully directed" its conduct into that forum. *Briskin v. Shopify, Inc*., No. 22-15815, 2025 U.S. App. LEXIS 9410, at *41 (9th Cir. Apr. 21, 2025) (*en banc*). Plaintiffs allege that Hilton has done the same here by, at a minimum, leasing real estate within California, and that

their claims arise from Hilton's Website and leasing/hotel operations within this state. This is sufficient.

The remainder of Hilton's arguments can easily be dispensed with. Hilton insists that its actions were harmless error, but the Complaint alleges that Defendant owns and operates the Website, installed third-party resources that shared private user data with those third parties, promised to turn those resources off, and then did not do so. ECF 1 ¶¶ 16–22. Those are all intentional acts. Defendant's argument that its conduct was not "highly offensive" is based on the same outdated law as its standing arguments, and fails for the same reason. Hilton's arguments that Plaintiffs' fraud and breach of contract claims require "out-of-pocket" damages are similarly based on old law that has been overruled and/or distinguished from the claims asserted here. Its objections to Plaintiffs' equitable claims are similarly based on an outdated reading of *Sonner* that a mountain of decisions have rejected. In short, this Court should deny Hilton's motion in its entirety.

## II. STATEMENT OF FACTS

When consumers visit Hilton's ecommerce website (www.hilton.com, the "Website"), Hilton displays to them the following popup cookie consent banner in which Hilton offers Website users the option to opt-out of tracking cookies:




ECF 1 ¶ 25 (close up for readability). Hilton's Privacy Statement (which was accessible via the cookie consent banner shown above) again represented that Hilton California users could "opt out of the sale of [their] personal information . . . by clicking on the banner that appears on any Hilton website." *Id.* ¶ 36.

Despite its repeated representations that it would not use cookies or share user information with third parties if Website users clicked the "Opt Out" button, Hilton immediately caused several third parties – including Google LLC (Google and DoubleClick cookies), ByteDance Ltd. (TikTok cookies), Amazon.com, Inc., Microsoft Corporation (Bing cookies), Snap, Inc. (Snapchat cookies), Adobe Inc., and more (collectively, the "Third Parties") to install their cookies on Plaintiffs' computers. ECF 1 ¶ 30. Hilton thus caused the Third Party's use of cookies to collect users' personal information "including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers," and more ("Private Communications"). ECF 1 ¶ 27; *see id.* ¶¶ 20, 29. This resulted in disclosure not only of computer data such as IP and email addresses, but specific user communications such as search strings. The Third Parties used the personal information to profile users and target them with advertising for the Third Parties' own financial gain. *Id.* ¶¶ 37–69. This type of tracking and data sharing is exactly what Plaintiffs and Website users who opted-out of cookies sought to avoid.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). And the allegations need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

## IV. ARGUMENT

### A. Plaintiffs Plead a Concrete Injury-in-fact.

A "concrete" injury-in-fact is one that is "real" as opposed to "abstract." *Spokeo Inc. v. Robins*, 578 U.S. 330, 340 (2016). This distinction focuses on "de facto" versus hypothetical harms; "intangible" harms may still be concrete. *See id.* (discussing deprivations of rights as

concrete). In determining whether an intangible harm is concrete, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id*. at 340–341. Legislative histories are also helpful, because Congress "may elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." *Id*., citing *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U. S. 765, 775–777 (2000). "[S]tate law can [also] create interests that support standing in federal courts." *Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig.)*, 956 F.3d 589, 599 (9th Cir. 2020) (quoting *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001)).

Here, Plaintiffs allege multiple claims: invasion of privacy, breach of contract, and fraud/deceptive advertising. Defendant attacks Plaintiffs' invasion of privacy claims as insufficiently "concrete," but fails to address standing for the contract and deceptive advertising claims. *See In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 598–99 (distinguishing standing for CIPA and wiretapping claims from standing for trespass to chattels, fraud, larceny, and violations of the CDAFA, and analyzing them separately). Hilton's motion thus provides no basis for dismissing Plaintiffs' breach of contract and deceptive advertising/unfair business practice claims for lack of "concreteness." Nor could it. Plaintiffs' breach of contract claim is directly analogous to a traditional claim for breach of a non-disclosure agreement. *See, e.g.*, *Redstone M&A Grp., LLC v. Lasalle Capital Grp. Ii-A, L.P.*, 634 F. Supp. 3d 1251, 1253 (N.D. Ga. 2022) (party to NDA has standing to sue for breach). NDAs traditionally cover future plans and technical data such as that disclosed here, and its disclosure is a concrete injury. Similarly, Plaintiffs' fraud, deceptive advertising, and unjust enrichment claims allege the concrete harm of inducing Plaintiffs to give up such information in return for nothing. The Ninth Circuit has expressly recognized such harms as concrete in the context of unjust enrichment. *See In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 598 ("Plaintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data sufficient to confer Article III standing").

Plaintiffs' various privacy claims are also concrete under Ninth Circuit Law. In *In re Facebook Inc. Internet Tracking Litig.*, the Ninth Circuit held that users had "standing to bring claims for invasion of privacy, intrusion upon seclusion, breach of contract, breach of the implied covenant of good faith and fair dealing, as well as claims under the Wiretap Act and CIPA, because they adequately alleged privacy harms." *Id.*, 956 F.3d at 602–03. Similarly, "legislative history and statutory text demonstrate that Congress and the California legislature intended to protect these historical privacy rights when they passed the Wiretap Act, SCA, and CIPA." *Id.* at 599. Accordingly, control of personally-identifiable browsing history, including likes and dislikes, is a "concrete" interest that creates standing for privacy related claims. *Id.*; *see also Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1119 (9th Cir. 2020) ("We thus conclude that Plaintiffs identified a concrete injury by claiming that Facebook violated ECPA and CIPA when it intercepted, catalogued, and used without consent URLs they had shared in private messages."); *see also Yockey*, 688 F. Supp. 3d at 969–970 ("Statutes such as CIPA . . . 'codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing.'"; "[A] concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization.").

