**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISHAL SHAH, JONATHAN GABRIELLI, AND CHRISTINE Q. WILEY, as individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HILTON WORLDWIDE HOLDINGS INC.,<br>Defendant. | Case No. 5:25-cv-01018-EKL<br><br>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT<br><br>Hon. Eumi K. Lee<br><br>Hearing Date: September 10, 2025<br>Hearing Time: 10:00 am<br>Courtroom: Courtroom 7<br><br>Amended Complaint Filed: June 25, 2025 |

**TABLE OF CONTENTS**


I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 2

III. LEGAL STANDARD ........ 3

IV. ARGUMENT ........ 3

A. This Court Has Personal Jurisdiction Over Hilton. ........ 3

B. Plaintiffs Plead a Concrete Injury-in-fact. ........ 7

C. Plaintiffs adequately plead their common law privacy claims. ........ 10

1. Plaintiff Alleges Intent. ........ 11

2. Plaintiffs allege that Hilton's invasion of privacy was highly offensive. ........ 12

D. Plaintiffs Have Adequately Pled CIPA Claims. ........ 14

1. Plaintiffs allege "aiding" under CIPA. ........ 16

2. CIPA section 638.51 is not limited to telephones. ........ 19

E. Plaintiffs Adequately Plead Damages for Fraud and Breach of Contract. ........ 21

F. *Sonner* Does Not Apply to Plaintiffs Claims. ........ 22

G. Plaintiffs' Unjust Enrichment Claim May Proceed. ........ 23

H. Plaintiffs' Breach of Implied Covenant of Good Faith Claim is Proper ........ 23

I. Plaintiffs' Fraud and Misrepresentation Claims Are Sufficiently Pled. ........ 24

J. Plaintiffs Sufficiently Plead Trespass to Chattels. ........ 24

V. LEAVE TO AMEND SHOULD BE GRANTED ........ 25

VI. CONCLUSION ........ 26

# TABLE OF AUTHORITIES

***Cases***

*A.J. v. LMND Med. Grp.*, No. 24-cv-03288, 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) .......... 23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 3, 5, 6

*B.K. v. Desert Care Network*, No. 2:23-cv-05021-SPG-PD, 2024 U.S. Dist. LEXIS 152953 (C.D. Cal. Aug. 22, 2024) .......... 19

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990) .......... 25

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 3, 5, 6

*Blake v. Dierdorff*, 856 F.2d 1365 (9th Cir. 1988) .......... 11, 24

*Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) (*en banc*) .......... passim

*Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 17

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 15

*Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132, 2022 U.S. Dist. LEXIS 42760 (N.D. Cal. Mar. 10, 2022) .......... 24

*Bruton v. Gerber Prod. Co.*, 703 F. App'x 468 (9th Cir. 2017) .......... 23

*Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 23

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020) .......... 8, 10

*Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig. ("In re Facebook"))*, 956 F.3d 589 (9th Cir. 2020) .......... passim

*DeSoto v. Yellow Freight Sys.*, 957 F.2d 655 (9th Cir. 1992) .......... 25

*Doe v. Amgen, Inc.*, No. 2:23-cv-7448, 2024 U.S. Dist. LEXIS 144579 (C.D. Cal. Aug. 13, 2024) 16, 17

*Doe v. Google LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... 25

*Doe v. WebGroup Czech, A.S.*, 93 F.4th 442 (9th Cir. 2024) .......... 5

*eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058 (N.D. Cal. 2000) .......... 24

*Elation Sys., Inc. v. Fenn Bridge LLC*, 71 Cal. App. 5th 958, 286 Cal. Rptr. 3d 762 (2020) .......... 22

*ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016) .............................................. 24

*Esparza v. UAG Escondido A1 Inc.*, No. 23-cv-0102, 2024 U.S. Dist. LEXIS 24429 (S.D. Cal. Feb. 12, 2024) .............................................................................................................................. 17

*Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019) ............ 23

*Fields v. Wise Media, LLC*, No. 12-CV-05160, 2013 U.S. Dist. LEXIS 136914 (N.D. Cal. Sept. 24, 2013) .............................................................................................................................. 24

*Fladeboe v. Am. Isuzu Motors Inc.*, 58 Cal. Rptr. 3d 225 (Cal. Ct. App. 2007)................................ 21

*Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836 (N.D. Cal. July 14, 2025) ................................................................................................................ passim

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) ................................................. 19

*Gutierrez v. Converse Inc.*, No. 2:23-cv-06547-RGK-MAR, 2023 U.S. Dist. LEXIS 231056 (C.D. Cal. Oct. 27, 2023) ................................................................................................................ 16

*Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592 (N.D. Cal. 2021)......................................... 13

*Hawkins v. Kroger Co.*, 906 F.3d 763 (9th Cir. 2018) ...................................................................... 12

*Heerde v. Learfield Commc'ns, LLC*, No. 2:23-cv-04493, 2024 U.S. Dist. LEXIS 137781 (C.D. Cal. 2024) .............................................................................................................................. 15

*Heiting v. Taro Pharms. USA*, 709 F. Supp. 3d 1007 (C.D. Cal. 2023)............................................ 15

*Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085 (9th Cir. 2023) ......................................... 5, 7

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272 (2009)........................................................................ 11

*Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1 (1994) ............................................................ 13

*Hubbard v. Google* ,No. 19-cv-07016-SVK, 2025 U.S. Dist. LEXIS 6588 (N.D. Cal. Jan. 13, 2025) .............................................................................................................................................. 22

*In re BPS*, 705 F. Supp. 3d 333 (E.D. Pa. 2023).............................................................................. 10

*In re Carrier IQ,* 78 F. Supp. 3d ....................................................................................................... 15

*In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015) .................. 14

*In re Del Biaggio*, 834 F.3d 1003 (9th Cir. 2016) ............................................................................. 20

*In re Facebook Privacy Litig.*, 192 F. Supp. 3d 1053 (N.D. Cal. 2016)............................................ 22

*In re Google Location History Litig.*, 514 F. Supp. 3d 1147 (N.D. Cal. 2021)................................ 13

*In re Google Referrer Header Privacy Litig.*, 465 F. Supp. 3d 999 (N.D. Cal. 2020) ....................... 21

*In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968 (N.D. Cal. 2014) ................................ 12

*In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012)..................... 12, 24, 25

*In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650 (N.D. Cal. 2024) ...................................... 25

*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014) ................................................................. 14

*In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113 (N.D. Cal. 2018) ........ 21

*Intel Corp. v. Hamidi*, 30 Cal.4th 1342 (2003) ................................................................................ 24

*James v. Walt Disney Co.*, 701 F. Supp. 3d 942 (N.D. Cal. 2023) .................................................. 16

*Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951, at *3 (9th Cir. May 31, 2022) ............................................................................................................................ 19

*Jones v. Ford Motor Co.*, 85 F.4th 570 (9th Cir. 2023)........................................................................ 9

*Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) ...................... 13, 15, 23

*Kenyon v. W. Union Tel. Co.*, 100 Cal. 454 (1893) ........................................................................ 21

*King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419 (E.D. Cal. June 9, 2025).................. 15

*Kishnani v. Royal Caribbean Cruises Ltd.,* No. 25-cv-01473, 2025 U.S. Dist. LEXIS 120002 (N.D. Cal. June 24, 2025) ......................................................................................................... 10

*Kotlarsz v. Integrity Vehicle Servs., Inc.*, No. 8:24-cv-00569, 2024 U.S. Dist. LEXIS 213565 (C.D. Cal. Sep. 3, 2024)................................................................................................................ 16

*Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096 (C.D. Cal. 2023) ......................................................... 9

*Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 U.S. Dist. LEXIS 130778 (N.D. Cal. Sep. 23, 2016) .............................................................................................................................. 9

*Mikulsky v. Bloomingdale's, LLC*, Nos. 24-3564, 24-3837, 2025 U.S. App. LEXIS 15222 (9th Cir. June 20, 2025)........................................................................................................... 5, 7, 15

*Mirmalek v. L.A. Times Communs. LLC*, No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) ........................................................................................... 19, 20

*Nguyen v. Stephens Institute*, 529 F. Supp. 3d 1047 (N.D. Cal. 2021)............................................. 12

*PPG Indus., Inc. v. Transamerica Ins. Co.*, 20 Cal. 4th 310, 84 Cal. Rptr. 2d 455, 975 P.2d 652 (1999).............................................................................................................................. 21

*Raffin v. Medicredit, Inc.*, No. CV 15-4912, 2016 U.S. Dist. LEXIS 181819 (C.D. Cal. Dec. 19, 2016) .............................................................................................................................. 9

