ISABELLE ORD (SBN 198224)
isabelle.ord@us.dlapiper.com
**DLA PIPER LLP (US)**
555 Mission Street, Suite 2400
San Francisco, CA 94105-2933
Telephone: 415.836.2500
Facsimile: 415.836.2501

OLIVER M. KIEFER (SBN 332830)
oliver.kiefer@us.dlapiper.com
ASHLEY BARTON (SBN 335673)
ashley.barton@us.dlapiper.com
MATTHEW C. DANAHER (SBN 351055)
matt.danaher@us.dlapiper.com
**DLA PIPER LLP (US)**
4365 Executive Drive, Suite 1100
San Diego, CA 92121-2133
Telephone: 858.677.1400
Facsimile: 858.677.1401

Attorneys for Defendant
HILTON WORLDWIDE HOLDINGS INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

VISHAL SHAH, JONATHAN GABRIELLI, and CHRISTINE Q. WILEY, as individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

HILTON WORLDWIDE HOLDINGS INC.,

Defendant.

Case No. 5:25-cv-01018-EKL

**DEFENDANT HILTON WORLDWIDE HOLDINGS INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Date: September 10, 2025
Time: 10:00 a.m.
Judge: Hon. Eumi K. Lee
Courtroom: Courtroom 7
San Jose Courthouse
280 South First Street, 4th Fl.
San Jose, CA 95113

Complaint Filed: January 31, 2025
Amended Complaint Filed: June 25, 2025

# TABLE OF CONTENTS


Page

I. INTRODUCTION .......... 1

II. PLAINTIFFS LACK ARTICLE III STANDING .......... 1

III. THE COURT LACKS PERSONAL JURISDICTION OVER HILTON HOLDINGS .......... 3

IV. CLAIMS 1–2: PLAINTIFFS' COMMON LAW PRIVACY CLAIMS FAIL .......... 5

V. CLAIMS 3–4: PLAINTIFFS' CIPA CLAIMS FAIL .......... 6

- A. Plaintiffs' Section 631(a) Claim Fails to Allege "Contents" or Intent .......... 6
  - 1. Plaintiffs Concede Hilton Holdings is not Directly Liable .......... 6
  - 2. Plaintiffs Fail to Allege a Third Party's Underlying Violation .......... 6
  - 3. Plaintiffs Independently Fail to Allege Intent .......... 7
- B. Plaintiffs Fail to Allege a Pen Register Claim .......... 9
  - 1. The Pen Register Statutes Are Limited to Telephones .......... 9
  - 2. Plaintiffs are not "Pleading in the Alternative" .......... 10

VI. CLAIMS 5–8: PLAINTIFFS' FRAUD, CONTRACT, AND QUASI-CONTRACT CLAIMS FAIL TO ALLEGE DAMAGES AND SUFFER FURTHER DEFICIENCIES .......... 10

- A. Claims 5, 7, and 8 Fail for Lack of Damages .......... 11
- B. Plaintiffs' Equitable Claims and Remedies Fail Under *Sonner* .......... 12
- C. Claim 6: Plaintiffs' Unjust Enrichment Claim is Duplicative .......... 13
- D. Claim 8: Plaintiffs' Breach of Implied Covenant Claim is Barred .......... 14
- E. Claim 5: Plaintiffs Do Not Allege Intent or Knowledge to Support Fraud .......... 14

VII. CLAIM 9: PLAINTIFFS' TRESPASS TO CHATTELS CLAIM FAILS TO ALLEGE INTENTIONAL OR SIGNIFICANT INTERFERENCE WITH POSSESSION .......... 15

VIII. CONCLUSION .......... 15

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*A.J. v. LMND Med. Grp., Inc.*, 2024 WL 4579143 (N.D. Cal. Oct. 25, 2024) .......... 13

*B.K. v. Desert Care Network*, 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .......... 8

*Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962 (9th Cir. 2024) .......... 15

*Blake v. Dierdorff*, 856 F.2d 1365 (9th Cir. 1988) .......... 6

*Bob Barker Co., Inc. v. Ferguson Safety Prods., Inc.* 2008 WL 11452107 (N.D. Cal. July 24, 2008) .......... 11

*In re BPS Direct, LLC*, 705 F. Supp. 3d 333 (E.D. Pa. 2023) .......... 13

*Bruton v. Gerber Prod. Co.*, 703 F. App'x 468 (9th Cir. 2017) .......... 13

*Cabrera v. Google LLC*, 2023 WL 5279463 (N.D. Cal. Aug. 15, 2023) .......... 11

*Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021) .......... 14

*Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370 (Cal. Super. Ct. Sept. 9, 2024) .......... 9

*City of Huntington Beach v. Bd. of Admin.*, 841 P.2d 1034 (Cal. 1992) .......... 9

*Daghaly v. Bloomingdales.com, LLC*, 2024 WL 5134350 (9th Cir. Dec. 17, 2024) .......... 2

*Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010) .......... 3

*Doe I v. Google LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024) .......... *passim*

*Doe v. Amgen, Inc.*, 2024 WL 3811251 (C.D. Cal. Aug. 13, 2024) .......... 8

*Elation Sys., Inc. v. Fenn Bridge LLC*,
286 Cal. Rptr. 3d 762 (Cal. Ct. App. 2020) .......... 11

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) .......... 7, 9

*Evans v. Sleep No. Corp.*,
2025 WL 1093332 (E.D. Cal. Apr. 11, 2025) .......... 11

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 2, 12, 14

*Fladeboe v. Am. Isuzu Motors Inc.*,
58 Cal. Rptr. 3d 225 (Cal. Ct. App. 2007) .......... 11

*Freeman v. 3Commas Techs. OU*,
2024 WL 1880147 (N.D. Cal. Mar. 25, 2024) .......... 4

*Gabrielli v. Insider, Inc.*,
2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) .......... 2

*Gabrielli v. Motorola*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) .......... 3, 5, 10

*Gerlinger v. Amazon.Com, Inc.*,
311 F. Supp. 2d 838 (N.D. Cal. 2004) .......... 13

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 7

*In re Google Location Hist. Litig.*,
514 F. Supp. 3d 1147 (N.D. Cal. 2021) .......... 6

*In re Google Referrer Header Privacy Litig.*,
465 F. Supp. 3d 999 (N.D. Cal. 2020) .......... 11