CIPA in particular is an example where the legislature has "elevated" a privacy interest to a right whose violation creates standing. *See, e.g.*, *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1103 (C.D. Cal. 2023) ("[V]iolations of plaintiffs' statutory rights under CIPA, even without more, constitute injury in fact…") (brackets removed); *Raffin v. Medicredit, Inc.*, No. CV 15-4912, 2016 U.S. Dist. LEXIS 181819, at *3 (C.D. Cal. Dec. 19, 2016) ("[D]istrict courts in the Ninth Circuit consistently have concluded that, to satisfy injury in fact, a plaintiff in a CIPA action need not allege actual harm beyond the invasion of the private right conferred by the statue."); *Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 U.S. Dist. LEXIS 130778, at *41 (N.D. Cal. Sep. 23, 2016) (violations of statutory rights under CIPA constitute concrete injury). Thus, the "relevant law is settled" that, when a wiretapping statute like CIPA "codifies such substantive privacy rights," violating that statute "gives rise to a concrete injury sufficient to confer standing." *Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023).

Hilton argues incorrectly that Plaintiffs have not suffered injury in fact because there is "no alleged collection or disclosure of plaintiffs' *personal* information." ECF 20 at 5; *id.* at 6 (emphasis added). This disingenuous argument elevates form over function. Plaintiffs allege that Defendant placed cookies that captured "***browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data***." ECF 1 ¶ 29 (emphasis added); *see also id*. at ¶¶. 30–35, 37–69 (explaining breadth of data collected by Third Parties). The fact that data such as specific search strings corresponding to locations where Plaintiffs were traveling—as well as URLs, devices, browsers, and operating system—were disclosed is inherent, and reasonably inferable from the facts alleged (or, alternatively, could easily be included by amendment). Plaintiffs could not browse the Website without appropriate devices and software. Nor could they view it without visiting specific URLs. And if they were browsing hotel options, as alleged, they necessarily entered one or more search strings with details of their planned trips and selected certain options from that list to view more details. This private browsing information supports standing under *In re Facebook Inc. Internet Tracking Litig*.

Hilton's reliance on *Mikulsky v. Noom* and *In re BPS Direct, LLC* is misplaced. ECF 20 at 5–6. In *Mikulsky*, the court found no standing because the plaintiff had alleged disclosure of "personal information" without any more detail, which did not allow the court to determine "whether [p]laintiff has a protectable privacy interest in that information." Here, as discussed above, Plaintiffs have alleged specific data that was disclosed, such as search strings and URLs visited, as well as a collection of aggregated data to construct detailed profiles about Plaintiffs' habits and interests, all of which is squarely within the types of browsing activity the Ninth Circuit deemed protectable in *In re Facebook Inc. Internet Tracking Litig.* and *Campbell*. Similarly, in *In re BPS*—an out-of-circuit case—the court limited "private" information sufficient to support a "concrete" injury to health and financial information, and excluded all browsing data such as URLs viewed and search strings, as well as the user's device data (i.e., device type, software used, IP address, etc.). 705 F. Supp. 3d 333, 353–358 (E.D. Pa. 2023). That

decision directly conflicts with binding Ninth Circuit precedent holding the opposite. *See In re Facebook Inc. Internet Tracking Litig*, 956 F.4th at 598–599 (finding browsing data creates concrete privacy interest); *Campbell*, 951 F.3d at 1119 (same).

Hilton next argues that the Complaint fails to allege concrete damages. Specifically, Hilton argues Plaintiffs have no standing because they have not and cannot allege a "diminution in value." ECF 20 at 7. But Defendants conflate standing and damages. Defendant's concrete invasions of Plaintiffs' privacy and contractual rights are cognizable injuries; valuing those injuries is different. Even where economic harm is required (e.g., the UCL claims), diminution in value is but one method for calculating that injury. Plaintiffs also plead statutory damages (ECF 1 ¶ 149, 161) and that "the value of personal data is measured as either the consumer's willingness to accept compensation to sell [their] data or the consumer's willingness to pay to protect [their] information." ECF 1 ¶ 73. This is sufficient for standing. *See Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 1290, at *35 (N.D. Cal. Jan. 3, 2024) (granting *class certification* when Plaintiffs' damages were based on "User's willingness to pay to prevent [their] data collection and [the] organization's willingness to pay for data collection").

**B. The Court Has Personal Jurisdiction Over Hilton.**

Plaintiffs have adequately pled specific personal jurisdiction over Hilton. As recently clarified by the Ninth Circuit *en banc*, the applicable test boils down to whether (1) Hilton purposefully directed its activities at the forum or purposely availed itself of the privilege of conducting activities in the forum; (2) Plaintiffs' claims arise out of or relate to that conduct; and (3) exercising jurisdiction over Hilton would be reasonable, i.e., comport with fair play and substantial justice. *Briskin*, 2025 U.S. App. LEXIS 9410, at *35–36.[1] Because Hilton's personal jurisdiction challenge is based on written materials rather than an evidentiary hearing, Plaintiffs need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1224 (9th Cir. 2011).

[1] Some district courts have analyzed "purposeful availment" only for contract-based claims, while reserving the "purposeful direction" test for tort-based claims. But the Ninth Circuit in *Briskin* clarified that there is no "rigid dividing line" between the two tests, and that personal jurisdiction for any claim may be satisfied by either test or "by some combination thereof." *Id.* at *22, n.10.

The Complaint shows "***purposeful availment.***" "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The Complaint alleges that Hilton's Website (and thus Hilton) allows shopping for and leasing rooms in hotels throughout California, and that Hilton promised not to use third-party marketing and analytics cookies to induce consumers to view those offers. Even if Hilton does not operate "Hilton" hotels in California, it has agreements with California hotels to take advantage of California real estate, markets, and laws. Hilton also admits that it uses California users' data for marketing and advertising efforts. ECF 1 ¶ 24. It further admits that it engages in "the sale of [California users'] personal information." ECF 1 ¶ 186. Separately, Plaintiffs allege that Hilton's Privacy Statement was an enforceable promise (ECF 1 ¶ 184–191) made to California consumers that they could "opt out of the sale of [their] personal information" (*id.* ¶ 186), and conferred an economic benefit on Defendant in exchange for consideration (*id.* ¶¶ 189–190), evidencing the solicitation, execution, or performance of a contract directly. *Schwarzenegger*, 374 F.3d at 802. This establishes purposeful availment. *See Rodriguez v. Aquatic Sales Sols. LLC*, 735 F. Supp. 3d 1208, 1219–1220 (C.D. Cal. 2024) (finding personal jurisdiction over website operator who collected California user data to drive sales); *Williams v. Pac. Sunwear of Cal. LLC*, No. CV-24-02015-PHX-JJT, 2024 U.S. Dist. LEXIS 196954, at *24–25 (D. Ariz. Oct. 30, 2024) (same for digital surveillance, noting "[a] defendant cannot commit an intentional tort in a forum and then claim that the location of his victim renders jurisdiction in the forum fortuitous.").