*Redstone M&A Grp., LLC v. Lasalle Capital Grp. Ii-A, L.P.*, 634 F. Supp. 3d 1251 (N.D. Ga. 2022)8

*Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955 (N.D. Cal. Oct. 23, 2019) .................... 13, 16

*Rodriguez v. Ford Motor Co.*, No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685 (S.D. Cal. Dec. 3, 2024) .................... 14

*Rodriguez v. Google LLC* ("*Rodriguez I*"), No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074 (N.D. Cal. May 21, 2021) .................... 12, 13

*Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 1290 (N.D. Cal. Jan. 3, 2024) .................... 10, 22

*Romo v. Stewart Title of Cal.*, 35 Cal. App. 4th 1609, 42 Cal. Rptr. 2d 414 (Ct. App. 1995) .................... 21

*Ruiz v. Gap, Inc.*, 380 F. App'x 689 (9th Cir. 2010) .................... 22

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004).................... 3, 6

*Shah v. Capital One Fin. Corp.*, No. 24-cv-05985, 2025 U.S. Dist. LEXIS 42677 (N.D. Cal. Mar. 3, 2025) .................... 23

*Shah v. Fandom, Inc.*, No. 24-cv-01062-RFL, 2024 U.S. Dist. LEXIS 193032 (N.D. Cal. Oct. 21, 2024) .................... 19, 20

*Shahnaz Zarif v. Hwareh.com, Inc.*, No. 23-cv-0565, 2025 U.S. Dist. LEXIS 26519 (S.D. Cal. Feb. 12, 2025) .................... 17

*Silver v. Stripe, Inc.*, No. 4:20-cv-08196-YGR, 2021 U.S. Dist. LEXIS 141090 (N.D. Cal. 2021) .. 13

*Smith v. Yeti Coolers, LLC,* No. 24-cv-01703-RFL, 2024 U.S. Dist. LEXIS 194481 (N.D. Cal. Oct. 21, 2024) .................... 17, 18

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) .................... 22

*Spokeo Inc. v. Robins*, 578 U.S. 330, 340 (2016) .................... 7

*Sprague v. Frank J. Sanders Lincoln Mercury, Inc.*, 120 Cal. App. 3d 412, 174 Cal. Rptr. 608 (Ct. App. 1981) .................... 21

*St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024).................... 12, 15, 16

*Stevens v. TD Bank, N.A.*, No. 24-8311 (RMB/AMD), 2025 U.S. Dist. LEXIS 122433, at *6-7 (D.N.J. June 27, 2025) .................... 10

*Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732 (N.D. Cal. 2023).................... 5

*Thomas v. Papa John's Int'l, Inc.*, Nos. 24-3557, 24-3834, 2025 U.S. App. LEXIS 15039 (9th Cir. June 18, 2025).................... 5, 7

*Tribeca Cos., LLC v. First Am. Title Ins. Co.*, 239 Cal. App. 4th 1088 (2015).................... 22

*United States v. Christensen*, 828 F.3d 763 (9th Cir. 2015) .......... 17

*Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043 (N.D. Cal. 2018) .......... 13

*Wilson v. Google*, No. 24-cv-03176-EKL, 2024 U.S. Dist. LEXIS 55629 (N.D. Cal. Mar. 25, 2025) .......... 19

*Wolfe v. Strankman*, 392 F.3d, 358 (9th Cir. 2004) .......... 3

*Yangtze Memory Techs., Inc. v. Strand Consult*, No. 24-cv-03454-NW, 2025 U.S. Dist. LEXIS 96325, (N.D. Cal. May 20, 2025) .......... 6

*Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962 (N.D. Cal. 2023) .......... 1, 8

*Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......... 14

***Statutes***

Cal. Civ. Code § 3360 .......... 22

Cal. Penal Code § 638.50(b) .......... 19

Cal. Penal Code 638.51(a) .......... 19

***Rules***

Fed. R. Civ. P. 8(a)(3) .......... 23

Fed. R. Civ. P. 9(b) .......... 24

## I. INTRODUCTION

Defendant Hilton Worldwide Holdings, Inc.'s ("Defendant" or "Hilton") Motion to Dismiss ("MTD") the First Amended Complaint ("FAC") mirrors its first Motion to Dismiss, and should be denied for the same reasons. The FAC alleges that Hilton caused and aided third party collection of California users' private communications ***against users' express instructions***, ***even after visitors explicitly rejected and opted out of such cookies, and despite promising not to do so***. The FAC adds details regarding Defendant's activities in California and direct role in the alleged events, and details about the Plaintiffs' visits to the Website and the personal information it collected. This is more than sufficient to plead claims for relief. *See Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *21-22 (N.D. Cal. July 14, 2025) (denying motion to dismiss complaint alleging website violated privacy laws by using tracking cookies after promising not to).

With respect to personal jurisdiction, the FAC makes the requisite *prima facie* showing of this Court's specific jurisdiction over Hilton. The FAC documents Defendant's statements characterizing it as owning and managing hotel properties within California. It also identifies specific steps Defendant takes to tailor and aim its Website to California Consumers, including "appealing to" a California audience by citing compliance with California law, and collection of "IP addresses and geolocation data" to "reveal" California consumers and modify those users' experience of the Website. *Gabrielli*, 2025 U.S. Dist. LEXIS at *22-23. Under controlling law, Hilton's Website is thus an interactive platform that "expressly aims its wrongful conduct toward" into California by Hilton's "own choice." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 755 (9th Cir. 2025) (*en banc*). Defendant has thus "purposefully directed" its conduct into California. *Id.* Further, because the harms the FAC alleges stem from Hilton's direction of its Website into California, the claims arise out of and related to Hilton's activities in California. See *Gabrielli*, 2025 U.S. Dist. LEXIS at *23-24.

Hilton's motion to dismiss presents the same standing arguments as it first motion. But as in the first motion to dismiss, "a concrete injury for Article III standing purposes" occurs when a party or third party "tracks a person's internet browser activity without authorization." *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 969–70 (N.D. Cal. 2023) (cleaned up); *see also Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *16 (finding allegation that Website collects personal communications and

"deprive[s] [one] control of personal information" is an Article III injury). Plaintiffs thus have Article III standing.

The Court can easily dispense with the remainder of Hilton's arguments. The FAC pleads that Defendant owns and operates the Website, installed third-party resources that shared private user data with those third parties, promised to turn those resources off, and then did not do so. FAC (hereinafter "FAC") ¶¶ 14, 52-71. Those are all intentional acts. Defendant's argument that its conduct was not "highly offensive" is based on the same outdated law as its standing arguments, and fails for the same reason. Hilton's fraud, breach of contract, and *Sonner* arguments are all based on outdated and inapposite law. This Court should deny Hilton's motion in its entirety.

## II. FACTUAL BACKGROUND

Plaintiffs presented the facts of this case in response to Hilton's first motion to dismiss (ECF 23), and will thus summarize them here. When California consumers visit Hilton's ecommerce website (www.hilton.com, the "Website"), Hilton displays a popup cookie banner and Privacy Statement offering them the option to opt-out of tracking cookies. FAC ¶ 72. Plaintiffs visited the Website and opted-out of tracking. Despite this, Hilton's Website code caused several third parties, including Google, TikTok, Amazon, Microsoft, Snap, and Adobe (collectively, the "Third Parties"), to install tracking cookies on Plaintiffs' computers. *Id.* ¶ 66. Hilton thus aided the Third Party's collection of California users' personal information and communications against users' wishes. *Id.* ¶ 63; *see id.* ¶¶ 56, 65. This resulted in disclosure not only of data such as IP and email addresses, but of specific user communications such as search strings for specific locations, as well as personal data including both demographic data and preferences. *Id.* ¶ 57. The Third Parties and Hilton both used the personal information to profile users and target them with advertising. *Id.* ¶¶ 37–69.

This Court granted Defendant's first motion to dismiss based on a lack of personal jurisdiction with leave to amend. ECF 30. On amendment, Plaintiffs addressed the Court's concerns by adding allegations regarding 1) Defendant's operations of and profitability from hotels in California (FAC ¶¶ 15-24); 2) Defendant's improper use of Californian's data by causing Third Parties to track users and collect their data across the web, while knowing the users are located in California and the harm will occur in California (FAC ¶¶ 38-48); 3) Defendant's use of a web server located in California

(FAC ¶ 26) and 4) Defendant's explicit admission that it must comply with California law and that California's privacy laws may impede its operations. (FAC ¶¶ 29-36.).