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) .......... 6

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*,
353 P.3d 319 (Cal. 2015) .......... 13

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .......... 6

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) .......... 7

*Helm v. Alderwoods Grp., Inc.*,
696 F. Supp. 2d 1057 (N.D. Cal. 2009) .......... 14, 15

*Hubbard v. Google*,
2025 WL 82211 (N.D. Cal. Jan. 13, 2025) .......... 12

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 15

*James v. Walt Disney*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) .......... 8

*Katz-Lacabe v. Oracle*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 6

*Khamooshi v. Politico LLC*,
2025 WL 1408896 (N.D. Cal. May 13, 2025) .......... 2, 3

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. June 24, 2025) .......... 10

*Kotlarsz v. Integrity Vehicle Servs., Inc.*,
2024 WL 4800695 (C.D. Cal. Sept. 3, 2024) .......... 8

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 6, 7

*In re Meta Pixel Healthcare Litigation*,
713 F. Supp. 3d 650 (N.D. Cal. 2024) .......... 15

*Mikulsky v. Bloomingdale's, LLC*,
713 F. Supp. 3d 833 (S.D. Cal. 2024) .......... 7

*Moody v. Textron Inc.*,
2025 WL 2025597 (C.D. Cal. July 2, 2025) .......... 5

*Obillo v. i-Health Inc.*,
2025 WL 844389 (N.D. Cal. Mar. 18, 2025) .......... 13

*Panavision Int'l, L.P. v. Toeppen*,
945 F. Supp. 1296 (C.D. Cal. 1996) .......... 9

*Parkridge Ltd. v. Indyzen, Inc.*,
2023 WL 3152290 (N.D. Cal. Mar. 15, 2023) .......... 11

*Price v. Headspace, Inc.*,
2025 WL 1237977 (Cal. Super. Apr. 1, 2025) .......... 10

*Redstone M&A Grp., LLC v. LaSalle Cap. Grp. II-A, L.P.*,
634 F. Supp. 3d 1251 (N.D. Ga. 2022) .......... 3

*Revitch v. New Moosejaw*,
LLC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 8

*Rodriguez v. Autotrader.com, Inc.*,
2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) ..... 2

*Rodriguez v. Google*,
2024 WL 38302 (N.D. Cal. Jan. 3, 2024) ..... 3

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) ..... 6

*Romo v. Stewart Title of Cal.*,
42 Cal. Rptr. 2d 414 (Cal. Ct. App. 1995) ..... 11

*Rossi v. Whirlpool Corp.*,
2013 WL 5781673 (E.D. Cal. Oct. 25, 2013) ..... 14

*Ruiz v. Gap*,
380 F. App'x 689 (9th Cir. 2010) ..... 11

*Saeedy, et al. v. Microsoft Corp.*,
2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ..... 2

*Sammons Enterprises, Inc. v. Superior Ct.*,
205 Cal. App. 3d 1427 (Ct. App. 1988) ..... 4

*Scheibe v. Perfect Keto Grp. Ltd. Liab. Co.*,
700 F. Supp. 3d 928 (S.D. Cal. 2023) ..... 12

*Shah v. Hilton Worldwide Holdings Inc.*,
2025 WL 1683577 (N.D. Cal. June 11, 2025) ..... 4, 5

*Silver v. Stripe*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) ..... 6

*Smith v. United Seating & Mobility L.L.C.*,
2024 WL 4441082 (C.D. Cal. Sept. 11, 2024) ..... 12

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ..... 6

*Southcentral Found. v. Alaska Native Tribal Health Consortium*,
983 F.3d 411 (9th Cir. 2020) ..... 3

*Sprague v. Frank J. Sanders Lincoln Mercury, Inc.*,
170 Cal. Rptr. 608 (Cal. Ct. App. 1981) ..... 11

*St. Aubin v. Carbon Health*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ..... 7

*Sweet v. Johnson*,
337 P.2d 499 (Cal. Ct. App. 1957) ..... 11, 12

*Valenzuela v. Kroger Co.*,
2024 WL 1336959 (C.D. Cal. Mar. 28, 2024) .................... 7

*ValveTech, Inc. v. Aerojet Rocketdyne, Inc.*,
2018 WL 4681799 (W.D.N.Y. Sept. 28, 2018) .................... 13

*Wilson v. Google LLC*,
2025 WL 901941 (N.D. Cal. Mar. 25, 2025) .................... 9

*In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*,
313 F. Supp. 3d 1113 (N.D. Cal. 2018) .................... 11

*Yangtze Memory Techs., Inc. v. Strand Consult*,
2025 WL 1455818 (N.D. Cal. May 20, 2025) .................... 4

*YTY Indus. SDN. BHD. v. Dow Chem. Co.*,
2009 WL 3633871 (C.D. Cal. Oct. 28, 2009) .................... 14

**Statutes**

Cal. Civ. Code § 1709 .................... 12

Cal. Civ. Code § 3282 .................... 12

Cal. Civ. Code § 3333 .................... 12

Cal. Penal Code § 20 .................... 7

Cal. Penal Code § 631(a) .................... 1, 6, 7, 8

Cal. Penal Code § 638.50(b) .................... 10

Cal. Penal Code § 638.51 .................... 1, 9, 10

Cal. Penal Code § 638.52(d)(1), (3) .................... 9

**Other Authorities**

5 Witkin, Summ. Cal. L., 11th Torts § 949 (2024) .................... 14

Fed. R. Civ. P. 9(b) .................... 6, 14

## I. INTRODUCTION

Defendant Hilton Holdings' Motion to Dismiss the First Amended Class Action Complaint ("FAC") should be granted because Plaintiffs lack Article III standing, the Court lacks personal jurisdiction over Hilton Holdings, and Plaintiffs fail to allege violations of CIPA or to adequately plead their common law claims. Each and all of Plaintiffs' claims fail for the following reasons:

*First*, Plaintiffs' brief interactions with the Website fail to meet their burden to establish any injury-in-fact to confer Article III standing. *See* Section II. *Second*, as this Court has already ruled once (ECF No. 30), Plaintiffs fail to establish this Court may exercise personal jurisdiction over Hilton Holdings, a holding company that does not operate hotels in California, through operation of a globally accessible website. *See* Section III. *Third*, Plaintiffs still fail to allege intentional or "highly offensive" conduct sufficient to plead their invasion of privacy and intrusion upon seclusion claims. *See* Section IV. *Fourth*, Plaintiffs' Section 631(a) claim fails to allege Hilton Holdings or any third party intended to commit an unlawful "wiretap," and their Section 638.51 claim fails because Plaintiffs expressly plead themselves out of their "pen register" theory by alleging the cookies can generally capture "some" data elements that can be "contents" of communications. *See* Section V. *Fifth*, Plaintiffs' fraud, contract, and quasi-contract claims fail to allege damages, their equitable claims and remedies are foreclosed by *Sonner*, their unjust enrichment is duplicative of their contract claim, their breach of implied covenant claim is superfluous, and they fail to plead the requisite knowledge or intent to support their fraud claim. *See* Section VI. *Sixth*, Plaintiffs' trespass to chattels claim fails to allege intentional conduct or significant interference with possession through the inadvertent placement of website cookies. *See* Section VII.

The Motion to Dismiss should be granted with prejudice.

## II. PLAINTIFFS LACK ARTICLE III STANDING

Plaintiffs' generalized allegations and inapposite case law fail to satisfy their burden to demonstrate standing.

***No Alleged Collection or Disclosure of Plaintiffs' Personal Information***: Plaintiffs fail to allege Hilton Holdings collected ***any of Plaintiffs'*** "Private Communications." *See* Mot. at 5-6. The FAC retains boilerplate allegations that Plaintiffs interacted with the cookie banner during brief

Website visits. *See generally* FAC. As such, Plaintiffs fail to allege a privacy harm that constitutes a concrete injury-in-fact. Courts have dismissed "tester" lawsuits by Plaintiffs Shah and Gabrielli with similarly generalized allegations for failure to show an expectation of privacy. *See Gabrielli v. Insider, Inc.*, 2025 WL 522515, at *4 (S.D.N.Y. Feb. 18, 2025) (Plaintiff Gabrielli); *Saeedy, et al. v. Microsoft Corp.*, 2023 WL 8828852, at *7 (W.D. Wash. Dec. 21, 2023) (Plaintiff Shah). Similarly, in *Rodriguez v. AutoTrader.com*, a court dismissed a "tester" plaintiff's CIPA claim for lack of standing because the plaintiff "visited and entered information into Defendant's website expecting the information to be accessed, recorded, and disclosed." *Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025). This Court should follow suit.

The Opposition contends "the 'relevant law is settled' that, when a wiretapping statute like CIPA 'codifies such substantive privacy rights,' violating the statute 'gives rise to a concrete injury sufficient to confer standing.'" Opp'n at 9. Not so. The Ninth Circuit recently confirmed that pleading a CIPA claim does not automatically confer standing. *See Daghaly v. Bloomingdales.com, LLC*, 2024 WL 5134350, at *1-2 (9th Cir. Dec. 17, 2024) (affirming dismissal of CIPA claim for lack of standing because plaintiff "d[id] not allege that she herself actually made any communications that could have been intercepted once she had accessed the website"). District courts agree. *See, e.g.*, *Khamooshi v. Politico LLC*, 2025 WL 1408896, at *4 (N.D. Cal. May 13, 2025) ("A violation of CIPA . . . does not automatically give rise to a concrete injury."); *Rodriguez*, 2025 WL 1085787, at *1. The same pleading deficiencies undercut Plaintiffs' fraud and unjust enrichment argument that they had to "give up" personal information "in return for nothing" (Opp'n at 8) when they fail to allege any personal information ***Plaintiffs*** actually had to "give up."

*In re Facebook, Inc. Internet Tracking Litig.* does not support Plaintiffs' standing. *See* 956 F.3d 589, 599 (9th Cir. 2020). There, the Ninth Circuit found plaintiffs had sufficiently analogized "the historically recognized right to privacy" where Facebook captured the plaintiffs' cross-site browsing histories "no matter how sensitive" and correlated that history with social media profiles. *Id.* at 598-99. Those allegations are lacking here. Plaintiffs merely allege they visited the Website and interacted with a cookie banner. *See* FAC ¶¶ 114, 123, 132. Regardless, courts in this district have found that *TransUnion* overruled *In re Facebook*'s holding that pleading a bare CIPA violation

confers standing. *See Khamooshi*, 2025 WL 1408896, at *4-5 (following those district courts and dismissing CIPA claim for lack of standing).

While the *Gabrielli v. Motorola* Court found Plaintiff Gabrielli is not a "tester" plaintiff, 2025 WL 1939957, at *7 (N.D. Cal. July 14, 2025), given his repeated filing of website class actions like this one, the Court need not accept the "unwarranted deduction[] of fact" that Plaintiff Gabrielli is not a tester who seeks out potential claims. *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). The rest of the Opposition's standing authorities are similarly distinguishable because they either predate or rely on authority pre-dating *TransUnion*. *See* Opp'n at 8-10.

***No Contract*****:** Plaintiffs' attempt to analogize their breach of contract claim to one for breach of a non-disclosure agreement fails. Opp'n at 8. Plaintiffs' sole authority, *Redstone M&A Grp., LLC v. LaSalle Cap. Grp. II-A, L.P.,* only confirms Plaintiffs lack standing for this claim. *See* 634 F. Supp. 3d 1251, 1253 (N.D. Ga. 2022). There, the court dismissed claims because, like Plaintiffs here, "[the plaintiff] was not a party to the NDA and lacked third-party standing to sue." *Id.* Independently, the Opposition confirms Plaintiffs do not even contend they agreed to the Global Privacy Statement—the purported "contract" underlying their claims. *See* FAC ¶ 234.

***No Diminution in Value*****:** The FAC does not allege that ***Plaintiffs' own data*** (which they fail to allege they provided) carries value. *Rodriguez v. Google*, Plaintiffs' lone authority, only discussed "willingness to pay to prevent data collection" as part of an "actual damages calculation." *See* 2024 WL 38302, at *11 (N.D. Cal. Jan. 3, 2024). Here, Plaintiffs have not alleged ***their data's*** possible value and thus lack standing. *See Southcentral Found. v. Alaska Native Tribal Health Consortium*, 983 F.3d 411, 417 (9th Cir. 2020) (requiring "personal and individual[ized]" harm to plaintiff). Each of Plaintiffs' claims fail for lack of Article III standing.