The Complaint also establishes "***purposeful direction***" of Hilton's activities into California. To determine whether a defendant "purposefully directs his activities at a forum state," courts apply the "*Calder* effects test" from *Calder v. Jones*, 465 U.S. 783 (1984). *Calder* requires that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quotations omitted). Hilton argues only that the "expressly aimed" prong is not met.

In *Briskin v. Shopify, Inc*., the Ninth Circuit recently held *en banc* that the act of installing cookies on a website users' browser was sufficient to establish express aiming, and thus, personal jurisdiction, in the forum where the user resided. 2025 U.S. App. LEXIS 9410, at *41. More specifically, the Ninth Circuit held that that "an interactive platform 'expressly aims' its wrongful conduct toward a forum state when its contacts are its 'own choice and not 'random, isolated, or fortuitous,' even if that platform cultivates a 'nationwide audience for commercial gain.'" *Id*. at *41 (internal citations omitted). In *Briskin*, the defendant was "alleged to target California consumers to extract, collect, maintain, distribute, and exploit for its own profit," California consumers' payment information and "other personal identifying information that it extracts from the software it permanently installs on their devices without their knowledge or consent." *Id.* at *35. The Court held that "Shopify deliberately reached out beyond its home state by knowingly installing tracking software onto unsuspecting Californians' phones so that it could later sell the data it obtained, in a manner that was neither 'random, isolated, [n]or fortuitous.'" *Id*. at *44–45; *see also id.* at *25–34 (collecting cases to discuss evolution of personal jurisdiction over website operators "in the internet age"); *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1088 (9th Cir. 2023) (finding sale of herbal supplements into state through online store was purposeful direction supporting personal jurisdiction); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 741 (N.D. Cal. 2023) (same, for online hardware goods store).

Under *Briskin* and similar cases, Hilton's activities support personal jurisdiction in California. Hilton's integration of Third Party tracking into its interactive Website is directly analogous to Shopify's unconsented tracking of user's shopping behavior in *Briskin*. The only difference between the Hilton's conduct and those of the defendants in *Briskin*, *Herbal Brands,* and *Swarts* is that Hilton is selling room rentals rather than herbal supplements or home goods. ECF 1, ¶ 22 ("Defendant also owns and operates the Website, which allows visitors to receive information about hotels and make hotel reservations."). The Complaint pleads that Hilton admits, via its Privacy Policy, that it sells California users' personal information. ECF 1 ¶ 36. And since Hilton purports to give California users the ability to "opt out of the sale of [their] personal information," there is no reasonable dispute that Hilton is specifically directing the

conduct that gives rise to Plaintiffs' claims into this forum. *Id.*; *see also* ECF 1 ¶¶ 14–21; 109–173 (alleging Hilton's acts that aided the Third Party's collection of California user data). Even pre-*Briskin*, "addressing legal compliance" to a certain jurisdiction on a website demonstrates active targeting of that jurisdiction. *Will Co. v. Ka Yeung Lee*, 47 F.4th 917, 923 (9th Cir. 2022). Thus, Plaintiffs demonstrate Hilton's purposeful direction of its relevant activity towards this jurisdiction.

Hilton falsely asserts that its Website is "passive." But "passive" Websites are those that simply display advertisements, whereas online shopping portals are "interactive." *Compare Briskin*, 2025 U.S. App. LEXIS 9410, at *25 (discussing static homepage and images as "passive" websites), *with id.* at 28–30 (discussing "interactive" online shopping sites that collect user information). Given the Hilton Website's collection of user information to offer and lease hotel rooms, it is a highly interactive site that "expressly aims" Hilton's conduct into California.

In *Briskin*, the Ninth Circuit held that "express aiming" does not require "differential targeting" of the forum at issue, expressly overruling *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020) and *Will Co.*, 47 F.4th at 922. *Briskin* thus overruled several of the primary cases on which Hilton relies to argue personal jurisdiction requires evidence that Hilton targeted California consumers specifically. *See* MTD at 9 (citing *AMA Multimedia* and *Will Co.* as requiring allegations of "specifically target[ing] user wiithin the forum"). This moots Hilton's disingenuous argument that the "reference to California in Hilton's Global Privacy Statement" does not support purposeful availment. *See* MTD at 9 (citing *Cole-Parmer Instrument Co. LLC v. Pro. Lab'ys, Inc.*, No. 20-CV-08493-LHK, 2021 U.S. Dist. LEXIS 135383, at *16–17 (N.D. Cal. July 20, 2021), for the proposition that "courts" have ruled that compliance with California's Online Privacy Protection Act, "by itself," is not enough to establish that a company has "intentionally targeted" consumers in California). Setting aside *Briskin*'s express holding that evidence of "differential targeting" (which is facially interchangeable with "intentional targeting") of the forum state is not required to establish specific jurisdiction, *Cole-Parmer* did not hold that compliance with OPPA is *irrelevant*, but only that it is not sufficient "by itself." As noted above, Hilton's reference to California law is just one factor of many.

**C. Hilton's Scattershot 12(b)(6) Arguments Fail.**

**1. Plaintiffs adequately plead their common law privacy claims.**

The parties agree that California's common law invasion of privacy and intrusion upon seclusion are analyzed together and require that Plaintiffs show: (1) an intentional intrusion into a matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion must be "highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606; *see also Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 285–97 (2009). Claimant easily satisfies both requirements.