## III. LEGAL STANDARD

In a 12(b)(1) motion, the court assumes that the allegations are true and draws all reasonable inferences in the plaintiff's favor. *Wolfe v. Strankman*, 392 F.3d, 358, 362 (9th Cir. 2004). On a 12(b)(2) motion, uncontroverted facts in the complaint must be taken as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

To survive a Rule 12(b)(6) motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The court must assume well-pled allegations are true and make reasonable inferences in the plaintiff's favor. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

## IV. ARGUMENT

### A. This Court Has Personal Jurisdiction Over Hilton.

A defendant is subject to specific jurisdiction if it (1) "purposefully avails [itself] of the privilege of conducting activities in" or "purposefully direct[s]" its activities "toward" the forum state; (2) the claim "arises out of or relates to the defendant's forum-related activities"; and (3) the exercise of jurisdiction "comport[s] with fair play and substantial justice." *Briskin*, 135 F.4th 750-51 (citing *Schwarzenegger*, 374 F.3d at 802). The Ninth Circuit has clarified that the first element of the personal jurisdiction test may be satisfied by "purposeful availment, purposeful direction, or by some combination thereof." *Id.* at 751 n.10. Here, the personal direction test applies where Plaintiffs' claims sound in tort. *Id*. at 751 ("For claims sounding in tort, like the privacy and data use violations Briskin asserts here, we most often employ a purposeful direction analysis."). Hilton challenges the FAC's sufficiency under only the first prong—purposeful direction. MTD at 20.

Plaintiffs' amendments establish that Defendant purposefully directs its activities towards California. Plaintiffs allege that Defendant controls Hilton operations and has decided to add hotels

to the Hilton "system," including hotels in California. FAC ¶¶ 15-24. Plaintiffs also allege that Defendants operate hotels in California to take advantage of the California market. According to Defendant, its website is critically important to marketing and revenue generation, and the Website is used to generate reservations for California residents and for California hotels. *Id.* ¶¶ 29-34. Defendant also explicitly admits to availing itself to California laws. Defendant identified California privacy laws as a restriction that would "adversely affect current or planned marketing activities and cause [Defendant] to change [its] marketing strategy" and "affect [Defendant's] ability to maintain communications with [its] customers and acquire new customers." *Id.* ¶ 36. Further, Defendant uses at least one Website server located in California designed its website to be able to determine when a user is from California. *Id.* ¶¶ 26 & 39. "Thus, Defendant knows when a Website visitor is located in California, and causes cookies to be placed on the user's device that remain on the device and allow third parties to collect and amass data regarding the California user's online activity." *Id.* ¶ 40.

Recently, Judge Tigar in this District found similar allegations to be sufficient to confer jurisdiction in a similar case. *Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *18-24. Like Hilton does here, "Motorola argue[d] that merely operating a national website accessible in California does not establish purposeful direction toward the forum state." *Id.* at *18. The court disagreed and found jurisdiction where the plaintiff alleged "that [defendant] purposefully designed its website to target and collect data from California users, including by claiming compliance with California law in its Privacy Statement…. without specifically mentioning the laws of any other state"; and 2) that "[defendant] knowingly collected the data of California residents because its website allegedly collected IP addresses and geolocation data that revealed where the users resided." *Id.* at *22-23. So too here.

Like in *Gabrielli*, Plaintiffs here have alleged that Defendant has specifically identified California law as a law with which it must comply. FAC ¶ 36. And, Plaintiffs have alleged that Defendant collects the IP addresses and geolocation data that reveals where the users resided, and explicitly informed California users that they may opt out of the sale of their personal information "by clicking on the banner that appears on any Hilton website when you access that site from an IP

address that relates to California." *Id.* ¶ 42. Not only does Defendant collect the geolocation data as in Motorola, but Defendant causes its website to behave differently based on that information.

The FAC pleads that Hilton "expressly aimed" its wrongful conduct toward California by its "own choice" and as part of its "regular course of business." *Briskin*, 135 F.4th at 750-51. Specifically, Hilton "modified its Website specifically to take advantage of the California market" and "implemented code in its Website that geolocates each visitor, and particularly those visiting the Website from a location in California." ECF ¶¶ 37–38. "Hilton also utilizes third parties to collect and track information regarding visitors to the Website" (FAC ¶ 34). The FAC further alleges that "Hilton uses third party cookies and tracking technology to track and collected browsing data from California consumers. Hilton uses this information to target ads to these consumers, 'maintain relationships' with customers, and 'acquire new customers.'" (FAC ¶ 40). No part of the above is "random" or "fortuitous." *See also Thomas v. Papa John's Int'l, Inc.*, Nos. 24-3557, 24-3834, 2025 U.S. App. LEXIS 15039, at *3 (9th Cir. June 18, 2025) (where defendant uses the website "to intentionally collect information that invades the privacy of users, knowing that any alleged harm will be suffered in California," defendant purposefully directs itself to the forum); *Mikulsky v. Bloomingdale's, LLC*, Nos. 24-3564, 24-3837, 2025 U.S. App. LEXIS 15222, at *2-3 (9th Cir. June 20, 2025) (quoting *Briskin*). *See also Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1088 (9th Cir. 2023) (finding sale of herbal supplements into state through online store was purposeful direction supporting personal jurisdiction); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 741 (N.D. Cal. 2023) (same, for online hardware goods store).

Hilton's attempts to undermine Plaintiffs' showing of specific jurisdiction are unpersuasive.[1] First, Hilton erroneously cites the "something more" standard. But the "something more" test only applies when a website is *passive*, not interactive. *Compare Doe v. WebGroup Czech, A.S.*, 93 F.4th 442, 452-53 (9th Cir. 2024) ("operating even a ***passive*** website ***in conjunction with 'something more'***—conduct directly targeting the forum—***is sufficient***.") (citations omitted), *with Yangtze Memory Techs., Inc. v. Strand Consult*, No. 24-cv-03454-NW, 2025 U.S. Dist. LEXIS 96325, at *11

[1] Hilton also attributes its alleged conduct to an "inadvertently malfunctioning cookie banner." MTD at 9. Setting aside the tacit omission to wrongdoing, this is a factual dispute, not appropriate for a 12(b)(6) motion. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

(N.D. Cal. May 20, 2025) ("When the website itself is the ***only*** jurisdictional contact, the Court's analysis turns on whether there is 'something more' or 'conduct directly targeting the forum.'") (emphasis added). That is not the case here, as described above. Similarly, Hilton complains that "[p]ersonal jurisdiction would be boundless if a defendant holding company not registered to do business in California did 'something more' simply by operating a globally accessible website[.]" MTD at 10. But the Ninth Circuit drew clear boundaries in *Briskin* to distinguish cases like the one here from the simple operation of a passive website, and the FAC alleges that Defendant does far more than simply operate a globally accessible website.

Hilton's attempts to distance itself from its public admissions that it expressly aims its activities at California is similarly ineffectual. The FAC notes numerous announcements and statements by Defendant and its CEO in which Defendant—despite its putative status as a holding company—characterizes California "Hilton" properties and the rental of those properties through the Website as central to *its* profitability. *See* FAC,¶¶ 15-24. Hilton ignores all of these except for its 10-K, which it argues cannot be attributed to it even though the 10-K itself states that all references to Hilton and the Company refer to "Hilton Worldwide Holdings, Inc." FAC ¶ 15. Further, the Website Terms of Use say that Defendant owns the Website, so the 10-K's references to the Website's operation can only be attributed to Defendant, and those references admit that the Website (which necessarily include the alleged data collection and sales) is key to Defendant's profitability, including the profitability derived from California users. *Id.* at ¶ 36. That is far more than "mere ownership" of a "wholly independent" subsidiary. And to the extent there is any conflict between the Complaint's allegations and Hilton's affidavits, the Court must make inferences in Plaintiffs' favor. *Schwarzenegger*, 374 F.3d at 800; *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

Nor is the fact that its Website is "global" persuasive, since *Briskin* made clear that a website that "cultivates a '***nationwide*** audience for commercial gain'" can still "expressly aim" a defendant's conduct into California to support personal jurisdiction there. *Briskin*, 135 F.4th at 758 (internal citations omitted)(emphasis added). Hilton also falsely asserts that it, unlike Shopify, it did not use its "own code" to geolocate users. MTD at 22. The FAC cites actual geolocation data collected and presented by the Website that Defendant coded. FAC ¶ 39.