## III. <u>THE COURT LACKS PERSONAL JURISDICTION OVER HILTON HOLDINGS</u>

Plaintiffs do not dispute the Court lacks general personal jurisdiction. *See* Opp'n at 7. Thus, they must establish specific personal jurisdiction. But the Opposition ignores the fact Hilton Holdings is a holding company that did not intentionally aim conduct at California—including on the Website. Its connection with California is too attenuated to support specific personal jurisdiction.

Merely operating a website accessible in California does not create personal jurisdiction. *See*

*Yangtze Memory Techs., Inc. v. Strand Consult*, 2025 WL 1455818, at *4 (N.D. Cal. May 20, 2025) ("Even 'operation of an interactive website does not, by itself, establish express aiming,' without 'something more'—conduct directly targeting the forum.") (citation omitted). Despite the Court's guidance in dismissing Plaintiffs' prior complaint for lack of specific jurisdiction, the FAC fails to demonstrate the required "something more." *See Shah v. Hilton Worldwide Holdings Inc.*, 2025 WL 1683577, at *2 (N.D. Cal. June 11, 2025) ("[T]here are no allegations that Hilton Holdings compiled data on any particular California consumer and "marketed" that profile to California merchants.").

Hilton Holdings is a holding company and has now provided two sworn declarations stating Hilton Holdings "does not operate hotels," "is not registered to do business in California," and "does not have an office or a mailing address in California." *See* Smith Declaration (Mar. 28, 2025) ¶¶ 4, 5; Smith Declaration (July 9, 2025) ¶¶ 4, 5. Plaintiffs once again fail to challenge Hilton Holdings' supporting factual evidence (*see* Mot. at 8) and thereby concede it. Instead, the Opposition attempts to distract and pivot through misleading statements and attempting to impute California contacts from Hilton partners, subsidiaries, and affiliates to Hilton Holdings. These attempts fail.

The Opposition claims that Hilton Holdings has "characterize[d] California 'Hilton' properties and the rental of those properties through the Website as central to [its] profitability." Opp'n at 6. But the FAC lacks these allegations—at best, alleging a global hotelier wants to maintain and build a global portfolio of hotels. Plaintiffs still ignore that "[a] foreign parent corporation" like Hilton Holdings "is not subject to personal jurisdiction based solely on the independent activities of its wholly-owned subsidiary ***even where the parent exercises general executive responsibility for the operations of the subsidiary and reviews its major policy decision***." *Sammons Enterprises, Inc. v. Superior Ct.*, 205 Cal. App. 3d 1427, 1434 (Ct. App. 1988) (citation omitted) (emphasis added).

The Opposition's speculative argument that Hilton Holdings "uses at least one Website server located in California" (Opp'n at 4) also fails. Apart from the isolated nature of this alleged contact, Plaintiffs fail to allege whether this server belongs to Hilton Holdings, another Hilton entity, or a third party. And "district courts in this circuit have held that the mere location of a third party or its servers is insufficient to give rise to personal jurisdiction." *Freeman v. 3Commas Techs. OU*, 2024 WL 1880147, at *2 (N.D. Cal. Mar. 25, 2024) (citation omitted); *see also Yangtze*, 2025 WL

1455818, at *5 (concluding allegation that "Defendants used California-based internet infrastructure to disseminate their false and misleading statements" was insufficient to show express aiming).

Plaintiffs also still fail to link the Website's alleged geolocation abilities to express aiming. While the Opposition argues that code on the Website can geolocate users, (Opp'n at 6), the FAC does not allege that this was Hilton Holdings' own code, a critical factor in the *Briskin* analysis. Regardless, another district court recently rejected a similar express aiming allegation in a similar lawsuit concerning geolocation. *See Moody v. Textron Inc.*, 2025 WL 2025597, at *4 (C.D. Cal. July 2, 2025). Distinguishing *Briskin*, the *Textron* court "question[ed] how Defendant could have expressly aimed its conduct at the forum state through its embedded software if one of the purposes is to identify where a visitor is located." *Id.* The court also noted that the "fulfillment of a GET request to a California corporation alone is not sufficient to confer personal jurisdiction." *Id.* at *5.

Lastly, the Opposition doubles down on claiming that California compliance references give rise to express aiming. But, the Court previously rejected this: "Plaintiffs do not cite to any authority in which a privacy statement on a globally accessible website was sufficient to establish personal jurisdiction." *Shah*, 2025 WL 1683577, at *2. Plaintiffs' purported new case, *Gabrielli,* is distinguishable. The Opposition concedes that the *Gabrielli* defendant's privacy policy referenced California "without specifically mentioning the laws of any other state." *Gabrielli*, 2025 WL 1939957, at *8; Opp'n at 4. Here, Plaintiffs do not allege California is the only jurisdiction Hilton's Global Privacy Statement references, unsurprisingly, since it is a ***global*** privacy statement that "applies to *anyone* accessing the Website from *any* location." *Shah*, 2025 WL 1683577, at *2 n.2.

The Court lacks specific personal jurisdiction and should dismiss the FAC with prejudice.

## IV. CLAIMS 1–2: PLAINTIFFS' COMMON LAW PRIVACY CLAIMS FAIL

Plaintiffs fail to allege intrusion upon seclusion or invasion of privacy because the FAC does not allege Hilton Holdings intentionally configured the "Opt Out" button to malfunction or engaged in any "highly offensive" conduct, which is required for these claims. *See* Mot. at 11-13.