**a. Plaintiffs adequately allege intent.**

The Complaint pleads facts sufficient to establish Defendant's intent to invade Plaintiffs' privacy. The Complaint alleges that Hilton "owns and operates" the Website. ECF 1 ¶ 22. It further alleges that "Defendant 'voluntarily integrated 'third-party resources' from the Third Parties into its Website programming." *Id.* ¶ 16; *id.* ¶ 23. Hilton installed the third-party resources on its Website that collected website users' Private Communications. *Id.* ¶¶ 16–21; *see generally id*. And, Hilton falsely promised users they could "Opt-out" of the above. ECF 1, ¶¶ 25–29. Having done so, Hilton necessarily knew that, at a minimum, it needed to confirm such cookies were not used. As the Complaint alleges, "Defendant knew, or should have known, how the Website functioned, including the Third Party's resources it installed on the Website and the third-party cookies in use on the Website, through testing the Website, evaluating its performance metrics by means of its accounts with Third Parties, or otherwise, and knew, or should have known, that the Website's programming allowed the third-party cookies to be placed on users'—including Plaintiffs'—browsers and devices and/or transmitted to the Third Parties along with users' Private Communications even after users attempted to "Opt Out" of cookies, which Defendant promised its users they could do." *Id.* ¶ 165. At the pleadings stage, where it is permissible to allege intent based on "information and belief," this is more than sufficient. *Blake v. Dierdorff*, 856 F.2d 1365, 1369 (9th Cir. 1988); Fed. R. Civ. P. 11.

Hilton cites a single sentence in Plaintiffs' Complaint to argue that the Complaint "does not (and cannot) allege any intentional conduct." ECF 20 at 10. This argument, which is based

on cherry-picking a single sentence and quoting it out of context, ignores the Complaint's clear allegations, above.

In a throwaway sentence, Hilton argues that Plaintiffs "rely on an alleged error rather than intentional conduct." ECF 20 at 10 (quoting phrase "Defendant failed to prevent cookies from being placed"). But Hilton offers no evidence that its installation of third-party tracking cookies was simply an "error" or "unintentional malfunction," *see id.* at 1, 3, 10, 15, 22. Even if it did, it would be improper to disregard the Complaint's allegations and make such factual findings in a motion to dismiss. *See Hawkins v. Kroger Co.*, 906 F.3d 763, 767 n.2 (9th Cir. 2018) (A court must "accept the complaint's well-pleaded factual allegations as true, and construe all inferences in the plaintiff's favor for the purposes of evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)"). Furthermore, to the extent Hilton is arguing a defense of mistake, that is an affirmative defense based on disputed facts, and thus cannot support dismissal. *See Nguyen v. Stephens Institute*, 529 F. Supp. 3d 1047, 1056 (N.D. Cal. 2021) ("An affirmative defense may not ordinarily be raised on a motion to dismiss.").

**b. Plaintiffs allege that Hilton's invasion of privacy was highly offensive.**

Hilton's collection and disclosure of data after promising visitors it would not do so is highly offensive. *See St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *36 (finding that "defendant's representations that sensitive information would not be disclosed" made the disclosure highly offensive); *Rodriguez v. Google LLC*, 2021 U.S. Dist. LEXIS 98074, at *28–29 ("Per the FAC, Google intercepted data akin to 'browsing habits and histories,' including 'detailed URL requests, app browsing histories, and search queries which [p]laintiffs . . . sent to those apps[.]' . . . In sum, the Ninth Circuit has left little doubt as to plaintiffs' intrusion upon seclusion and invasion of privacy claims. Both survive Google's motion to dismiss.").

Ignoring its broken promise, Hilton asserts that the "data elements identified in the Complaint are not 'highly offensive' invasions of privacy." ECF 20 at 11. But Hilton relies on outdated cases, including *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968 (N.D. Cal. 2014) and *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012).

More recent cases, such as *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 602–03 (discussed *supra*, at 7), have overruled those older cases. Under current law, the "use of cookies to track and compile internet browsing histories" can invade users' privacy because they enable "access to a category of information otherwise unknowable and implicate privacy concerns." *Id.* at 603. Thus, many recent district court decisions have recognized that the tracking and amassing of online data without consent is highly offensive. *See, e.g., Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023) (the accumulation of online data was an invasion of privacy); *Silver v. Stripe, Inc.*, No. 4:20-cv-08196-YGR, 2021 U.S. Dist. LEXIS 141090, at *17–18 (N.D. Cal. 2021) (finding plaintiff stated claims for intrusion upon seclusion based on the aggregation of data); *In re Google Location History Litig.*, 514 F. Supp. 3d 1147, 1157–58 (N.D. Cal. 2021) (finding the continuous collection of data when users turned off the "location history" setting was highly offensive); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074, at *27 (N.D. Cal. May 21, 2021) (users have a privacy interest in their internet-wide browsing history); *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 600 (N.D. Cal. 2021) (collection and sharing of data when the app was closed was an invasion of privacy).

Plaintiffs have alleged that Hilton allows the Third Parties to collect similar data when it expressly promised it would not. ECF 1 ¶ 20 (describing "Private Communications" to include browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behavior, device information, referring URL, session information, user identifiers, and geolocation data). This is highly offensive.

In any event, the question of whether an intrusion is "highly offensive" is one that courts do not resolve on the pleadings because it is fact-intensive and entails weighing the "extent and gravity of the invasion." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37, 26 Cal. Rptr. 2d 834, 865 P.2d 633 (1994); *see also In re Facebook, Inc., Internet Tracking Litig.*, 956 F.3d at 606 (stressing the uniquely subjective nature of the "highly offensive inquiry" before concluding it "cannot be resolved at the pleading stage"); *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955, at *9 (N.D. Cal. Oct. 23, 2019) ("a jury could conclude"

that the intrusion into plaintiff's identity and browsing habits "is a highly offensive breach of norms"); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018) (whether conduct rises to the level of highly offensive "is indeed a factual question best left for a jury").

Hilton also disingenuously asserts that Plaintiffs do not allege *their* personal information was involved. ECF 1 at 11. But this reading strains credulity. Plaintiffs have alleged that Hilton allows the Third Parties to collect data from *all* Website users. ECF 1 ¶¶ 14–24; *see id.* ¶ 20 ("the third-party cookies stored on and/or loaded from users' devices when they interact with the Website are transmitted to those third parties, enabling them to surreptitiously track in real time and collect Website users' personal information, such as their browsing activities and private communications with Defendant"). It necessarily follows that Plaintiffs' information was disclosed as well.

**D. Plaintiffs Have Adequately Pled CIPA Claims.**

Plaintiffs allege two claims under CIPA. First, Plaintiffs allege a wiretapping claim under the fourth prong of Section 631(a) which makes liable persons who aid others who "unlawfully do, or permit, or cause to be done" either "(1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire, [i.e., eavesdropping,] and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Rodriguez v. Ford Motor Co.*, No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685, at *12 (S.D. Cal. Dec. 3, 2024) (cleaned up).[2] Second, Plaintiffs allege that Hilton's conduct violates CIPA § 638.51, which prohibits the unconsented installation and use of "pen registers" and "trap and trace devices." Hilton's challenges to these claims are meritless.