Finally, Hilton is wrong on the law when it claims that "References to California statutes in Hilton's Global Privacy Statement does not evince express aiming." MTD at 11. Indeed, the court in *Gabrielli* held that **"Motorola's specific identification of California privacy law in its website Privacy Statement thus serves as evidence of express aiming."** *Gabrielli*, 2025 U.S. Dist. LEXIS 133836, *22. "While the Ninth Circuit in *Briskin* made clear that 'differential targeting' was no longer a ***requirement*** for express aiming, it expressly stated that 'such treatment may serve as ***evidence*** that a defendant expressly aimed its conduct toward the forum state,' as it did in prior cases." *Id*. (quoting *Briskin*, 135 F.4th at 758 n.17)(emphasis added). At no point do Plaintiffs allege that reference to California in Hilton's Global Privacy Statement—***alone***—supports purposeful availment. Hilton's reference to California law is just ***one*** factor of many, and is simply *more* evidence that Hilton "expressly aimed" its conduct towards California. "[A]ddressing legal compliance [that is] relevant almost exclusively" to a certain jurisdiction on a website demonstrates active targeting of that jurisdiction. *Will Co. v. Ka Yeung Lee*, 47 F.4th 917, 923 (9th Cir. 2022).

Plaintiffs' complaint, like those in *Briskin*, *Papa John's*, *Mikulsky*, *Herbal Brands,* and *Gabrielli*, alleges facts sufficient to demonstrate Hilton's purposeful direction and express aiming of its Website activity towards California. Hilton does not contest prongs two and three. Accordingly, Plaintiffs have met their burden of making a *prima facie* showing of this Court's specific jurisdiction over Hilton.

**B. Plaintiffs Plead a Concrete Injury-in-fact.**

A "concrete" injury-in-fact is one that is "real" as opposed to "abstract." *Spokeo Inc. v. Robins*, 578 U.S. 330, 340 (2016). This distinction focuses on "de facto" versus hypothetical harms; "intangible" harms may still be concrete. *See id.* (discussing deprivations of rights as concrete). In determining whether an intangible harm is concrete, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id*. at 340–341. "[S]tate law can [also] create interests that support standing in federal courts." *Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig. ("In re Facebook"))*, 956 F.3d 589, 599 (9th Cir. 2020).

Here, Plaintiffs allege multiple claims: invasion of privacy, breach of contract, and fraud/deceptive advertising. Defendant attacks Plaintiffs' invasion of privacy claims as insufficiently "concrete," but fails to address standing for the contract and deceptive advertising claims. *See In re Facebook*, 956 F.3d at 598–99 (distinguishing standing for CIPA and wiretapping claims from standing for trespass to chattels, fraud, larceny, and violations of the CDAFA, and analyzing them separately). Hilton's motion thus provides no basis for dismissing Plaintiffs' breach of contract and deceptive advertising/unfair business practice claims for lack of "concreteness." Nor could it. Plaintiffs' breach of contract claim is directly analogous to a traditional claim for breach of a non-disclosure agreement. *See, e.g.*, *Redstone M&A Grp., LLC v. Lasalle Capital Grp. Ii-A, L.P.*, 634 F. Supp. 3d 1251, 1253 (N.D. Ga. 2022) (party to NDA has standing to sue for breach). NDAs traditionally cover future plans and technical data such as that disclosed here, and its disclosure is a concrete injury. Similarly, Plaintiffs' fraud, deceptive advertising, and unjust enrichment claims allege the concrete harm of inducing Plaintiffs to give up such information in return for nothing. The Ninth Circuit has expressly recognized such harms as concrete in the context of unjust enrichment. *See In re Facebook*, 956 F.3d at 598 ("Plaintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data sufficient to confer Article III standing").

Plaintiffs' various privacy claims are also concrete under Ninth Circuit Law. In *In re Facebook*, the Ninth Circuit held that users had "standing to bring claims for invasion of privacy, intrusion upon seclusion, breach of contract, breach of the implied covenant of good faith and fair dealing, as well as claims under the Wiretap Act and CIPA, because they adequately alleged privacy harms." *Id.*, 956 F.3d at 602–03. Accordingly, control of personally-identifiable browsing history, including likes and dislikes, is a "concrete" interest that creates standing for privacy related claims. *Id.*; *see also Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1119 (9th Cir. 2020) (unconsented interception of URLs and private messages held a concrete injury); *see also Yockey*, 688 F. Supp. 3d at 969–970 (noting CIPA codifies right to privacy that unconsented third party tracking of browsing habits violates).

CIPA in particular is an example where the legislature has "elevated" a privacy interest to a right whose violation creates standing. *See, e.g.*, *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1103

(C.D. Cal. 2023) ("[V]iolations of plaintiffs' statutory rights under CIPA, even without more, constitute injury in fact…") (brackets removed); *Raffin v. Medicredit, Inc.*, No. CV 15-4912, 2016 U.S. Dist. LEXIS 181819, at *3 (C.D. Cal. Dec. 19, 2016) ("[D]istrict courts in the Ninth Circuit consistently have concluded that, to satisfy injury in fact, a plaintiff in a CIPA action need not allege actual harm beyond the invasion of the private right conferred by the statue."); *Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 U.S. Dist. LEXIS 130778, at *41 (N.D. Cal. Sep. 23, 2016) (violations of statutory rights under CIPA constitute concrete injury).

Thus, the "relevant law is settled" that, when a wiretapping statute like CIPA "codifies such substantive privacy rights," violating that statute "gives rise to a concrete injury sufficient to confer standing." *Jones v. Ford Motor Co.*, 85 F.4th 570, 574 (9th Cir. 2023).

Hilton argues incorrectly that Plaintiffs have not suffered injury in fact because there is "no alleged collection or disclosure of plaintiffs' *personal* information." MTD at 5; *id.* at 6 (emphasis added). This argument is disingenuous. The FAC alleges that Hilton placed cookies that captured "***browsing history, visit history, website interactions,*** *user input data, demographic information, interests and preferences, shopping behaviors,* ***device information, referring URLs, session information, user identifiers, and/or geolocation data***." FAC ¶ 65 (emphasis added); *see also id*. at ¶¶ 66-108 (explaining breadth of data collected by Third Parties). The FAC explicitly alleges specific data that Plaintiffs supplied (e.g., location search strings, room preferences, dates of planned travel, number of visitors) and alleges that the information was transmitted to Hilton and captured by Third Parties because of the cookies Hilton caused to be placed on its website . It also alleges Hilton caused the placement of the Third Party cookies, and that those cookies collect the above data as part of their normal operations. These allegations are specific enough to support standing. *In re Facebook*, 956 F.3d at 598; *see also Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *16-18 (holding that alleging the normal operation of the cookies identified in the complaint plausibly established that the identified data was collected).

Hilton's reliance on *Mikulsky v. Noom* and *In re BPS Direct, LLC* is misplaced. MTD at 6-7. In *Mikulsky v. Noom, Inc.,* 682 F. Supp. 3d 855, 864-65 (S.D. Cal. 2023), the court found no standing because the plaintiff had alleged disclosure of "personal information" without any more detail, which

did not allow the court to determine "whether [p]laintiff has a protectable privacy interest in that information." Here, as discussed above, Plaintiffs have alleged specific data that was disclosed, such as search strings and URLs visited, as well as a collection of aggregated data to construct detailed profiles about Plaintiffs' habits and interests, all of which is squarely within the types of browsing activity the Ninth Circuit deemed protectable in *In re Facebook* and *Campbell*. *See In re Facebook*, 956 F.3d at 598–599 (finding concrete privacy interest in browsing data); *Campbell*, 951 F.3d at 1119 (same). Similarly, the complaint in *Kishnani v. Royal Caribbean Cruises Ltd.,* No. 25-cv-01473, 2025 U.S. Dist. LEXIS 120002, at *6 (N.D. Cal. June 24, 2025), made four "general allegations" about "data" and "information" collection that failed to establish that protected information was collected in a personally-identifiable way. *Id.* Similarly, in *In re BPS*—an out-of-circuit case—the court excluded all browsing data from "private" data. *In re BPS*, 705 F. Supp. 3d 333, 353–358 (E.D. Pa. 2023). *Stevens v. TD Bank, N.A.*, No. 24-8311 (RMB/AMD), 2025 U.S. Dist. LEXIS 122433, at *6-7 (D.N.J. June 27, 2025), is also inapposite because it too failed to address California law, which creates statutory rights not at issue in that case. Binding Ninth Circuit precedent compels the opposite here.

Hilton next argues that the FAC fails to allege concrete damages. Specifically, Hilton argues Plaintiffs have no standing because they have not and cannot allege a "diminution in value." MTD at 7. This conflates standing and damages. Defendant's concrete invasions of Plaintiffs' privacy and contractual rights are cognizable injuries; valuing those injuries is different. Even where economic harm is required (e.g., the UCL claims), diminution in value is but one method for calculating that injury. Plaintiffs also plead statutory damages (FAC ¶¶ 198, 210) and that "the value of personal data is measured as either the consumer's willingness to accept compensation to sell [their] data or the consumer's willingness to pay to protect [their] information." FAC ¶ 112. This is sufficient for standing. *See Rodriguez v. Google LLC ("Rodriguez II")*, No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 1290, at *35 (N.D. Cal. Jan. 3, 2024) (granting *class certification* when Plaintiffs' damages were based on "User's willingness to pay to prevent [their] data collection and [the] organization's willingness to pay for data collection").