Plaintiffs' allegations that Hilton Holdings "owns and operates" the Website, integrated cookies on the Website, and "falsely promised users they could 'Opt-out' of the above" fail to establish intent. Opp'n at 11. Nearly identical allegations were rejected in *Doe I v. Google LLC*, 741

F. Supp. 3d 828, 841 (N.D. Cal. 2024) (dismissing invasion of privacy and intrusion upon seclusion claims). In *Doe I*, the court found that alleging a defendant failed to prevent transmission of personal information is not sufficient to establish it ***intended*** to commit these torts. *See id.*

Nor have Plaintiffs alleged the required "egregious breach of the social norms." *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1193 (N.D. Cal. 2020). The Opposition relies on inapposite cases involving highly sensitive data elements or where defendants engaged in cross-site tracking—Plaintiffs allege neither. *See Katz-Lacabe v. Oracle*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023) (collecting "sensitive health and personal safety information"); *Silver v. Stripe*, 2021 WL 3191752, at *6 (N.D. Cal. July 28, 2021) (aggregating financial information); *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1155 (N.D. Cal. 2021) (geolocation data even while not using apps); *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 597, 602 (N.D. Cal. 2021) (same); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *8 (N.D. Cal. May 21, 2021) (cross-website tracking). Likewise, the Opposition's citation to *Blake v. Dierdorff*, a pre-*Twombly*-*Iqbal* case involving Rule 9(b) pleading, does nothing to save the claim here. *See* Opp'n at 11 (citing 856 F.2d 1365 (9th Cir. 1988)). Plaintiffs' invasion of privacy and intrusion upon seclusion claims should be dismissed.

## V. CLAIMS 3–4: PLAINTIFFS' CIPA CLAIMS FAIL

### A. Plaintiffs' Section 631(a) Claim Fails to Allege "Contents" or Intent

#### *1. Plaintiffs Concede Hilton Holdings is not Directly Liable*

The Opposition concedes Hilton Holdings is not directly liable for violating clauses one through three of Section 631(a). *See* Opp'n at 14, n.2. Thus, Plaintiffs must allege Hilton Holdings aided and abetted the third-party software providers' predicate violation of clauses one through three. *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021).

#### *2. Plaintiffs Fail to Allege a Third Party's Underlying Violation*

Section 631(a) clause four requires Plaintiffs to plead the third-party software providers "engaged in conduct prohibited by the first, second, or third clause," ***and*** that Hilton Holdings had "both knowledge of the conduct that will violate the statute ***and a purpose of aiding, agreeing with, or employing the third party to commit those acts***." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 940, 942 (N.D. Cal. 2024) (emphasis added). The FAC fails on both counts.

***Clause 1***: The "overwhelming weight of authority" limits the first clause of Section 631(a) to its plain text—i.e., communications over "telegraph[s] or telephone wire[s]," which are not alleged here. Cal. Penal Code § 631(a); *Mastel*, 549 F. Supp. 3d at 1135.

***Clause 2***: Section 631(a) clause two requires Plaintiffs to allege the "contents" of their communications are intercepted. *See Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1018 (C.D. Cal. 2023). Plaintiffs fail to allege any "contents" of ***their*** communications here.

The Opposition claims that "Plaintiffs allege interception of user-input data." Opp'n at 15. As to ***Plaintiffs***, however, the FAC merely alleges they selected the "Opt Out" button and browsed the Website. FAC ¶¶ 115-16, 124-25, 133-34. This is insufficient to allege interception of communications, let alone their contents. *See Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) (dismissing Section 631(a) claim for failure to allege contents where the plaintiffs alleged the website operator intercepted their "interactions" with the website).

***Clause 3***: Section 631(a) clause three is derivative of the first two and therefore fails as a matter of law. *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020).

*3. Plaintiffs Independently Fail to Allege Intent*

Plaintiffs fail to allege Hilton Holdings or any Third Party intended to violate clause four. "CIPA liability only extends to willful or intentional conduct." *Doe I*, 741 F. Supp. 3d at 844. Data sent or received inadvertently without consent does not support a Section 631(a) violation. *See id.*

Plaintiffs' attempt to argue "the plain text of CIPA 'does not include an intent standard'" fails. Opp'n at 16 (quoting *St. Aubin v. Carbon Health*, 2024 WL 4369675, at *7 (N.D. Cal. Oct. 1, 2024)). Section 631(a) is codified in the California Penal Code. *See* Cal. Penal Code § 631(a). Under California law, a violation of criminal law generally requires intent. *See* Cal. Penal Code § 20 (every crime requires "act and intent"); *see also Valenzuela v. Kroger Co.*, 2024 WL 1336959, at *4 (C.D. Cal. Mar. 28, 2024) ("In the absence of an explicit statutory scienter requirement, in California civil actions, the common law definition [of aiding and abetting] applies."). The reasoning in *St. Aubin* has been rejected by numerous courts. *See, e.g., Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (dismissing Section 631(a) claim and finding plaintiffs failed to allege the defendant "acted with . . . intent to commit, encourage, or facilitate [the third party's]

commission of the offense."); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *7 (C.D. Cal. Feb. 1, 2024) ("Section 631 requires defendants to act 'willfully' or 'intentionally'"). The FAC fails to allege either Hilton Holdings or the Third Parties intended to violate Section 631(a).

***Hilton Holdings had no intent to unlawfully wiretap*:** At best, the FAC alleges the Website's Cookie Banner inadvertently failed to function as intended. *See* Mot. at 16-17. Plaintiffs rely on *James v. Walt Disney* to contend CIPA lacks an intent standard. *See* Opp'n at 16 (citing 701 F. Supp. 3d 942, 953 (N.D. Cal. 2023)). But unlike here, in *James* the parties did not "dispute that there must have been intent on the part of Disney to have Oracle intercept" communications. *Id.* at 954. Thus, *James* does not support Plaintiffs' argument.

The Opposition's other cases only help Hilton Holdings. In *Kotlarsz v. Integrity Vehicle Servs., Inc.*, the court found "allegation[s] that [d]efendant 'aided, agreed with, employed, and conspired with Jornaya to have Jornaya wiretap the internet communications' . . . [were] conclusory and insufficiently supported by factual allegations." 2024 WL 4800695, at *7 (C.D. Cal. Sept. 3, 2024) (dismissing Section 631(a) claim). The same is true here. Plaintiffs' reliance on *Revitch* and *Amgen* is similarly unavailing. *See* Opp'n at 16. Neither *Revitch* nor *Amgen* analyzed the definition of "aids" or a knowledge requirement, despite Plaintiffs' suggestion that the courts interpreted the requirement to denote "enabling" (which each opinion mentions merely once). *See Revitch v. New Moosejaw,* LLC, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019); *Doe v. Amgen, Inc.*, 2024 WL 3811251, at *2 (C.D. Cal. Aug. 13, 2024). "Enabling" does not appear in the fourth clause. Thus, Plaintiffs' failure to allege Hilton Holdings intentionally configured the Cookie Banner to capture their information without consent means they fail to allege Hilton intended to violate clause four.