**1. Plaintiffs allege "contents" were intercepted.**

CIPA prohibits interception of "contents" communications. "Contents" communications "refer[] to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *see also Yoon v.*

[2] Hilton argues that the first clause of CIPA does not apply to cookies, and that the second clause does not create liability for recording its own conversations. ECF 20 at 12–13. Plaintiffs do not allege that Hilton is liable under these clauses.

*Lululemon United States*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (explaining CIPA protects "user-generated material" but not "routine identifiers"). Here, Plaintiffs allege interception of "contents," including search terms. *See* ECF 1, ¶ 144 (information collected includes, *inter alia*, "the Website user's affirmative decisions, actions, choices, [and] preferences," including "user input data" and URLs); *id.*, ¶ 20 ("user input data" includes "search queries, the user's name, age, gender, email address, location, and/or payment information"); *Heerde v. Learfield Commc'ns, LLC*, No. 2:23-cv-04493-FLA (MAAx), 2024 U.S. Dist. LEXIS 137781, at *14 (C.D. Cal. 2024) ("Search terms constitute 'contents' of a communication."); *see also Zynga*, 750 F.3d at 1108–09 (explaining URL data may contain communication "contents" if a user's search terms are included); *St. Aubin,* 2024 U.S. Dist. LEXIS 179067, at *11 (URLs that reveal a user's queries reflect the "contents" of a communication); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. 2023) ("full-string detailed URL[s]" containing "users' actions on a website, and their search queries" can constitute content); *In re Carrier IQ, Inc*., 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) (finding search terms implicate "content").

Even the cases Hilton cites do not support its motion to dismiss. ECF 20 at 13–14. In *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024), the Plaintiffs alleged capture of only record information, such as "button clicks, mouse movements, scrolling, resizing, touches (for mobile browsers), key presses, page navigation, changes to visual elements in the browsers, network requests, and more." In *Katz-Lacabe*, the court denied the motion to dismiss, finding that the allegations, read in the light most favorable to the Plaintiff, adequately pled the interception of "content." 668 F. Supp. 3d at 945 n.9. Here, where the primary reason to visit the Website is to search for hotels, it is similarly reasonable to assume that "content" in the form of user's search strings was intercepted. Alternatively, should the Court deem additional facts necessary, Plaintiffs can amend the Complaint to supply additional details about search strings being entered into Hilton's interactive Website.

**2. Plaintiffs allege "aiding" under CIPA.**

Hilton recycles its lack of intent arguments regarding the invasion of privacy claims to argue lack of intent under CIPA as well. ECF 20 at 14–15. But the plain text of CIPA "does not

include an intent standard." *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *20. Indeed, Judge Chen rejected this same argument in *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 953 (N.D. Cal. 2023). In *James*, the plaintiff brought CIPA claims under Section 631 against Disney for causing a third-party to intercept user data including "search terms entered," "pages viewed," and other data similar to the allegations here. *Id*. at 945–46. Like here, the defendant argued that it "cannot be held liable under . . . CIPA unless it *intended* to have [a third party] intercept the information at issue." *Id.* at 953. The court rejected that argument, holding that plaintiff pled "aiding," because "it can be reasonably inferred that [Defendant] entered into a contractual agreement with [third party] under which [the third party] would collect information. . . . so that [Defendant] could market to and attract new customers." *Id*. at 954. So too here. Plaintiffs allege that "Defendant voluntarily integrated 'third-party resources' from the Third Parties into its Website programming" which was "done so pursuant to agreements between Defendant and [the] Third Parties" resulted in the collection of valuable user data. ECF 1 ¶¶ 16, 70–74.

The decision in *James* is consistent with other decisions from this Circuit holding that intent under CIPA is satisfied by pleading that Defendant intentionally "enable[d] a third party's eavesdropping on or interception of the communication." *See, e.g.*, *Doe v. Amgen, Inc*., No. 2:23-cv-7448, 2024 U.S. Dist. LEXIS 144579, at *5 (C.D. Cal. Aug. 13, 2024); *Revitch*, 2019 U.S. Dist. LEXIS 186955, at *4 ("[T]he complaint adequately alleges that [Defendant] violated section 631 by enabling [a third party's] wrongdoing"); *Kotlarsz v. Integrity Vehicle Servs., Inc.*, No. 8:24-cv-00569, 2024 U.S. Dist. LEXIS 213565, at *22 (C.D. Cal. Sep. 3, 2024) ("it was the [D]efendant's website on which the [third party] operated."). And, regardless of whether Defendant had the specific intent to enable *unlawful* conduct, courts routinely find sufficient allegations that the defendant intended the *act* which "enable[d]" the privacy violation. *See, e.g., Doe*, 2024 U.S. Dist. LEXIS 144579, at *5.

Because "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act," the Ninth Circuit's analysis of intent in the Wiretap Act is instructive. *Brodsky v. Apple Inc*., 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (quoting *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018)). "The Ninth Circuit rejected that the word 'intentionally'

in the Wiretap Act ‘must be read to require a defendant to know that [its] conduct is unlawful . . . Rather, the statute only requires “an intentional act, defined as an act that is being done on purpose.” *Shahnaz Zarif v. Hwareh.com, Inc.*, No. 23-cv-0565, 2025 U.S. Dist. LEXIS 26519, at *20 (S.D. Cal. Feb. 12, 2025) (quoting *United States v. Christensen*, 828 F.3d 763, 774 (9th Cir. 2015)). As such, Hilton’s reliance on *Esparza v. UAG* as requiring pleading a “purpose to violate” the law is flawed. ECF 20 at 14. *Esparza v. UAG Escondido A1 Inc.*, No. 23cv0102 DMS(KSC), 2024 U.S. Dist. LEXIS 24429 (S.D. Cal. Feb. 12, 2024). And even if one considered the unpublished decision in *Esparza* as a discussion of the pleading standard for “aiding and abetting,” the Complaint here is more analogous to the facts in *James*, where the allegations of contracting with the Third Parties who intercepted the communications established intent to “aid.”