**C. Plaintiffs adequately plead their common law privacy claims.**

The parties agree that California's common law invasion of privacy and intrusion upon seclusion are analyzed together and require that Plaintiffs show: (1) an intentional intrusion into a matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion must be "highly offensive." *In re Facebook*, 956 F.3d at 606; *see also Hernandez v. Hillsides, Inc*., 47 Cal. 4th 272, 285–97 (2009). Claimant easily satisfies both requirements.

**1. Plaintiff Alleges Intent.**

The FAC pleads facts sufficient to establish Defendant's intent to invade Plaintiffs' privacy. The FAC alleges that Hilton "owns and operates" the Website. FAC ¶ 25. It further alleges that "Defendant 'voluntarily integrated 'third-party resources' from the Third Parties into its Website programming." *Id.* ¶ 52; *id.* ¶ 59. Hilton installed the third-party resources on its Website that collected website users' Private Communications. *Id.* ¶¶ 16–21; *see generally id*. And, Hilton falsely promised users they could "Opt-out" of the above. *Id*. ¶¶ 61-65. Having done so, Hilton necessarily knew that, at a minimum, it needed to confirm such cookies were not used. As the FAC alleges, "Defendant knew, or should have known, how the Website functioned, including the Third Party's resources it installed on the Website and the third-party cookies in use on the Website, through testing the Website, evaluating its performance metrics by means of its accounts with Third Parties, or otherwise, and knew, or should have known, that the Website's programming allowed the third-party cookies to be placed on users'— including Plaintiffs'—browsers and devices and/or transmitted to the Third Parties along with users' Private Communications even after users attempted to "Opt Out" of cookies, which Defendant promised its users they could do." *Id.* ¶ 214. At the pleadings stage, where it is permissible to allege intent based on "information and belief," this is more than sufficient. *Blake v. Dierdorff*, 856 F.2d 1365, 1369 (9th Cir. 1988); Fed. R. Civ. P. 11. Hilton cites a single sentence in Plaintiffs' FAC to argue that the FAC "does not (and cannot) allege any intentional conduct." MTD at 12. This argument, which is based on cherry-picking a single sentence and quoting it out of context, ignores the FAC's clear allegations, described above. In a throwaway sentence, Hilton argues that Plaintiffs "rely on an alleged error rather than intentional conduct." MTD at 12 (quoting phrase "Defendant failed to prevent cookies from being placed"). But Hilton offers no evidence that its installation of third-party tracking cookies was simply an "error" or "unintentional malfunction," *see id.* at 1, 3, 10, 15, 22. Even if it did,

it would be improper to disregard the FAC's allegations and make such factual findings in a motion to dismiss. *See Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *29 ("Motorola's assertion that the alleged continued usage of cookies was due to a 'bona fide error,' is an improper contention of fact at this stage."); *Hawkins v. Kroger Co.*, 906 F.3d 763, 767 n.2 (9th Cir. 2018) (A court must "accept the complaint's well-pleaded factual allegations as true, and construe all inferences in the plaintiff's favor for the purposes of evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)"). Furthermore, to the extent Hilton is arguing a defense of mistake, that is an affirmative defense based on disputed facts, and thus cannot support dismissal. *See Nguyen v. Stephens Institute*, 529 F. Supp. 3d 1047, 1056 (N.D. Cal. 2021) ("An affirmative defense may not ordinarily be raised on a motion to dismiss.").

**2. Plaintiffs allege that Hilton's invasion of privacy was highly offensive.**

Hilton's collection and disclosure of data after promising visitors it would not do so is highly offensive. *See St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *36 (N.D. Cal. Oct. 1, 2024) (finding that "defendant's representations that sensitive information would not be disclosed" made the disclosure highly offensive); *Rodriguez v. Google LLC* ("*Rodriguez I*"), No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074, at *28-29 (N.D. Cal. May 21, 2021) (Google interception of "browsing habits and histories," including URLs, browsing histories, and search queries held to support intrusion upon seclusion and invasion of privacy claims). Hilton relies on outdated cases, including *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968 (N.D. Cal. 2014), and *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012), to asserts that the "data elements identified in the FAC" are not "highly offensive" invasions of privacy. MTD at 12.

More recent cases, such as *In re Facebook*, 956 F.3d at 602– 03 (discussed *supra*, at 8), have overruled those older cases. Under current law, the "use of cookies to track and compile internet browsing histories" can invade users' privacy because they enable "access to a category of information otherwise unknowable and implicate privacy concerns." *Id.* at 603. Thus, many recent district court decisions have recognized that the tracking and amassing of online data without consent is highly offensive. *See, e.g., Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928, 942 (N.D.

Cal. 2023) (the accumulation of online data was an invasion of privacy); *Silver v. Stripe, Inc.*, No. 4:20-cv-08196-YGR, 2021 U.S. Dist. LEXIS 141090, at *17–18 (N.D. Cal. 2021) (finding plaintiff stated claims for intrusion upon seclusion based on the aggregation of data); *In re Google Location History Litig.*, 514 F. Supp. 3d 1147, 1157–58 (N.D. Cal. 2021) (finding the continuous collection of data when users turned off the "location history" setting was highly offensive); *Rodriguez I*, 2021 U.S. Dist. LEXIS at *27 (users have a privacy interest in their internet-wide browsing history); *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 600 (N.D. Cal. 2021) (collection and sharing of data when the app was closed was an invasion of privacy).

Plaintiffs have alleged that Hilton allows the Third Parties to collect similar data when it expressly promised it would not. FAC ¶ 56 (describing "Private Communications" to include browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behavior, device information, referring URL, session information, user identifiers, and geolocation data). This is highly offensive. In any event, the question of whether an intrusion is "highly offensive" is one that courts do not resolve on the pleadings because it is fact-intensive and entails weighing the "extent and gravity of the invasion." Hill v. Nat'l Collegiate Athletic Ass'n, 7 Cal. 4th 1, 8 (1994); *see also In re Facebook*, 956 F.3d at 606 (stressing the uniquely subjective nature of the "highly offensive inquiry" before concluding it "cannot be resolved at the pleading stage"); *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955, at *9 (N.D. Cal. Oct. 23, 2019) ("a jury could conclude" that the intrusion into plaintiff's identity and browsing habits "is a highly offensive breach of norms"); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018) (whether conduct rises to the level of highly offensive "is indeed a factual question best left for a jury"). Hilton also disingenuously asserts that Plaintiffs do not allege *their* personal information was involved. MTD at 12. But this reading strains credulity. Plaintiffs have alleged that Hilton allows the Third Parties to collect data from *all* Website users. FAC ¶¶ 14–24; *see id.* ¶ 56 ("the third-party cookies stored on and/or loaded from users' devices when they interact with the Website are transmitted to those third parties, enabling them to surreptitiously track in real time and collect Website users' personal information, such as their

browsing activities and private communications with Defendant"). It necessarily follows that Plaintiffs' information was disclosed as well.

**D. Plaintiffs Have Adequately Pled CIPA Claims.**

Plaintiffs allege two claims under CIPA. First, Plaintiffs allege a wiretapping claim under the fourth prong of Section 631(a) which makes liable persons who aid others who "unlawfully do, or permit, or cause to be done" either "(1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire, [i.e., eavesdropping,] and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Rodriguez v. Ford Motor Co.*, No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685, at *12 (S.D. Cal. Dec. 3, 2024) (cleaned up).2 Second, Plaintiffs allege that Hilton's conduct violates CIPA § 638.51, which prohibits the unconsented installation and use of "pen registers" and "trap and trace devices." Hilton's challenges to these claims are meritless.Plaintiffs allege "contents" were intercepted.

CIPA prohibits interception of "contents" of communications. "Contents" of communications "refer[] to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *see also Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (explaining CIPA protects "user-generated material" but not "routine identifiers"). The distinction between "contents" and "record information" is largely in how the information is generated: "record information regarding the characteristics of the message that is generated in the course of the communication" is not included in the definition of "contents." *Id.* at 1106; *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1082 (N.D. Cal. 2015). However, information that would otherwise constitute record information can become content when it is the information the user communicates, rather than information automatically generated by a web browser. *In re Zynga Privacy Litig.*, 750 F.3d at 1107.

[2] Hilton argues that the first clause of CIPA does not apply to cookies, and that the second clause does not create liability for recording its own conversations. MTD at 13–14. Plaintiffs do not allege that Hilton is liable under these clauses.