***The "Third Parties" had no intent to unlawfully wiretap*:** Plaintiffs fail to plead that the "Third Parties" intended to commit an unlawful wiretap. The Opposition relies on formulaic recitations of the claim's elements, rather than factual allegations of how the Third Parties actually ***intended*** to violate Section 631(a). *See* Opp'n at 18. These conclusory allegations are similar to *Doe I*, where the court dismissed the Section 631(a) claim against Google for failure to allege intent because it is impermissible to presume that by making software code available the code provider intended to obtain information without consent. 741 F. Supp. 3d at 841. Finding the Third Parties lacked intent is also consistent with

this Court's holding in *Wilson v. Google LLC*, because there the Complaint alleged Google "'intentionally encourages' website operators to use its tool in a way that circumvents users' privacy settings." 2025 WL 901941, at *6 (N.D. Cal. Mar. 25, 2025). Those allegations are absent here.

The Opposition's attempts to distinguish *Esparza v. UAG Escondido A1 Inc.*, are unavailing. *See* Opp'n at 17. As in *Esparza*, Plaintiffs have failed to allege Hilton Holdings "acted with (1) knowledge that [the Third Parties] intended to violate CIPA and (2) intent to commit, encourage, or facilitate [the Third Parties'] commission of the offense." 2024 WL 559241, at *6. Incorporating cookies does not beget clause four liability. And "even if there was such a finding [the Third Parties unlawfully engaged in wiretapping], that would not speak to [Hilton Holdings'] knowledge." *Id.*

### B. <u>**Plaintiffs Fail to Allege a Pen Register Claim**</u>

#### *1. The Pen Register Statutes Are Limited to Telephones*

California's pen register statutes were enacted in 2015 to aid law enforcement. *See* Danaher Decl., Ex. B, at 11 ("A.B. 929 would authorize state and local law enforcement officers to use pen register and trap and trace devices, including during emergency situations."). When the Legislature adopted A.B. 929, there was no mention of IP addresses although IP addresses were in common usage at the time. *See Panavision Int'l, L.P. v. Toeppen*, 945 F. Supp. 1296, 1299 (C.D. Cal. 1996) ("Every computer that has access to the Internet has a unique address. . . . This address is referred to as the 'IP address.'"). Instead, the plain language of California's pen register statutes limit their application to telephones. *See* Cal. Penal Code § 638.52(d)(1), (3) (requiring pen register orders to include "in whose name . . . the ***telephone line***" is listed and "if known, [the] physical location of the ***telephone line***" to which the pen register is to be attached); *see also id.* § 638.52(c) (information acquired by a pen register may only be disclosed "to the extent that the location may be determined from the ***telephone number***.") (emphases added). "[L]egislation must be construed as a whole while avoiding an interpretation which renders any of its language surplusage." *City of Huntington Beach v. Bd. of Admin.*, 841 P.2d 1034, 1038 (Cal. 1992). Reading Section 638.51 in isolation impermissibly renders the rest of A.B. 929 mere "surplusage" and "criminalize[s] the process by which all websites communicate with all users who choose to access them." *Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370, at *4 (Cal. Super. Ct. Sept. 9, 2024) (dismissing claim).

Plaintiffs suggest that a pen register can take the form of software and website cookies are a "device or process" under A.B. 929 (*see* Opp'n at 19-20), but A.B. 929's plain text and legislative history confirm that pen registers only apply to telephone numbers. *See* Mot. at 16.

*2. Plaintiffs are not "Pleading in the Alternative"*

Plaintiffs' Section 638.51 claim independently fails because the FAC generally alleges the cookies on the Website can capture the "contents" of communications and "some" contents of communications are intercepted by the cookies. FAC ¶ 206. The Opposition doubles-down by arguing Plaintiffs allege software on the Website engages in "fingerprinting." *See* Opp'n, at 20. But by alleging cookies on the Website *generally* collect some "contents" of communications, Plaintiffs plead themselves out of a pen register claim because a pen register "by definition, cannot capture the content of the communications." *Price v. Headspace, Inc.*, 2025 WL 1237977, at *3 (Cal. Super. Apr. 1, 2025) (dismissing 638.51 claim because plaintiffs alleged the software tools captured the contents of communications); *see also* Cal. Penal Code § 638.50(b) (defining "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information . . . ***but not the contents of a communication***") (emphasis added).

Another Court in this District recently reached the same conclusion, which was not raised in *Gabrielli v. Motorola*. *See Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025). In *Kishnani*, the plaintiff alleged "pen register" software was used to collect personally identifying user data, and *could* allow defendants to gain user information such as "biographical" information like "name, date of birth, and address." *Id.* at *3. The court held that these allegations failed to state a violation of Section 638.51 because, even if the allegations were sufficiently particularized to the plaintiff, this information would reveal "the content" of a communication, and thus, failed to allege a pen register. *See id.* at *4. The same result follows here. By, pleading that the "pen register" (i.e., website cookies) "capture[]d the routing, addressing, or signaling information," to transmit "IP address and user-agent information" such as "name, age, gender, email address, and location" (*see* FAC, ¶¶ 204, 205), Plaintiffs have established the website cookies are not a pen register and that the statute does not apply.

## VI. CLAIMS 5–8: PLAINTIFFS' FRAUD, CONTRACT, AND QUASI-CONTRACT

**CLAIMS FAIL TO ALLEGE DAMAGES AND SUFFER FURTHER DEFICIENCIES**

**A. Claims 5, 7, and 8 Fail for Lack of Damages**

***No Actual Loss for Fraud Claim*:** Plaintiffs fail to allege any actual damages, requiring dismissal of their fraud claim. *See Evans v. Sleep No. Corp.*, 2025 WL 1093332, at *9 (E.D. Cal. Apr. 11, 2025) ("[D]eception without resulting loss is not actionable fraud.") (citation omitted).