Hilton’s reliance on *Smith v. Yeti Coolers, LLC* is also misplaced. ECF 20 at 14–15. In *Yeti*, the plaintiff alleged that the website owner was liable under the fourth prong of CIPA for aiding a third-party payment processor that “incorporates customers’ financial information into its fraud prevention system, which it then markets to merchants without customers’ consent” to violate the statute. No. 24-cv-01703-RFL, 2024 U.S. Dist. LEXIS 194481, at *1 (N.D. Cal. Oct. 21, 2024). The *Yeti* court concluded that the plaintiff failed to allege that the defendant was “acting with the third party *in order* to have the third party perform acts that violate the statute.” *Id.* at *12. In other words, the court found that the defendant did not intend to enable the third party to collect user information (which plaintiff alleged violated the statute); it only intended to enable the third party to process payments made on its Website. Here, Plaintiffs have alleged that Hilton integrated the third-party resources on the Website which placed and transmitted cookies *in order* to obtain user data for advertising purposes. ECF 1 ¶¶ 16, 20–23, 37–69. Hilton did not disable this software or prevent the Third Parties from obtaining user data even after it solicited user consent and obtained users’ rejection of cookies. *Id.* ¶¶ 1–3. Hilton cannot claim that it did not intend to cause the Third Parties to wiretap and eavesdrop on users’ Personal Communications since it integrated the Third Party code into its Website to do exactly that.

Moreover, Hilton’s characterization of *Yeti* is contrary to the prevailing standard in this Circuit discussed above. The defendant in *Yeti*, like Hilton does here, argued that the plaintiff

must show the "'specific intent to commit the unlawful acts'" 2024 U.S. Dist. LEXIS 194481, at *11. But the plaintiff, by contrast, argued that CIPA did not require specific intent. *Id*. The court acknowledged that CIPA "does not necessarily incorporate the common law [intent] requirement for aiding and abetting. . . [but] other language in [CIPA's] fourth clause does require ***some*** level of knowledge and intent." *Id*. (emphasis added). Here, Plaintiffs alleges more than "some" level of intent and knowledge (as explained above) because Hilton owns the website and installed the third-party resources which allowed the Third Parties to track the Website users.

Hilton also incorrectly argues that the Complaint fails to allege a predicate CIPA violation of CIPA for Plaintiffs' "aiding" claim. Again, Hilton places form over function. While not laid out in a single element-by-element analysis, the Complaint clearly alleges CIPA violations by at least the Third Parties named in the Complaint. *See* ECF 1, ¶¶ 2–5, 37–69 (identifying unconsented wiretapping via cookies placed by Google, Adobe, Microsoft, Snap, "and more"). ECF 1, ¶¶ 2–5, 14–24; *see also id.* at ¶¶ 37–38, 42–43, 63–64; 68, 139–142 (Third parties made an intentional tap or unauthorized connection); ¶¶ 37–38; 49–50, 64–66, 69, 138–139 (with any line, cable, or instrument—i.e., cookies in internet communications); ¶¶ 25–36, 143 (willfully and without consent of all parties); ¶¶ 39, 47, 54–56, 65, 68–69, 144 (reads or learns the contents of any communication while in transit (e.g., "San Francisco" search string)); ¶¶ 39–69, 144 (uses any information so obtained). To the extent Hilton argues that these elements are merely recited "without more," its argument founders on the 32 paragraphs of detailed information the Complaint provides about how exactly the Third Parties intercept and use Plaintiffs' information without consent. *See id.* at ¶¶ 37–69.

To the extent Hilton argues that the Complaint fails to allege the requisite Third Party intent (MTD at 15), it is wrong because the Complaint adequately pleads the Third Parties' intent to place the cookies, as described above, and there is no separate requirement of specific intent to do so unlawfully. Furthermore, one of the cases on which it relies, *Wilson v. Google*, No. 24-cv-03176-EKL, 2024 U.S. Dist. LEXIS 55629 (N.D. Cal. Mar. 25, 2025), actually rejected the argument that Hilton makes and *denied the motion to dismiss*—a fact that Hilton even admits in its motion. The other case it cites, *B.K. v. Desert Care Network*, No. 2:23-cv-05021-SPG-PD,

2024 U.S. Dist. LEXIS 152953, at *7–8 (C.D. Cal. Aug. 22, 2024), does not control the outcome here. It failed to address the "intent" precedent described above and is inapposite because the Complaint here alleges that Plaintiffs communicated their lack of consent to use Third Party cookies, which those Third Parties presumably were aware of or willfully ignored, thus establishing their intent.

**3. CIPA section 638.51 is not limited to telephones.**

CIPA Section 638.51(a) prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." The statute defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Plaintiffs adequately plead each element of this claim. Plaintiffs allege that the Third Party cookies and the corresponding software code installed by Hilton on its Website operate as pen registers under the meaning of the statute because they record users' IP address and user-agent information, which is "routing, addressing, or signaling information."

Hilton argues incorrectly that the pen register statute is limited to telephones. ECF 20 at 16–18. Courts in this District have repeatedly rejected this argument as contrary to the statute's plain language. *See, e.g.*, *Mirmalek v. L.A. Times Communs. LLC*, No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378, at *7 (N.D. Cal. Dec. 12, 2024) (collecting cases); *Shah v. Fandom, Inc.*, No. 24-cv-01062-RFL, 2024 U.S. Dist. LEXIS 193032, at *9 (N.D. Cal. Oct. 21, 2024); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023). This is because "the California' Legislature's chosen definition" of a pen register is "specific as to the *type of data* [collected]," but "vague and inclusive as to the form of *the collection tool*" (i.e., a "device or process"). *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *7 (citing Section 638.51(b)**Error! Bookmark not defined.**). "Thus, the Court applies the plain meaning of a 'process' to [CIPA]. A process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting,'" like Plaintiffs allege here. *Greenley*, 684 F. Supp. 3d at 1050. "By the plain meaning of § 638.50(b), collection of the

recipient phone number or IP address is not a required element. All that is required is that the Trackers record addressing information transmitted by the user's *computer or smartphone* in connection with the outgoing HTTP request to [the] website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue." *Shah*, 2024 U.S. Dist. LEXIS 193032, at *9. "[T]he Court's analysis must begin with the statutory text, and if that text is clear, must end there. . . . Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Id*.