Defendant argues that Plaintiffs have failed to allege the interception of the "contents" of a communication and argues that only record information is intercepted. But Plaintiffs allege interception of user-input data such assearch terms, the location of travel, number of people traveling, and lodging preferences, all of which is broadly recognized to be the "contents" of communication under CIPA. *See* FAC, ¶¶ 56, 58 (information collected includes, *inter alia*, "the Website user's affirmative decisions, actions, choices, [and] preferences," including "user input data" and URLs); *id.*, ¶ 56 ("user input data" includes "search queries, dates of visits, number of people, the user's name, age, gender, email address, location, location preferences within a city, and/or payment information"); *Heerde v. Learfield Commc'ns, LLC*, No. 2:23-cv-04493, 2024 U.S. Dist. LEXIS 137781, at *14 (C.D. Cal. 2024) ("Search terms constitute 'contents' of a communication."); *see also Zynga*, 750 F.3d at 1108–09 (explaining URL data may contain communication "contents" if a user's search terms are included); *St. Aubin,* 2024 U.S. Dist. LEXIS 179067, at *11 (URLs that reveal a user's queries reflect the "contents" of a communication); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. 2023) ("full-string detailed URL[s]" containing "users' actions on a website, and their search queries" can constitute content); *In re Carrier IQ,* 78 F. Supp. 3d at 1083 (same).

Even the cases Hilton cites do not support its motion to dismiss. MTD at 10, 15. In *Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024), the Plaintiffs alleged capture of only record information, not search strings and other communications. Similarly, in *Heiting v. Taro Pharms. USA*, 709 F. Supp. 3d 1007, 1018-21 (C.D. Cal. 2023), and *King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025), the plaintiffs did not allege that data input by the user was being intercepted. In *Katz-Lacabe*, the court denied the motion to dismiss, finding that the complaint adequately pled the interception of "content," including similar data input by users into forms 668 F. Supp. 3d at 945. Here, the FAC alleges that Plaintiffs submitted search strings, location information, and other data input by users on Defendant's website that Defendant then caused Third Party cookies to intercept.

Defendant's argument that it cannot be liable because it is a "party to the communication" is inapposite. Plaintiffs are pursuing the fourth prong of CIPA because Defendant aided and abetted Third Parties' interception of communications. Whether Defendant was the intended recipient of the

communication does not absolve it of liability here. *See Gutierrez v. Converse Inc.*, No. 2:23-cv-06547-RGK-MAR, 2023 U.S. Dist. LEXIS 231056, at *7 (C.D. Cal. Oct. 27, 2023) (finding plaintiff stated a claim for aiding and abetting where defendant was intended party to the communication); *see also Gabrielli*, 2025 U.S. Dist. LEXIS 133836, at *29 (rejecting argument that defendant cannot eavesdrop on its communications).

**1. Plaintiffs allege "aiding" under CIPA.**

Hilton recycles its lack of intent arguments regarding the invasion of privacy claims to argue lack of intent under CIPA as well. MTD at 16–17. But the plain text of CIPA "does not include an intent standard." *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *20. Indeed, Judge Chen rejected this same argument in *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 953 (N.D. Cal. 2023). In *James*, the plaintiff brought CIPA claims under Section 631 against Disney for causing a third-party to intercept user data including "search terms entered," "pages viewed," and other data similar to the allegations here. *Id*. at 945–46. Like here, the defendant argued that it "cannot be held liable under . . . CIPA unless it *intended* to have [a third party] intercept the information at issue." *Id.* at 953. The court rejected that argument, holding that plaintiff pled "aiding," because "it can be reasonably inferred that [Defendant] entered into a contractual agreement with [third party] under which [the third party] would collect information….so that [Defendant] could market to and attract new customers." *Id*. at 954. So too here. Plaintiffs allege that "Defendant voluntarily integrated 'third-party resources' from the Third Parties into its Website programming" which was "done so pursuant to agreements between Defendant and [the] Third Parties" resulted in the collection of valuable user data. FAC ¶¶ 52, 109-113.

*James* is consistent with other decisions holding that pleading that Defendant intentionally "enable[d] a third party's eavesdropping on or interception of the communication" satisfies intent under CIPA. *See, e.g.*, *Doe v. Amgen, Inc.*, No. 2:23-cv-7448, 2024 U.S. Dist. LEXIS 144579, at *5 (C.D. Cal. Aug. 13, 2024); *Revitch*, 2019 U.S. Dist. LEXIS 186955, at *4 ("[T]he complaint adequately alleges that [Defendant] violated section 631 by enabling [a third party's] wrongdoing"); *Kotlarsz v. Integrity Vehicle Servs., Inc.*, No. 8:24-cv-00569, 2024 U.S. Dist. LEXIS 213565, at *22 (C.D. Cal. Sep. 3, 2024) ("it was the [D]efendant's website on which the [third party] operated.").

Regardless of whether Defendant had the specific intent to enable *unlawful* conduct, courts routinely find sufficient allegations that the defendant intended the *act* which "enable[d]" the privacy violation. *See, e.g., Doe*, 2024 U.S. Dist. LEXIS 144579, at *5. Because "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act," the Ninth Circuit's analysis of intent in the Wiretap Act is instructive. *Brodsky v. Apple Inc*., 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020). "The Ninth Circuit rejected that the word 'intentionally' in the Wiretap Act 'must be read to require a defendant to know that [its] conduct is unlawful . . . Rather, the statute only requires "an intentional act, defined as an act that is being done on purpose." *Shahnaz Zarif v. Hwareh.com, Inc*., No. 23-cv-0565, 2025 U.S. Dist. LEXIS 26519, at *20 (S.D. Cal. Feb. 12, 2025) (quoting *United States v. Christensen*, 828 F.3d 763, 774 (9th Cir. 2015)). As such, Hilton's reliance on *Esparza v. UAG Escondido A1 Inc.*, No. 23-cv-0102, 2024 U.S. Dist. LEXIS 24429 (S.D. Cal. Feb. 12, 2024), as requiring pleading a "purpose to violate" the law is flawed. MTD at 16. And even if one considered *Esparza* as a discussion of the pleading standard for "aiding and abetting," the FAC here is more analogous to the facts in *James*, where the allegations of contracting with the Third Parties who intercepted the communications established intent to "aid."

Hilton's reliance on *Smith v. Yeti Coolers, LLC* is also misplaced. MTD at 16-17. In *Yeti*, the plaintiff alleged that the website owner was liable under the fourth prong of CIPA for aiding a third-party payment processor that "incorporates customers' financial information into its fraud prevention system, which it then markets to merchants without customers' consent" to violate the statute. *Smith v. Yeti Coolers, LLC,* No. 24-cv-01703-RFL, 2024 U.S. Dist. LEXIS 194481, at *1 (N.D. Cal. Oct. 21, 2024). The *Yeti* court concluded that the plaintiff failed to allege that the defendant was "acting with the third party *in order* to have the third party perform acts that violate the statute." *Id.* at *12. In other words, the court found that the defendant did not intend to enable the third party to collect user information (which plaintiff alleged violated the statute); it only intended to enable the third party to process payments made on its Website. Here, Plaintiffs have alleged that Hilton integrated the third-party resources on the Website which placed and transmitted cookies *in order* to obtain user data for advertising purposes. FAC ¶¶ 52, 20–23, 37–69. Hilton did not disable this software or prevent the Third Parties from obtaining user data even after it solicited user consent and obtained

users' rejection of cookies. *Id.* ¶¶ 1–3. Hilton cannot claim that it did not intend to cause the Third Parties to wiretap and eavesdrop on users' Personal Communications since it integrated the Third Party code into its Website to do exactly that.

Moreover, Hilton's characterization of *Yeti* is contrary to the prevailing standard in this Circuit discussed above. The defendant in *Yeti*, like Hilton does here, argued that the plaintiff must show the "'specific intent to commit the unlawful acts'" 2024 U.S. Dist. LEXIS 194481, at *11. But the plaintiff, by contrast, argued that CIPA did not require specific intent. *Id*. The court acknowledged that CIPA "does not necessarily incorporate the common law [intent] requirement for aiding and abetting. . . [but] other language in [CIPA's] fourth clause does require ***some*** level of knowledge and intent." *Id*. (emphasis added). Here, Plaintiffs alleges more than "some" level of intent and knowledge (as explained above) because Hilton owns the website and installed the third-party resources which allowed the Third Parties to track the Website users.