Plaintiffs rely on *In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1135 (N.D. Cal. 2018) but that case merely confirmed that *Fladeboe v. Am. Isuzu Motors Inc.*, 58 Cal. Rptr. 3d 225 (Cal. Ct. App. 2007), limits plaintiffs to out-of-pocket losses when fraud claims sound in contract. *See In re: Yahoo!*, 313 F. Supp. 3d at 1135 ("[I]n all of Defendants' district court cases [that limit plaintiffs to out-of-pocket damages], the underlying fraud claim was based in contract."). Plaintiffs' reliance on *Sprague v. Frank J. Sanders Lincoln Mercury, Inc.*, 170 Cal. Rptr. 608 (Cal. Ct. App. 1981), and *Romo v. Stewart Title of Cal.*, 42 Cal. Rptr. 2d 414 (Cal. Ct. App. 1995) also fail. In those cases, unlike here, the plaintiffs had out-of-pocket losses.

***No Actual Loss for Breach of Contract Claim*:** A breach of contract claim also requires actual damages. Courts in this district have continued to apply *Ruiz* and *Aguilera* (on which *Ruiz* relied) as precedential even after *Elation Sys., Inc. v. Fenn Bridge LLC*, 286 Cal. Rptr. 3d 762 (Cal. Ct. App. 2020). In *Cabrera v. Google LLC*, the Court held that it was "bound to follow *Aguilera* as Ninth Circuit precedent" for the proposition that a breach of contract claim must plead "appreciable and actual damages." 2023 WL 5279463, at *6 n.5 (N.D. Cal. Aug. 15, 2023); *see also Parkridge Ltd. v. Indyzen, Inc.*, 2023 WL 3152290, at *1 (N.D. Cal. Mar. 15, 2023) ("It is well settled law in California that a breach of contract claim must include the essential element of damages.").

Plaintiffs offer no authority for their argument that merely breaching a contractual duty is cognizable harm for a breach of contract claim. *See* Opp'n at 21. Their sole authority, *In re Google Referrer Header Privacy Litigation*, only discussed Article III standing. *See* 465 F. Supp. 3d 999, 1011 (N.D. Cal. 2020). Further, *In re Google Referrer* relied on *Sweet v. Johnson*, 337 P.2d 499 (Cal. Ct. App. 1957), which "more recent opinions have declined to follow." *Bob Barker Co., Inc. v. Ferguson Safety Prods., Inc.* 2008 WL 11452107, at *4 (N.D. Cal. July 24, 2008); *see also Ruiz v. Gap*, 380 F. App'x 689, 692 (9th Cir. 2010) (rejecting *Sweet*). Their breach of contract claim fails.

***No Diminution in Value***: For their fraud, breach of contract, and implied covenant claims, the Opposition contends that Plaintiffs "have identified several theories of recovery" and *Hubbard v. Google* is "easily distinguishable." Opp'n at 22. However, Plaintiffs do not challenge Hilton Holdings' argument that their "theories" boil down to diminution in value. *See* Mot. at 20. *Hubbard* is directly on point in rejecting diminution in value damages like those Plaintiffs advance here. *See* 2024 WL 3302066, at *9 (N.D. Cal. July 1, 2024). Plaintiffs' reliance on *In re Facebook Inc. Internet Tracking Litig.*, is also misplaced, as the case concerned Article III standing. *See* 956 F.3d at 598. Plaintiffs cannot establish damages through their diminution in value theory.

***Plaintiffs Cannot Recover Under Civil Codes Sections 1709 or 3333***: Plaintiffs contend that the measure of damages for a deceit action in which no purchase occurred is measured by California Civil Code Sections 1709 and 3333. Not so. Plaintiffs selectively quote Section 1709 to claim that it "permits recovery of 'any damage which [the plaintiff] thereby suffers.'" Opp'n at 21. Yet, Section 1709 states such damages are recoverable only from "[o]ne who ***willfully*** deceives another with ***intent*** to induce him to alter his position to his injury or risk[.]" Cal. Civ. Code § 1709 (emphasis added). Plaintiffs do not challenge Hilton Holdings' argument that the FAC does not allege intent. Section 3333 provides that "[f]or the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." Cal. Civ. Code § 3333. Plaintiffs also contend that the "obligation" here is from a "contract," but fail to allege entering any personal information onto the Website and or any resulting "loss or harm suffered in person or property" (Cal. Civ. Code § 3282). Plaintiffs also do not respond to Hilton Holdings' arguments challenging Plaintiffs' benefit of the bargain theory, conceding it. Mot. at 20-21.

**B. <u>Plaintiffs' Equitable Claims and Remedies Fail Under *Sonner*</u>**

Plaintiffs' position that they may plead equitable claims and remedies in the alternative, (*see* Opp'n at 22), "has been explicitly rejected by numerous courts post-*Sonner*." *Smith v. United Seating & Mobility L.L.C.*, 2024 WL 4441082, at *6 (C.D. Cal. Sept. 11, 2024) (citations omitted). Plaintiffs' own authority confirms it. *See Scheibe v. Perfect Keto Grp. Ltd. Liab. Co.*, 700 F. Supp. 3d 928, 936 (S.D. Cal. 2023) ("[E]quitable relief is not appropriate where an adequate remedy exists

at law."). Even if such pleading were permitted, "that does not relieve Plaintiff[s] of the obligation to satisfy the minimum pleading requirements for each claim for relief, including any alternative forms of relief." *Obillo v. i-Health Inc.*, 2025 WL 844389, at *4 (N.D. Cal. Mar. 18, 2025).

Here, the FAC prays for money damages and makes no allegation that legal remedies sought are inadequate. *See* FAC ¶¶ 198, 210; Prayer B. Plaintiffs offer one conclusory allegation that they could lack an adequate remedy if their other claims were dismissed. *See id.* ¶ 232. But following *Sonner*, courts dismiss complaints seeking both legal and equitable remedies on the grounds that plaintiffs failed to allege an adequate remedy at law. *See Obillo*, 2025 WL 844389, at *4-5. Nor can Plaintiffs save their equitable claims by asking for "an injunction that prohibits [Hilton Holdings] from making misrepresentations on the Website." FAC ¶¶ 122, 131, 140; *see also* Motion to Strike. Plaintiffs are now aware of the alleged issue and no injury will result from future visits. *See In re BPS Direct, LLC*, 705 F. Supp. 3d 333, 366 (E.D. Pa. 2023) ("Website Users brought this lawsuit and are presumably now aware of the alleged risks associated with browsing [the] websites.").