Like the plaintiffs in *Mirmalek*, *Greenley*, and *Shah*, Plaintiffs allege that the Third Party cookies and the corresponding software code installed by Hilton on its Website are each a "device or process." *Compare Mirmalek*, 2024 US Dist. LEXIS 227378, at *12 *with* ECF 1 ¶ 155 (explaining "cookies and the corresponding software code installed by Defendant on its Website are each 'pen registers' because they are 'device[s] or process[es]' that 'capture[d]' the 'routing, addressing, or signaling information'—including, the IP address and user-agent information—from the electronic communications transmitted by Plaintiffs' and the Class's computers or devices."). Thus, Hilton's argument limiting pen register claims to telephones fails.

The Court should also reject Hilton's two-faced argument that pen registers are limited to devices that contain no "content." In its wiretap claim arguments, Hilton argues that there are no allegations that cookies intercept "content." Yet in the pen register claims, it asserts that all cookies capture content. Hilton cannot have it both ways. Furthermore, Hilton fails to address the possibility that some cookies may include "content," while others may include only "record" information. *See, e.g.*, ECF 1, ¶¶ 37–69 (identifying different types of information collected by different cookies). The Complaint can plead these claims in the alternative.

### E. Plaintiffs Adequately Plead Damages for Fraud and Breach of Contract.

Hilton argues that Plaintiffs' allegations of "common law fraud, deceit and/or misrepresentation (Claim Five), breach of contract (Claim Seven), and breach of the implied covenant of good faith and fair dealing (Claim Eight) each fail because they do not allege ***actual*** damages," measured by "***out-of-pocket losses***." ECF 20 at 18–19 (emphasis added). Defendant is wrong. The cases on which it relies have been overruled or distinguished from the claims here.

With respect to fraud, deceit, and misrepresentation, California law differentiates between fraud involving purchase of an item and fraud that does not. *See In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1135 (N.D. Cal. 2018) (holding *Fladeboe v. Am. Isuzu Motors Inc.*, 58 Cal. Rptr. 3d 225, 243 (Cal. Ct. App. 2007), does not apply to deceit claim arising from free email service). The California Court of Appeal has ruled that, for the tort of deceit, "the appropriate measure of damages is defined by Civil Code sections 1709 and 3333." *In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d at 1135, citing *Sprague v. Frank J. Sanders Lincoln Mercury, Inc.*, 120 Cal. App. 3d 412, 174 Cal. Rptr. 608, 610 (Ct. App. 1981), and *Romo v. Stewart Title of Cal.*, 35 Cal. App. 4th 1609, 42 Cal. Rptr. 2d 414, 422 (Ct. App. 1995). California Civil Code § 1709 permits recovery of "any damage which [the plaintiff] thereby suffers." Similarly, California Civil Code § 3333 instructs that "[f]or the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." This applies to breach of the covenant of good faith and fair dealing too, which sounds in tort under California law. *PPG Indus., Inc. v. Transamerica Ins. Co.*, 20 Cal. 4th 310, 315, 84 Cal. Rptr. 2d 455, 458, 975 P.2d 652, 655 (1999).

Under California law, "[t]he failure to perform a duty required by contract is a legal wrong, independently of actual damage sustained by the party to whom performance is due." *In re Google Referrer Header Privacy Litig.*, 465 F. Supp. 3d 999, 1010 (N.D. Cal. 2020) (citing *Kenyon v. W. Union Tel. Co.*, 100 Cal. 454, 458 (1893)). In other words, Hilton's breach of contract is an independent basis for damages. Moreover, California law expressly authorizes nominal damages for breach of contract claims. Cal. Civ. Code § 3360 ("[w]hen a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages."); *Tribeca Cos., LLC v. First Am. Title Ins. Co.*, 239 Cal. App. 4th 1088, 1103 n.12 (2015). Indeed, California Courts have rejected *Ruiz*, the case Defendant cites as authority for the proposition nominal damages are not available. *See Elation Sys., Inc. v. Fenn Bridge LLC*, 71 Cal. App. 5th 958, 965–967, 286 Cal. Rptr. 3d 762 (2020) (rejecting reasoning of *Ruiz v. Gap, Inc.*, 380 F. App'x 689, 692 (9th Cir. 2010), and confirming that that nominal damages may be

awarded in contract cases); *Medoff v. Minka Lighting, LLC*, No. 2:22-cv-08885-SVW-PVC, 2023 U.S. Dist. LEXIS 81398, at *1 (C.D. Cal. May 8, 2023) (same, declining to follow *Ruiz*); *In re Facebook Privacy Litig.*, 192 F. Supp. 3d 1053, 1061 (N.D. Cal. 2016) (same).

Hilton also argues the fraud, breach of contract, and implied covenant claims fail because Plaintiffs "do not allege they intended to participate in a market for their data or paid for some service for which they did not receive full value." ECF 20 at 18. But *Hubbard v. Google* is easily distinguishable because the plaintiff there "confirm[ed] that the sole loss they allege stems from the diminution in value of their information." No. 19-cv-07016-SVK, 2025 U.S. Dist. LEXIS 6588 (N.D. Cal. Jan. 13, 2025). Here, Plaintiffs have identified several theories of recovery. *See Rodriguez*, 2024 U.S. Dist. LEXIS 1290, at *35 (granting class certification when damages were based on "[u]ser's willingness to pay to prevent [their] data collection and [the] organization's willingness to pay for data collection."); *see also In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 598 ("Plaintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data sufficient to confer Article III standing").

**F. *Sonner* Does Not Apply to Plaintiffs Claims.**

Hilton argues that *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), forecloses Plaintiffs' claims because they "have not pled that they lack an adequate remedy at law, and, like in *Hubbard*, seek damages for alleged injuries they already suffered." ECF 20 at 19–20. But there are no adequate remedies at law for all the relief Plaintiffs request, such as injunctive relief to prevent further harm to Plaintiffs and the public (ECF 1 ¶ 150, Prayer for Relief), and punitive damages (ECF 1 ¶¶ 120, 130, 173, Prayer for Relief). "Here, at the pleading stage, the Plaintiff can plead conflicting theories in the alternative under Fed. R. Civ. P. 8(a)(3)." *Scheibe v. Perfect Keto Grp. Ltd. Liab. Co.*, 700 F. Supp. 3d 928, 937 (S.D. Cal. 2023). Indeed, numerous Courts have acknowledged that *Sonner*—which involved a plaintiff's standing after voluntarily dismissing legal claims in an act of gamesmanship to avoid a jury trial—does not preclude pleading equitable remedies in the alternative. *See Katz-Lacabe*, 668 F. Supp. 3d at 949 (collecting cases). Thus, *Sonner* does not preclude Plaintiffs' equitable claims.