Hilton also incorrectly argues that the FAC fails to allege a predicate CIPA violation of CIPA for Plaintiffs' "aiding" claim. Again, Hilton places form over function. While not laid out in a single element-by-element analysis, the FAC clearly alleges CIPA violations by at least the Third Parties named in the FAC. *See* FAC, ¶¶ 2–5, 37–69 (identifying unconsented wiretapping via cookies placed by Google, Adobe, Microsoft, Snap, "and more"). FAC, ¶¶ 2–5, 14–24; *see also id.* at ¶¶ 37–38, 42–43, 63–64; 68, 139–142 (Third parties made an intentional tap or unauthorized connection); ¶¶ 37–38; 49–50, 64–66, 69, 138–139 (with any line, cable, or instrument—i.e., cookies in internet communications); ¶¶ 25–36, 143 (willfully and without consent of all parties); ¶¶ 39, 47, 54–56, 65, 68–69, 144 (reads or learns the contents of any communication while in transit (e.g., "San Francisco" search string)); ¶¶ 39–69, 144 (uses any information so obtained). To the extent Hilton argues that these elements are merely recited "without more," its argument founders on the 32 paragraphs of detailed information the FAC provides about how exactly the Third Parties intercept and use Plaintiffs' information without consent. *See id.* at ¶¶ 37–69.

To the extent Hilton argues that the FAC fails to allege the requisite Third Party intent (MTD at 17), it is wrong because the FAC adequately pleads the Third Parties' intent to place the cookies, as described above, and there is no separate requirement of specific intent to do so unlawfully.

Furthermore, one of the cases on which it relies, *Wilson v. Google*, No. 24-cv-03176-EKL, 2024 U.S. Dist. LEXIS 55629 (N.D. Cal. Mar. 25, 2025), actually rejected the argument that Hilton makes and *denied the motion to dismiss*—a fact that Hilton even admits in its motion. The other case it cites, *B.K. v. Desert Care Network*, No. 2:23-cv-05021-SPG-PD, 2024 U.S. Dist. LEXIS 152953, at *7–8 (C.D. Cal. Aug. 22, 2024), does not control the outcome here. It failed to address the "intent" precedent described above and is inapposite because the FAC here alleges that Plaintiffs communicated their lack of consent to use Third Party cookies, which those Third Parties presumably were aware of or willfully ignored, thus establishing their intent.

**2. CIPA section 638.51 is not limited to telephones.**

CIPA Section 638.51(a) prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." The statute defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). The FAC adequately pleads each element of this claim. Plaintiffs allege that the Third Party cookies and the corresponding software code installed by Hilton on its Website operate as pen registers under the meaning of the statute because they record users' IP address and user-agent information, which is "routing, addressing, or signaling information." *See Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951, at *3 (9th Cir. May 31, 2022) ("Though written in terms of wiretapping, Section 631(a) applies to Internet communications.").

Hilton argues incorrectly that the pen register statute is limited to telephones. MTD at 17–18. Courts in this District have repeatedly rejected this argument as contrary to the statute's plain language. *See, e.g.*, Gabrielli, 2025 U.S. Dist. LEXIS 133836, at *17-18 (rejecting argument that § 638.51 is limited to telephones); *Mirmalek v. L.A. Times Communs. LLC*, No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378, at *7 (N.D. Cal. Dec. 12, 2024) (collecting cases); *Shah v. Fandom, Inc.*, No. 24-cv-01062-RFL, 2024 U.S. Dist. LEXIS 193032, at *9 (N.D. Cal. Oct. 21, 2024); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023). This is because "the California' Legislature's chosen definition" of a pen register is "specific as to the *type of data*

[collected]," but "vague and inclusive as to the form of *the collection tool*" (i.e., a "device or process"). *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *7 (citing Section 638.51(b)). "Thus, the Court applies the plain meaning of a 'process' to [CIPA]. A process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting,'" like Plaintiffs allege here. *Greenley*, 684 F. Supp. 3d at 1050. "By the plain meaning of § 638.50(b), collection of the recipient phone number or IP address is not a required element. All that is required is that the Trackers record addressing information transmitted by the user's *computer or smartphone* in connection with the outgoing HTTP request to [the] website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue." *Shah*, 2024 U.S. Dist. LEXIS 193032, at *9. Because the statute's plain language is unambiguous, the court may not consider the legislative history on which Hilton relies. *See In re Del Biaggio*, 834 F.3d 1003, 1010 (9th Cir. 2016) ("Only when statutes are ambiguous may courts look to legislative history."); *Shah*, 2024 U.S. Dist. LEXIS 193032, at *9 ("[T]he Court's analysis must begin with the statutory text, and if that text is clear, must end there. . . . Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register.").

Like the plaintiffs in *Mirmalek*, *Greenley*, and *Shah*, Plaintiffs allege that the Third Party cookies and the corresponding software code installed by Hilton on its Website are each a "device or process." *Compare Mirmalek*, 2024 US Dist. LEXIS 227378, at *12 *with* FAC ¶ 204 (explaining "cookies and the corresponding software code installed by Defendant on its Website are each 'pen registers' because they are 'device[s] or process[es]' that 'capture[d]' the 'routing, addressing, or signaling information'—including, the IP address and user-agent information from the electronic communications transmitted by Plaintiffs' and the Class's computers or devices."). Thus, Hilton's argument limiting pen register claims to telephones fails.

The Court should also reject Hilton's two-faced argument that pen registers are limited to devices that contain no "content." In its wiretap claim arguments, Hilton argues that there are no allegations that cookies intercept "content." Yet in the pen register claims, it asserts that all cookies capture content. Hilton cannot have it both ways. Furthermore, Hilton fails to address the possibility that some cookies may include "content," while others may include only "record" information. *See,*

*e.g.*, FAC, ¶¶ 37–69 (identifying different types of information collected by different cookies). The FAC can plead these claims in the alternative.

**E. Plaintiffs Adequately Plead Damages for Fraud and Breach of Contract.**

Hilton argues that Plaintiffs' allegations of "common law fraud, deceit and/or misrepresentation (Claim Five), breach of contract (Claim Seven), and breach of the implied covenant of good faith and fair dealing (Claim Eight) each fail because they do not allege ***actual*** damages," measured by "***out-of-pocket damages***." MTD at 19-20 (emphasis added). Defendant is wrong. The cases on which it relies have been overruled or distinguished from the claims here.

With respect to fraud, deceit, and misrepresentation, California law differentiates between fraud involving purchase of an item and fraud that does not. *See In re: Yahoo! Inc. Customer Data Sec. Breach Litig. ("In re Yahoo!")*, 313 F. Supp. 3d 1113, 1135 (N.D. Cal. 2018) (holding *Fladeboe v. Am. Isuzu Motors Inc.*, 58 Cal. Rptr. 3d 225, 243 (Cal. Ct. App. 2007), does not apply to deceit claim arising from free email service). The California Court of Appeal has ruled that, for the tort of deceit, "the appropriate measure of damages is defined by Civil Code sections 1709 and 3333." *In re: Yahoo!*, 313 F. Supp. 3d at 1135, citing *Sprague v. Frank J. Sanders Lincoln Mercury, Inc.*, 120 Cal. App. 3d 412, 174 Cal. Rptr. 608, 610 (Ct. App. 1981), and *Romo v. Stewart Title of Cal.*, 35 Cal. App. 4th 1609, 42 Cal. Rptr. 2d 414, 422 (Ct. App. 1995). California Civil Code § 1709 permits recovery of "any damage which [the plaintiff] thereby suffers." Similarly, California Civil Code § 3333 instructs that "[f]or the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." This applies to breach of the covenant of good faith and fair dealing too, which sounds in tort under California law. *PPG Indus., Inc. v. Transamerica Ins. Co.*, 20 Cal. 4th 310, 315, 84 Cal. Rptr. 2d 455, 458, 975 P.2d 652, 655 (1999).

Under California law, "[t]he failure to perform a duty required by contract is a legal wrong, independently of actual damage sustained by the party to whom performance is due." *In re Google Referrer Header Privacy Litig.*, 465 F. Supp. 3d 999, 1010 (N.D. Cal. 2020) (citing *Kenyon v. W. Union Tel. Co.*, 100 Cal. 454, 458 (1893)). In other words, Hilton's breach of contract is an

independent basis for damages. Moreover, California law expressly authorizes nominal damages for breach of contract claims. Cal. Civ. Code § 3360 ("[w]hen a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages."); *Tribeca Cos., LLC v. First Am. Title Ins. Co.*, 239 Cal. App. 4th 1088, 1103 n.12 (2015). Indeed, California Courts have rejected *Ruiz*, the case Defendant cites as authority for the proposition nominal damages are not available. *See Elation Sys., Inc. v. Fenn Bridge LLC*, 71 Cal. App. 5th 958, 965–967, 286 Cal. Rptr. 3d 762 (2020) (rejecting reasoning of *Ruiz v. Gap, Inc.*, 380 F. App'x 689, 692 (9th Cir. 2010), and confirming that that nominal damages may be awarded in contract cases); *Medoff v. Minka Lighting, LLC*, No. 2:22-cv-08885-SVW-PVC, 2023 U.S. Dist. LEXIS 81398, at *1 (C.D. Cal. May 8, 2023) (same, declining to follow *Ruiz*); *In re Facebook Privacy Litig.*, 192 F. Supp. 3d 1053, 1061 (N.D. Cal. 2016) (same).