**C. Claim 6: Plaintiffs' Unjust Enrichment Claim is Duplicative**

Plaintiffs' unjust enrichment claim fails because their breach of contract claim is virtually identical. "An action based on quasi-contract cannot lie where a valid express contract covering the same subject matter exists between the parties." *Gerlinger v. Amazon.Com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004). Plaintiffs rely on *Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) to assert that the Ninth Circuit "regularly allows independent claims for unjust enrichment to proceed." Opp'n at 23. However, *Bruton* "cite[d] a 2015 decision from the Supreme Court of California in which that court found that a standalone claim for unjust enrichment could proceed in an insurance dispute," and, in its decision, the California Supreme Court "specifically limited its holding in that case to the facts and procedural history at bar." *ValveTech, Inc. v. Aerojet Rocketdyne, Inc.*, 2018 WL 4681799, at *5 (W.D.N.Y. Sept. 28, 2018) (citing *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 353 P.3d 319, 326 (Cal. 2015)). Most of Plaintiffs' other authorities relied on *Bruton* and its application of *Hartford*. *See* Opp'n at 23. *A.J. v. LMND Med. Grp., Inc.*, 2024 WL 4579143 (N.D. Cal. Oct. 25, 2024), also does not support Plaintiffs because it did not involve a breach of contract claim. The Court should dismiss Plaintiffs' duplicative unjust enrichment claim.

**D. Claim 8: Plaintiffs' Breach of Implied Covenant Claim is Barred**

Plaintiffs' implied covenant claim is based on the same contractual terms as their breach of contract claim, which bars their implied covenant claim. Plaintiffs' own authority confirms this result. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 611 (affirming dismissal of breach of implied covenant because "the allegations did not go beyond the breach of contract theories asserted by Plaintiffs"). Plaintiffs' breach of the implied covenant and breach of contract claims quote from the same provisions of the same alleged contract and seek the same relief. *See* Mot. at 21. But rather than pleading an independent basis, Plaintiffs incorporate the allegations of their breach of contract claim. *See* FAC ¶ 241-244. This bars Plaintiffs' implied covenant claim.

Without citation to the FAC, the Opposition argues the implied covenant claim is warranted because, unlike in their breach of contract claim, "Plaintiffs allege Hilton's bad faith in seeking Website users' consent and still tracking them despite representing that users could opt out." Opp'n at 23. Plaintiffs' reliance on *Calhoun v. Google LLC* for this assertion is unavailing. *See id. Calhoun* involved ***intentional*** conduct designed to "circumvent[] cookie blockers," and frustrate the purpose of the parties' contract, 526 F. Supp. 3d 605, 634 (N.D. Cal. 2021), rather than an inadvertently malfunctioning cookie banner. Accordingly, the claim should be dismissed.

**E. Claim 5: Plaintiffs Do Not Allege Intent or Knowledge to Support Fraud**

Plaintiffs' common law fraud, deceit, and/or misrepresentation claim fails because Plaintiffs do not allege ***both*** a defendant's "knowledge of [a misrepresentation's falsity]" ***and*** an "intent to defraud." *Helm v. Alderwoods Grp., Inc.*, 696 F. Supp. 2d 1057, 1079 (N.D. Cal. 2009). Rule 9(b)'s separate scienter pleading standard "does not mean, that conclusory allegations of knowledge or intent suffice." *Rossi v. Whirlpool Corp.*, 2013 WL 5781673, at *9 (E.D. Cal. Oct. 25, 2013).

The FAC does not allege Hilton Holdings knew about the allegedly malfunctioning cookie banner or intended to defraud Plaintiffs. Thus, Plaintiffs fraud and misrepresentation claim fails. *See YTY Indus. SDN. BHD. v. Dow Chem. Co.*, 2009 WL 3633871, at *20 (C.D. Cal. Oct. 28, 2009) ("If a defendant's belief is both honest and reasonable, the misrepresentation is innocent and there is no tort liability.") (cleaned up); 5 Witkin, Summ. Cal. L., 11th Torts § 949 (2024) (same). Plaintiffs' Opposition boils down to a conclusory argument that Plaintiffs have sufficiently alleged the "who,

what, when, where, and how" of their fraud and misrepresentation claims. Opp'n at 24. The Opposition does not rebut that Plaintiffs fail to allege knowledge of falsity and intent to defraud. *See Helm*, 696 F. Supp. 2d at 1079. Because Plaintiffs fail to allege these elements at all, it is immaterial whether they can be alleged on "information and belief." *See* Opp'n at 24.

## VII. CLAIM 9: PLAINTIFFS' TRESPASS TO CHATTELS CLAIM FAILS TO ALLEGE INTENTIONAL OR SIGNIFICANT INTERFERENCE WITH POSSESSION

"Under California law, trespass to chattels 'lies where an *intentional* interference with the possession of personal property' causes injury." *Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 968 (9th Cir. 2024) (emphasis added) (citation omitted). The Opposition does not rebut Hilton Holdings' argument that it did not intentionally interfere with Plaintiffs' devices. *See* Opp'n at 24-25. The Opposition independently fails to show how the FAC alleges "significant reduction in service constituting an interference with the intended functioning" of Plaintiffs' devices. *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012). Relying on *In re Meta Pixel Healthcare Litigation*, Plaintiffs argue that cookies interfering with the "security" and "function" of Plaintiffs' computers by "taking up storage space" constitutes "harm" sufficient to their claim. Opp'n at 25. But there the court based its decision on specific allegations of "'measurable' increases in web-page loading time." 713 F. Supp. 3d 650, 657, 659 (N.D. Cal. 2024). Those well-pleaded allegations are entirely absent from the FAC. *See* FAC ¶¶ 252-256.

Plaintiffs' allegations here most closely resemble those in *Doe I v. Google LLC*, 741 F. Supp. 3d at 846, where the court granted Google's motion to dismiss, finding that without factual support for how a "significant reduction" in performance occurred, "it is not obvious how the presence on one's computer of the cookies . . . would result in any cognizable reduction in storage, disk space, or performance." Thus, Plaintiffs' trespass to chattels claim should also be dismissed.

## VIII. CONCLUSION

For these reasons, Hilton Holdings respectfully requests that the Court grant its Motion to Dismiss Plaintiffs' FAC in its entirety with prejudice.

Dated: July 30, 2025

DLA PIPER LLP (US)

By: */s/ Isabelle L. Ord*
*Attorneys for Defendant*
*HILTON WORLDWIDE HOLDINGS INC.*