**G. Plaintiffs' Unjust Enrichment Claim May Proceed.**

Hilton contends that Plaintiffs' unjust enrichment claim—pled in the alternative—is barred as a matter of law. Not so. The Ninth Circuit regularly allows independent claims for unjust enrichment to proceed. *See Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017); *see also In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) (permitting unjust enrichment claim to proceed). To successfully plead unjust enrichment, "a plaintiff must show that the defendant received an unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe*, 668 F. Supp. 3d at 945. Here, Plaintiffs allege that Hilton benefited from using their Private Communications and that the remedies at law are inadequate. ECF 1 ¶¶ 174–183. Indeed, if Hilton is correct that Plaintiffs have not shown damages for their breach of contract claims, Plaintiffs will lack an adequate remedy at law for Hilton's misuse of his private communications. "These allegations are all that is necessary at this stage in the proceedings." *Shah v. Capital One Fin. Corp.*, No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677, at *30–31 (N.D. Cal. Mar. 3, 2025) (refusing to dismiss unjust enrichment claims in a privacy case); *see also A.J. v. LMND Med. Grp.*, No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480, at *4 (N.D. Cal. Oct. 25, 2024) (same).

**H. Plaintiffs' Breach of Implied Covenant of Good Faith Claim is Proper.**

Hilton argues that the "breach of implied covenant" claims must be dismissed because they are identical to Plaintiffs' breach of contract claims. ECF 20 at 21. But Plaintiffs allege Hilton's bad faith in seeking Website users' consent and still tracking them despite representing that users could opt out. *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 634 (N.D. Cal. 2021) (denying dismissal of breach of implied covenant claim where "Plaintiffs allege not only that Google violated the contract between the parties, but also that Google acted in bad faith, such as by circumventing cookie blockers."). Furthermore, as discussed above at Section IV.E, Plaintiffs seek different remedies for each claim, since damages for breach of the implied covenant of good faith are provided under different sections of California code. Because these claims are plead in the alternative and provide different remedies, they are not redundant.

**I. Plaintiffs' Fraud and Misrepresentation Claims Are Sufficiently Pled.**

Hilton regurgitates the same intent arguments addressed above to argue that the Complaint fails to satisfy Fed. R. Civ. P. 9(b) for the fraud and misrepresentation claims. ECF 20 at 21–22. Rule 9(b) requires only that fraud allegations be specific enough to give defendants notice of the particular misconduct which is alleged. *Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760, at *7 (N.D. Cal. Mar. 10, 2022). The "heightened pleading standard" of Rule 9(b) only applies to the circumstances of the fraud and not to the defendant's state of mind. *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1031–32 (9th Cir. 2016), citing *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016). "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). When essential information is within the other parties' knowledge, Rule 9(b) permits pleading knowledge and intent on "information and belief." *See Blake*, 856 F.2d at 1369.

Despite Hilton's assertion to the contrary, Plaintiffs have pleaded "the who, what, when, where, and how" of Defendant's fraud and misrepresentations. They allege that Defendant (the who), fraudulently stated that users could "Decline" cookies (the what), during the class period (when), on the Website (where), and that this fraudulent statement appeared on the cookie consent banner (the how). *See, e.g.*, ECF 1, ¶¶ 1–5, 25–36, 75–98, 162–173 (alleging fraud); ¶¶ 25–36, 81, 89, 97, 164–165 (alleging intentional conduct); ¶¶ 80, 88, 96, 165–166 (alleging reliance); ¶¶ 79, 87, 95, 170–172 (alleging injury). (Additionally, to the extent Hilton has refused to cease its conduct, Plaintiffs' CLRA letter establishes Hilton's knowledge and intent for all claims after that date.)

**J. Plaintiffs Sufficiently Plead Trespass to Chattels.**

"In order to prevail on a claim for trespass based on accessing a computer system, the plaintiff must establish: (1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage." *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069–70 (N.D. Cal. 2000) (citation omitted). A plaintiff may satisfy the damages element by pleading that the trespass "impaired the condition, quality, or value of the personal property." *Fields v.*

*Wise Media, LLC*, No. 12-CV-05160 WHA, 2013 U.S. Dist. LEXIS 136914, 2013 WL 5340490, at *4 (N.D. Cal. Sept. 24, 2013) (citing *Intel Corp. v. Hamidi*, 30 Cal.4th 1342, 1356 (2003)). This includes where the alleged changes "interfere[] with the intended functioning of the system." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012).

The Complaint here pleads trespass to chattels. Hilton's conduct interferes with Plaintiffs' computers' security, which is an important and intended function of those systems. The Ninth Circuit has already ruled that such breaches of privacy are an injury-in-fact sufficient to support standing to assert trespass to chattels. *See, e.g., In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 601 (privacy violation establishes standing for alleged trespass to chattels). Just as breaking open a safe would constitute a trespass to chattel by interfering with that safe's function, placing tracking cookies on a user's computer interferes with that computer's ability to function as its owner intends. The cookies also interfere with the function of Plaintiffs' computers by taking up storage space. *See In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 659 (N.D. Cal. 2024) (trespass to chattels properly pled where plaintiff "ha[s] alleged measurable harm from the loss of available storage space on their devices"); ECF 1 ¶ 207.

The cases Hilton cites are distinguishable. *See Doe v. Google LLC*, 741 F. Supp. 3d 828, 846 (N.D. Cal. 2024) (no allegations of impaired intended function); *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1069 (no allegations of an interference with the intended functioning of the system); *Intel Corp.*, 30 Cal. 4th at 1347 (on motion for summary judgment, no evidence of damages or significant inference). But as described above, this area of law has developed significantly over the past decade, including several key decisions from the Ninth Circuit all but abrogating *In re iPhone Application Litig.*, 844 F. Supp. at 1040.

## V. LEAVE TO AMEND SHOULD BE GRANTED

Plaintiffs respectfully request leave to amend to correct any defects the Court identifies. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990) (a court should grant leave to amend "if it appears at all possible that the plaintiff can correct the defect").

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court fully deny Defendant's Motion to Dismiss or, in the alternative, grant Plaintiffs leave to amend.

Dated: April 25, 2025

**GUTRIDE SAFIER LLP**

*/s/ Anthony J. Patek*
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
kali@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
anthony@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*