Hilton also argues the fraud, breach of contract, and implied covenant claims fail because Plaintiffs "do not allege they intended to participate in a market for their data or paid for some service for which they did not receive full value." MTD at 20. But *Hubbard v. Google* is easily distinguishable because the plaintiff there "confirm[ed] that the sole loss they allege stems from the diminution in value of their information." *Id.*,No. 19-cv-07016-SVK, 2025 U.S. Dist. LEXIS 6588 (N.D. Cal. Jan. 13, 2025). Here, Plaintiffs have identified several theories of recovery. *See Rodriguez II*, 2024 U.S. Dist. LEXIS 1290, at *35 (granting class certification when damages were based on "[u]ser's willingness to pay to prevent [their] data collection and [the] organization's willingness to pay for data collection."); *see also In re Facebook*, 956 F.3d at 598 ("Plaintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data sufficient to confer Article III standing").

**F. *Sonner* Does Not Apply to Plaintiffs Claims.**

Hilton argues that *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), forecloses Plaintiffs' claims because they "have not pled that they lack an adequate remedy at law, and, like in *Hubbard*, seek damages for alleged injuries they already suffered." MTD at 21. But there are no adequate remedies at law for all the relief Plaintiffs request, such as injunctive relief to prevent further harm to Plaintiffs and the public (FAC ¶ 199, Prayer for Relief), and punitive damages (FAC ¶¶ 120, 130, 173, Prayer for Relief). "Here, at the pleading stage, the Plaintiff can plead conflicting

theories in the alternative under Fed. R. Civ. P. 8(a)(3)." *Scheibe v. Perfect Keto Grp. Ltd. Liab. Co.*, 700 F. Supp. 3d 928, 937 (S.D. Cal. 2023); see also *Katz-Lacabe*, 668 F. Supp. 3d at 949 (collecting cases applying *Sonner*). *Sonner* does not preclude Plaintiffs' equitable claims.

**G. Plaintiffs' Unjust Enrichment Claim May Proceed.**

Hilton contends that Plaintiffs' unjust enrichment claim—pled in the alternative—is barred as a matter of law. Not so. The Ninth Circuit regularly allows alternative claims for unjust enrichment. *See Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017); *Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019). To successfully plead unjust enrichment, "a plaintiff must show that the defendant received an unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe*, 668 F. Supp. 3d at 945. Here, Plaintiffs allege that Hilton benefited from using their Private Communications and that the remedies at law are inadequate. FAC ¶¶ 174–183. If Plaintiffs' breach of contract claims fail, Plaintiffs will lack an adequate remedy at law for Hilton's misuse of their private communications. "These allegations are all that is necessary at this stage in the proceedings." *Shah v. Capital One Fin. Corp.*, No. 24-cv-05985, 2025 U.S. Dist. LEXIS 42677, at *30–31 (N.D. Cal. Mar. 3, 2025) (refusing to dismiss unjust enrichment claims); *see also A.J. v. LMND Med. Grp.*, No. 24-cv-03288, 2024 U.S. Dist. LEXIS 194480, at *4 (N.D. Cal. Oct. 25, 2024) (same).

**H. Plaintiffs' Breach of Implied Covenant of Good Faith Claim is Proper.**

Hilton argues that the "breach of implied covenant" claims must be dismissed because they are identical to Plaintiffs' breach of contract claims. MTD at 22-23. But Plaintiffs allege Hilton's bad faith in seeking Website users' consent and still tracking them despite representing that users could opt out. *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 634 (N.D. Cal. 2021) (denying dismissal of breach of implied covenant claim where "Plaintiffs allege not only that Google violated the contract between the parties, but also that Google acted in bad faith, such as by circumventing cookie blockers."). Furthermore, as discussed above, Plaintiffs seek different remedies for each claim, since damages for breach of the implied covenant of good faith are provided under different sections of California code. Because these claims are plead in the alternative and provide different remedies, they are not redundant.

**I. Plaintiffs' Fraud and Misrepresentation Claims Are Sufficiently Pled.**

Hilton regurgitates the same intent arguments addressed above to argue that the FAC fails to satisfy Fed. R. Civ. P. 9(b) for the fraud and misrepresentation claims. MTD at 23. Rule 9(b) requires only that fraud allegations be specific enough to give defendants notice of the particular misconduct which is alleged. *Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132, 2022 U.S. Dist. LEXIS 42760, at *7 (N.D. Cal. Mar. 10, 2022). The "heightened pleading standard" of Rule 9(b) only applies to the circumstances of the fraud and not to the defendant's state of mind. *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1031–32 (9th Cir. 2016). "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). When essential information is within the other parties' knowledge, Rule 9(b) permits pleading knowledge and intent on "information and belief." *See Blake*, 856 F.2d at 1369.

Despite Hilton's assertion to the contrary, Plaintiffs have pleaded "the who, what, when, where, and how" of Defendant's fraud and misrepresentations. They allege that Defendant (the who), fraudulently stated that users could "Decline" cookies (the what), during the class period (when), on the Website (where), and that this fraudulent statement appeared on the cookie consent banner (the how). *See, e.g.*, FAC, ¶¶ 1–5, 25–36, 75–98, 162–173 (alleging fraud); ¶¶ 25–36, 81, 89, 97, 164–165 (alleging intentional conduct); ¶¶ 80, 88, 96, 165–166 (alleging reliance); ¶¶ 79, 87, 95, 170–172 (alleging injury).

**J. Plaintiffs Sufficiently Plead Trespass to Chattels.**

"In order to prevail on a claim for trespass based on accessing a computer system, the plaintiff must establish: (1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage." *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069–70 (N.D. Cal. 2000) (citation omitted). A plaintiff may satisfy the damages element by pleading that the trespass "impaired the condition, quality, or value of the personal property." *Fields v. Wise Media, LLC*, No. 12-CV-05160, 2013 U.S. Dist. LEXIS 136914, at *4 (N.D. Cal. Sept. 24, 2013) (citing *Intel Corp. v. Hamidi*, 30 Cal.4th 1342, 1356 (2003)). This includes where the alleged changes "interfere[] with the intended functioning of the system." *In re iPhone*, 844 F. Supp. 2d at 1069.

The FAC pleads trespass to chattels. Hilton's conduct interferes with Plaintiffs' computers' security, which is an important and intended function of those systems. The Ninth Circuit has already ruled that such breaches of privacy are an injury-in-fact sufficient to support standing to assert trespass to chattels. *See, e.g., In re Facebook*, 956 F.3d at 601 (privacy violation establishes standing for alleged trespass to chattels). Just as breaking open a safe would constitute a trespass to chattel by interfering with that safe's function, placing tracking cookies on a user's computer interferes with that computer's ability to function as its owner intends. The cookies also interfere with the function of Plaintiffs' computers by taking up storage space. *See In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 659 (N.D. Cal. 2024) (trespass to chattels properly pled where plaintiff "ha[s] alleged measurable harm from the loss of available storage space on their devices"); FAC ¶ 256.

The cases Hilton cites are distinguishable. *See Doe v. Google LLC*, 741 F. Supp. 3d 828, 846 (N.D. Cal. 2024) (no allegations of impaired intended function); *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1069 (no allegations of an interference with the intended functioning of the system); *Intel Corp.*, 30 Cal. 4th at 1347 (on motion for summary judgment, no evidence of damages or significant inference). As described above, this area of law has developed significantly over the past decade, including several key decisions from the Ninth Circuit all but abrogating *In re iPhone Application Litig.*, 844 F. Supp. at 1040.

## V. LEAVE TO AMEND SHOULD BE GRANTED

Leave to amend is only properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992). Plaintiffs respectfully request leave to amend to correct any defects the Court identifies. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990) (a court should grant leave to amend "if it appears at all possible that the plaintiff can correct the defect"). Should this Court find any claims in the Complaint insufficient, Plaintiff requests leave to amend to cure the identified deficiencies.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court fully deny Defendant's Motion to Dismiss or, in the alternative, grant Plaintiffs leave to amend.

Dated: July 23, 2025.

**GUTRIDE SAFIER LLP**

*/s/Anthony J. Patek/*______________
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
hayley@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
kali@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*