UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISHAL SHAH, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>HILTON WORLDWIDE HOLDINGS INC.,<br><br>    Defendant. | Case No. 25-cv-01018-EKL<br><br>**ORDER GRANTING MOTION TO TRANSFER**<br><br>Re: Dkt. No. 52 |

This putative class action arises from a dispute regarding online tracking of personal data. Plaintiffs Vishal Shah, Jonathan Gabrielli, and Christine Wiley (collectively, "Plaintiffs") sued Defendant Hilton Worldwide Holdings Inc. for causing third-party cookies and other similar tracking technologies to be placed on devices that accessed www.Hilton.com ("Website"), even after users opted out of tracking. *See* First Am. Compl. ¶¶ 1-2, 40 ("Compl."). After nearly seven months of litigation, Plaintiffs' counsel disclosed information sufficient for Defendant to determine that all three named Plaintiffs are members of the Hilton Honors Members Rewards Program ("Honors Program"), the terms of which provide that the "venue for all suits will be in the Eastern District of Virginia[.]" Ord Decl., Ex. D at 1-6, ECF No. 52-1; Anderson Decl., Ex. J at 1, ECF No. 52-2.[1] Before the Court is Defendant's motion to transfer the case pursuant to this venue-selection clause. Mot. to Transfer, ECF No. 52 ("Mot."). The Court carefully reviewed the parties' briefs and heard argument on November 21, 2025. For the following reasons, the motion to transfer is GRANTED.[2]

---

[1] Citations use pagination from the Electronic Case Filing system if the original document lacks pagination.

[2] Defendant's motion to dismiss the first amended complaint is also pending before the

## I. BACKGROUND

Defendant Hilton Worldwide Holdings Inc. ("Defendant") is the parent company of Hilton Domestic Operating Company Inc. and Hilton Honors Worldwide, LLC. *See* Anderson Decl. ¶ 32; Ex. P at 281, 283. Defendant's subsidiaries own and operate well-known Hilton branded hotels and properties such as Hilton Garden Inn, Waldorf Astoria, and DoubleTree by Hilton. *See* Barton Decl., Ex. C at 135-36, 263-66, ECF No. 69-1. Prospective guests frequently use the Website to find information about hotels and make reservations. *See* Compl. ¶¶ 26-27. When accessing the Website, users located in California are shown a pop-up consent banner allowing them to "Opt Out" of "cookies and other similar tracking technologies," which allow Defendant and third parties to track and collect users' data in real time. *See id.* ¶¶ 2-3, 61. Plaintiffs, who are California residents, allege that the Website enabled tracking technologies to be placed on their devices even after Plaintiffs opted out of tracking via the pop-up consent banner. *See id.* ¶¶ 2, 116, 125, 134.

Plaintiffs allege that these tracking technologies allowed Defendant and third parties "to surreptitiously track in real time and collect Website users' personal information," including "browsing history, visit history, website interactions, user input data and search parameters . . . [,] demographic information, interests and preferences, shopping behaviors, device information,

---

Court. Mot. to Dismiss, ECF No. 33. Although the question of personal jurisdiction is "typically decided in advance of venue," the Court may "reverse the normal order of considering personal jurisdiction and venue" when there is a "sound prudential justification for doing so[.]" *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979)); *see also Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 432 (2007) ("A district court . . . may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant.").

Such reasons exist here. The recent decision in *Briskin v. Shopify, Inc.* greatly impacts the personal jurisdiction inquiry for e-commerce cases in the Ninth Circuit. 135 F.4th 739 (9th Cir. 2025). As a result, whether the Court has personal jurisdiction over Defendant is a close question, and Plaintiffs' amended complaint may or may not be subject to dismissal. *Sinochem Int'l Co. Ltd.*, 549 U.S. at 436 ("But where subject-matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course."). Additionally, Plaintiffs delayed disclosing that they are in fact Honors Members, which caused unnecessary delay in the filing of a motion to transfer and related expense. Stipulation re: Award of Sanctions on Hilton Holdings' Mot. for Sanctions, ECF No. 80. Thus, the Court finds that considerations of "fairness[] and judicial economy" warrant the determination of venue before personal jurisdiction. *Sinochem Int'l Co. Ltd.*, 549 U.S. at 432.

2

referring URLs, session information, user identifiers, and/or geolocation data." *Id.* ¶¶ 56, 120, 128. The user input data that was allegedly tracked included "[t]he information the user entered into the Website's form fields and/or search interface, including search queries, dates of visits, number of people, the user's name, age, gender, email address, location, location preferences within a city, and/or payment information." *Id.* ¶ 56.

The named Plaintiffs are members of the Honors Program ("Honors Members"), a free loyalty program for Hilton guests. *See* Ord Decl., Ex. D at 1-6. To enroll in the Honors Program, users must click a button labeled "Join for Free" on the Website. Anderson Decl., Ex. I. This button is located directly below a warning stating that "[b]y clicking Join I agree to the Hilton Honors Program Terms and Conditions and I agree to the collection, use, sharing and transfer of information as set out in the Hilton Global Privacy Statement." *Id.* The Hilton Honors Terms and Conditions ("Honors Terms") include a section titled "Your Agreement to Our Use of Information About You," which provides that "by participating in the Hilton Honors Program, we may collect additional personal information from you[] [that] [w]e may [] use and share . . . in the ways described below, in addition to what is described in the Privacy Policy." *Id.*, Ex. J at 18. The Hilton Global Privacy Statement,[3] in turn, provides detailed explanations about what personal information is collected from Honors Members and Website users. *See* Barton Decl., Ex. A. It also discloses that Hilton "partner[s] with certain third-party service providers to collect information . . . [and] [t]hese parties may use server logs, web beacons, tags, pixels, and similar technologies, and they may set and access cookies on your computer or device." *Id.* at 12.

The Honors Terms also contain a venue-selection clause, which provides that "Members consent that venue for all suits will be in the Eastern District of Virginia[.]" Anderson Decl., Ex. J at 1. Defendant contends that this forum-selection clause applies to Plaintiffs' lawsuit and moves to transfer accordingly. *See* Mot. at 3. Because the Court finds that transfer is proper pursuant to the venue-selection clause, the Court does not address Defendant's alternative argument that the

---

[3] The Hilton Global Privacy Statement is alternatively referred to as the Hilton Global Privacy Policy. *See, e.g.*, Anderson Decl., Ex. J at 18. For consistency, the Court refers to it as the "Privacy Statement."

matter should be transferred based on the convenience of the parties and witnesses.

## II.  LEGAL STANDARD

The Court begins by determining whether the parties agreed to a valid forum-selection clause that applies to this case.  *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 n.5 (2013).  If a valid forum-selection clause applies, it should be "given controlling weight in all but the most exceptional cases."  *Id.* at 63 (citation and quote marks omitted).  When there is a valid clause, "no weight" is given to the plaintiff's choice of forum and the Court does "not consider arguments about the parties' private interests," including the convenience of the parties and witnesses.  *Id.* at 63-64.

The Court applies federal law when interpreting the scope of a forum-selection clause.  *See Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018).  However, the Court also "look[s] for guidance 'to general principles for interpreting contracts.'"  *Id.* (citing *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009)).  The Court applies state law when addressing contract formation issues, including whether a party has standing to enforce a contract.[4]  *See Revitch v. DIRECTV, LLC*, 977 F.3d 713, 716-19 (9th Cir. 2020).  If a Court "determines that a dispute is covered by a forum-selection clause, the Court should enforce the forum-selection clause 'unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances.'"  *Clark-Alonso v. Sw. Airlines Co.*, 440 F. Supp. 3d 1089, 1093 (N.D. Cal. 2020) (citation omitted).

## III.  DISCUSSION

Defendant argues that this case should be transferred because Plaintiffs, as Honors Members, executed a valid forum-selection-clause consenting to venue for "all suits" in the Eastern District of Virginia.  Mot. at 3.  Plaintiffs do not dispute that they are Honors Members,

---

[4] The Honors Terms contain a New York choice-of-law provision.  *See* Anderson Decl., Ex. J at 1.  However, the parties agree that "[a]s a practical matter, the choice of law has little effect in this case," Opp. at 6; *see also* Mot. at 8, and although the parties cite separately to New York and California cases, neither party provides a choice-of-law analysis.  Because the Court agrees that the choice of law has no effect on the interprterion of this contract, it does not engage in the choice-of-law analysis and applies cases the parties cited from both New York and California for contract interpretation issues.

4

1  *see* Pls.' Opp. to Mot. to Transfer at 3 n.2, ECF No. 60 ("Opp.") (recognizing that "each Plaintiff
2  joined [the Honors Program] at a different date"), and do not argue that the Honors Terms are
3  facially invalid.  Instead, Plaintiffs argue that (1) this lawsuit is beyond the scope of the Honors
4  Terms and that (2) even if the Honors Terms do apply, Defendant does not have standing to
5  enforce the venue-selection clause.
6        As discussed below, neither argument is persuasive, and the Court concludes that this
7  action should be transferred to the Eastern District of Virginia pursuant to the forum-selection
8  clause in the Honors Terms.

      **A.**    **Scope of the Honors Terms**

The Honors Terms state that "Members consent that venue for *all suits* will be in the Eastern District of Virginia[.]"  Anderson Decl., Ex. J at 1 (emphasis added).  Venue-selection clauses typically specify that they apply to lawsuits "arising out of" or "relating to" the agreement.  *See, e.g.*, *Yei A. Sun*, 901 F.3d at 1086; *Clark-Alonso*, 440 F. Supp. 3d at 1094.  Venue-selection clauses that purport to apply to "all suits" or "all disputes," such as the one here, are considered "unusually broad as to the subject matter [they] purport[] to cover." *Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500, 502 (E.D.N.Y 2016).  Such clauses have been described as "[i]nfinite arbitration clauses," because they seemingly require arbitration of *any* claim.  *N.Y. Knicks, LLC v. Maple League Sports & Ent. Ltd.*, 23-CV-7394 (JGLC), 2024 WL 3237563, at *8 (S.D.N.Y. June 28, 2024).  Rather than construe these clauses as unlimited in scope, courts have "look[ed] to the reasonable expectation of the parties at the time of the contract."  *Revitch*, 977 F.3d at 717; *Wexler*, 211 F. Supp. 3d at 504 (citation and quote marks omitted) (noting that "an arbitration clause that is unlimited in scope presents a question of contract *formation*[,]" and applying a "reasonable person" standard).[5]  If the dispute "plainly relates" to the contract such that there is a "plain nexus" between them, then it is binding.  *N.Y. Knicks, LLC*, 2024 WL 3237563, at *9-10.  If there is not, then there is no meeting of the minds, and the arbitration clause cannot be enforced.  *Wexler*, 211 F. Supp. 3d at 504; *Revitch*, 977 F.3d at 720.

---

[5] Plaintiffs rely on this "reasonable person" standard in their briefing.  *See* Opp. at 8, 10 (citing *Revitch*, 977 F.3d at 721 (quoting *Wexler*, 211 F. Supp. 3d at 504)).

1 Here, there is a "plain nexus" between the dispute and the Honors Terms because Honors
2 Members are notified about the Honors Terms, Privacy Statement, and data collection terms when
3 signing up for membership. *See N.Y. Knicks, LLC*, 2024 WL 3237563, at *9-10. To enroll in the
4 Honors Program, a user must click a button labeled "Join for Free." *See* Anderson Decl., Ex. I.
5 Directly above this button is a warning that "[b]y clicking Join I agree to the Hilton Honors
6 Program Terms and Conditions and I agree to the collection, use, sharing and transfer of
7 information as set out in the Hilton Global Privacy Statement." *Id.* Thus, the user is given actual
8 notice that, by becoming an Honors Member, they agree to the Honors Terms, the Privacy
9 Statement, and the collection, use, sharing and transfer of information under those agreements.
10 Because this case involves the electronic collection of Plaintiffs' personal information, there is a
11 plain nexus between the dispute, this notice, and the agreements. In addition, the user is on
12 inquiry notice as to the contents of the Honors Terms and Privacy Statement, including the forum-
13 selection clause and relevant data collection terms, even if the Honors Member neglects to read
14 either agreement. *See Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 476-77 (9th Cir. 2024)
15 (holding that plaintiffs had inquiry notice of arbitration provision when the website notified
16 customers with a "clear[,] legible . . . hyperlinked phrase [saying] 'terms of use'" directly below
17 key information and a button that the user must click).

18 The Honors Terms plainly relate to data privacy. The Honors Terms contain a section
19 titled "Your Agreement to Our Use of Information about You," which explains that:

> [B]y participating in the Hilton Honors Program, we may collect additional personal information from you. We may also use and share your personal information in the ways described below, in addition to what is described in the Privacy Policy. These Terms and Conditions supplement the Privacy Policy with respect to our processing of the personal information of Hilton Honors Program Members. IF YOU DO NOT AGREE TO THESE TERMS, you must elect NOT to join the Hilton Honors Program.

24 Anderson Decl., Ex. J at 18. Thus, the Honors Terms incorporate and supplement the Privacy
25 Statement, and jointly the documents govern the collection of personal information for Honors
26 Members. *See id.* (explaining that Hilton collects Honors Members' "name[s], physical address
27 and e-mail address," "preferred airline partners and [] loyalty program account numbers with
28 them, [] room type preferences, [] language preferences, [] credit card account(s), [] preferences

for receiving news, offers and information from companies that are part of the Hilton Portfolio").

The Privacy Statement further supports this conclusion. Like the Honors Terms, the Privacy Statement details what information the Website collects about Honors Members, as compared to non-Member users. *See* Barton Decl., Ex. A at 9-12. This includes collecting Honors Members' names, e-mail addresses, and room type preferences, *see id.* at 10-12, which is the exact type of user information that Plaintiffs allege Defendant improperly collected and shared with third parties, *see* Compl. ¶¶ 56, 120, 128. The Privacy Statement also states that Hilton "partner[s] with certain third-party service providers to collect information . . . [and] [t]hese parties may use server logs, web beacons, tags, pixels, and similar technologies, and they may set and access cookies on your computer or other device." Barton Decl., Ex. A at 12. The use of cookies and similar tracking technologies by third parties is at the very heart of Plaintiffs lawsuit. *See* Compl. ¶ 53. Thus, both the data collected and the methods of collection at issue in Plaintiffs' lawsuit are expressly covered by the Honors Terms and Privacy Statement.

Nevertheless, Plaintiffs argue that their status as Honors Members is inapposite because "the Hilton Honors Program has no connection with Plaintiffs' use of the Hilton.com website" since the Website treats Honors Members and non-Member users alike by tracking personal information through cookies and similar technologies. Opp. at 10; *see also* Barton Decl., Ex. A at 9-11 (distinguishing what type of information is collected "[w]hen you browse a Hilton website," "log into your [Honors] account during your browsing session," and "[w]hen you enroll in Hilton Honors"). Plaintiffs rely on *Clark-Alonso v. Southwest Airlines Co.* to support this argument. In *Clark-Alonso*, a Southwest Airlines Rapid Rewards member brought claims under the California Invasion of Privacy Act ("CIPA") after Southwest recorded his call to the rewards hotline without disclosing that the call was being recorded. 440 F. Supp. 3d at 1092. The court held that a forum-selection clause in the Rapid Rewards Rules and Regulations did not apply to the dispute because "plaintiff's claim d[id] not involve the interpretation or performance of the Rapid Rewards Rules and Regulations" and because "the CIPA claim d[id] not 'reference the agreement or have some "logical or causal connection"' to the Rules and Regulations." *Id.* at 1094 (citation omitted).

Unlike *Clark-Alonso*, Plaintiffs lawsuit requires the Court to interpret the Honors Terms.

7

*See id.* Plaintiffs' seventh cause of action is for breach of the Privacy Statement. Compl. ¶¶ 72, 234-240. Under the Honors Terms, Hilton "may collect additional personal information from [Honors Members that it] . . . may [] use and share . . . in the ways described below, *in addition to* what is described in the Privacy [Statement]." Anderson Decl., Ex. J at 18 (emphasis added). Thus, the Honors Terms "supplement the Privacy [Statement]" by specifying additional "ways" that an Honors Member's personal information can be used. *See id.* Thus, to decide whether Defendant breached the Privacy Statement, the Court must also interpret the Honors Terms to determine what Plaintiffs separately agreed to as Honors Members. Because the Court must "interpret[] . . . the contract itself," there is a plain nexus between the dispute and the Honors Terms, satisfying even the narrower "arising out of" standard. *Yei A. Sun*, 901 F.3d at 1086 (discussing the difference between "arising out of" and "relating to"). This is unlike *Clark-Alonso*, where interpreting the Rapid Rewards Rules and Regulations was not required. *See* 440 F. Supp. 3d at 1094; *see also Cole v. Quest Diagnostics, Inc.*, No. 1:22-CV-00892 JLT SKO, 2023 WL 6201702, at *3 (E.D. Cal. Sept. 22, 2023) (distinguishing *Clark-Alonso* because "there was no assertion or indication that plaintiff's claim referenced – even indirectly – the Rules and Regulations or that any provision of the Rules and Regulations were pertinent to plaintiff's claim, requiring the court's interpretation.").

A reasonable person, therefore, would understand that becoming an Honors Member is directly tied to agreeing to the Honors Terms, which supplement the Privacy Statement and affect what personal information Hilton collects. A reasonable person would further understand that a cause of action for breach of the Privacy Statement would necessarily require the Court to interpret the Honors Terms. Accordingly, there is a plain nexus here between Plaintiffs lawsuit and the Honors Terms, meaning that the Terms apply to this lawsuit.

### B.     Standing to Enforce Honors Terms

Having determined that Plaintiffs' lawsuit falls within the scope of the Honors Terms, the Court must next decide whether Defendant has standing to enforce the agreement. The Honors Terms provide that:

8

> Hilton Honors Program membership and its benefits are offered at the sole discretion of Hilton Honors, a wholly owned subsidiary of Hilton Domestic Operating Company Inc.  Hilton Honors is defined as Hilton Honors Worldwide, LLC, its subsidiaries, *affiliates*, officers, directors, partners, employees, and agents.

Anderson Decl., Ex. J at 1 (emphasis added).  The issue is whether Defendant, as the ultimate parent company of Hilton Domestic Operating Company Inc. ("HDOC") and Hilton Honors Worldwide, LLC ("HHW"), is an "affiliate" under the Honors Terms.  Defendant argues that, as the ultimate parent company of HDOC and HHW, it is an "affiliate" of HHW and therefore a party to the contract.  *See* Mot. at 12; Reply at 10; *see also* Anderson Decl. ¶ 32; Ex. P at 281, 283 (stating that HDOC is the direct parent of HHW).  Plaintiffs argue that Defendant is not an "affiliate" as evidenced by the fact that the Honors Terms later include the term "parent" in reference to HDOC but omit it when defining "Hilton Honors."  *See* Opp. at 15; Anderson Decl., Ex. J at 6.

"Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself."  *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999).  Thus, "the 'primary rule of interpretation [is] that the common or normal meaning of language will be given to the words of a contract unless circumstances show that in a particular case a special meaning should be attached to it.'"  *Doe 1*, 552 F.3d at 1081 (citing *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77 (9th Cir. 1987)).  Accordingly, the Court begins its analysis with the plain and ordinary meaning of the term "affiliate."

An "affiliate" is a "corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, *parent*, or sibling corporation."  Black's Law Dictionary (12th ed. 2024) (emphasis added); *see also Satterfield v. Simon & Shuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) ("The plain and ordinary meaning of 'affiliate' . . . [is] 'a company effectively controlled by another or associated with others under common ownership or control.'" (citing Webster's Third New International Dictionary 35 (2002)).  Courts routinely give the term this plain and ordinary meaning.  *See Kaselitz v. HiSosft Tech. Int'l, Ltd.*, No. C-12-5760 MMC, 2013 WL 622382, at *6 (N.D. Cal. Feb. 15, 2013) (citing Black's Law Dictionary); *Chirico v. 352 Cap.*

*ABS Fund LLC*, 85 Misc.3d 1257(A), 2025 WL 1153824, at *7 (N.Y. Sup. Ct. Apr. 9, 2025) (same); *Verduzco-Soto v. Georgia Properties, Inc.*, 26 Misc.3d 1222(A), 2010 WL 532407, at *3 n.1 (N.Y. Sup. Ct. Feb. 16, 2010) (same). And "there is support [both] under New York law" and in the Ninth Circuit "for the notion that a parent corporation may be considered an affiliate, at least, of its subsidiary[.]" *R.R. Donnelley & Sons Co. v. Marino*, 505 F. Supp. 3d 194, 203 (W.D.N.Y. 2020); *see Namisnak v. Uber Techs., Inc.*, 315 F. Supp. 3d 1124, 1129 (N.D. Cal. 2018) (holding that parent corporation had standing to enforce arbitration agreement because it was an affiliate).

Plaintiffs do not cite a contrary definition; instead, they cite broader, less specific definitions. *See* Opp. at 14 (citing *Nanal, Inc. v. SMK Int'l, Inc.*, No. 2:19-cv-02211-RFB-EJY, 2021 WL 6118737, at *4 (D. Nev. Dec. 27, 2021) (stating that "affiliate" can be defined according to Black's Law Dictionary or that it can "more broadly mean 'an affiliated person or organization,' where 'affiliated' is defined as a person or entity 'joined or connected' to another."); *Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 251 (N.Y. 2014) (Rivera, J., dissenting) (citing *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 130 (2d Cir. 2001) ("An 'affiliate' is defined as 'being close in connection, allied, associated, or attached as a member or branch.'"))). The Court sees no reason why that breadth would exclude parent corporations. Thus, the Court finds that the plain and ordinary meaning of the term "affiliate" includes a parent corporation.

Nevertheless, Plaintiffs ask the Court to depart from the plain and ordinary meaning for two reasons: first, the Honors Terms do not define "Hilton Honors" to include "its parent" but later refers to HDOC and "its parent"; and second, giving the term "affiliate" its plain and ordinary meaning would cause the statement that Hilton Honors is "a wholly owned subsidiary of Hilton Domestic Operating Company Inc." to be factually incorrect. The Court declines to do so.

*First*, Plaintiffs argue that, under the interpretive canon *expressio unius est exclusio alterius*, the Court must credit the fact that "Hilton Honors" is not defined as including "its parent" whereas the Honors Terms later state that "[c]urrent employees of Hilton Domestic Operating Company Inc., *its parent*, affiliates and subsidiaries and the employees or owners of hotels within the Hilton Portfolio . . . are eligible to participate in the Hilton Honors Program," Anderson Decl.,

10

Ex. J at 6 (emphasis added). Under the *expressio unius* canon, when parties to a contract "express or include one thing[,] [it] implies the exclusion of the other, or of the alternative." *Rosenthal-Zuckerman v. Epstein, Becker & Green Long Term Disability Plan*, 39 F. Supp. 3d 1103, 1107 (C.D. Cal. 2014) (citation and quote marks omitted). The Supreme Court has cautioned, however, that the canon is "a valuable servant, but a dangerous master." *Cheney R. Co., Inc. v. Interstate Com. Comm'n*, 902 F.2d 66, 69 (D.C. Cir. 1990) (quote marks omitted) (citing *Ford v. U.S.*, 273 U.S. 593, 612 (1927)). Accordingly, the "*expressio unius* canon applies only when 'circumstances support[] a sensible inference that the term left out must have been meant to be excluded.'" *N.L.R.B. v. Sw. Gen., Inc.*, 580 U.S. 288, 307 (2017) (alterations in original) (citation omitted); *see also Ford*, 273 U.S. at 611 ("This maxim properly applies only when in the natural association of ideas in the mind of the reader that which is expressed is so set over by way of strong contrast to that which is omitted that the contrast enforces the affirmative inference that that which is omitted must be intended to have opposite and contrary treatment.").

Here, the omission of the term "its parent" from the definition of "Hilton Honors" but later inclusion in the agreement does not create the "strong contrast" necessary to create "the affirmative inference that what is omitted must be intended to have opposite and contrary treatment." *Ford*, 273 U.S. at 611. The two clauses at issue are five pages apart – on pages one and six of the Honors Terms, respectively. *See* Anderson Decl., Ex. J at 1, 6. This does not make an obvious distinction in the mind of the reader, and it is unlike the contract in *Souza v. True North Management Services LLC* – Plaintiffs' principal authority. No. CV-23-02588-PHX-DWL, 2024 WL 2746967, at *1 (D. Ariz. May 29, 2024) (applying the *expressio unius* canon where the contract at issue defined one entity to include its "parents" but then omitted the term for a second entity within the very same sentence). Here, the inclusion of "its parent" once in the Honors Terms does not support the inference that the *expressio unius* canon should be applied to deviate from the plain meaning of "affiliates." *N.L.R.B.*, 580 U.S. at 307.

*Second*, Plaintiffs argue that giving "affiliate" its plain and ordinary meaning "would render . . . the statement that Hilton Honors is 'a wholly owned subsidiary of Hilton Domestic Operating Company Inc.' . . . false or nonsensical." Opp. at 15. However, this argument rests on

11

reading the third paragraph of the Honors Terms in isolation. When the first and third paragraphs are read together, Plaintiffs' concern is resolved. As stated in the Honors Terms:

> The following information forms the basis of participation in the Hilton Honors Member Reward Program ("*Hilton Honors*" or "Program"). These Terms and Conditions ("Terms and Conditions") are intended to protect the members of Hilton Honors ("Members"), and Hilton Honors Worldwide, LLC ("*Hilton Honors*" or "We"). Your participation in this Program will be governed by these Terms and Conditions, and it is your responsibility to read and understand all of them.
>
> . . .
>
> Hilton Honors Program membership and its benefits are offered at the sole discretion of *Hilton Honors*, a wholly owned subsidiary of Hilton Domestic Operating Company Inc. *Hilton Honors* is defined as Hilton Honors Worldwide, LLC, its subsidiaries, affiliates, officers, directors, partners, employees, and agents.

Anderson Decl. at 1 (emphasis added). As this passage reflects, the term "Hilton Honors" is given three independent meanings. Read in order, the Honors Terms define "Hilton Honors" to mean HHW. *See id.* Then, the Honors Terms state that Hilton Honors, *i.e.*, HHW, is a wholly owned subsidiary of HDOC. *See id.* This is consistent with the Privacy Statement. *See* Barton Decl., Ex. A at 5 ("Hilton Honors Worldwide LLC, which is a subsidiary of Hilton Domestic Operating Company Inc., operates the Hilton Honors loyalty program"). Only then do the Honors Terms re-define "Hilton Honors" to include "affiliates." *See* Anderson Decl. at 1.

Plaintiffs' argument asks the Court to ignore the prior definition of "Hilton Honors" and read the relevant passages out of order. However, doing so would produce the very "nonsensical" results that Plaintiffs decry. Opp. at 15. Under Plaintiffs' interpretation, the passage would read: "Hilton Honors Worldwide, LLC, its subsidiaries, affiliates, officers, directors, partners, employees, and agents" are "wholly owned subsidiaries" of HDOC. Anderson Decl., Ex. J at 1. But this is itself nonsensical because officers, directors, and employees cannot be wholly owned subsidiaries as they are not corporate entities. *See* Black's Law Dictionary (12th ed. 2024) (defining subsidiary as a "corporation in which a parent corporation has a controlling share."). This additional context bolsters the conclusion that the Honors Terms meant HHW is a subsidiary of HDOC, and nothing more.

Broadening the analysis to consider other portions of the Honors Terms provides further support for this conclusion. For example, the Honors Terms explicitly state that "[a]ny Points,

12

1   Certificates or benefits which Hilton Domestic Operating Company Inc. deems in its sole

2   discretion to have been transferred, sold or assigned in violation of the Program Terms and

3   Conditions may be confiscated or canceled." Anderson Decl., Ex. J at 2. Thus, the Honors Terms

4   explicitly reserve a discretionary role for HDOC, the parent company of HHW, in administering

5   the Honors Terms. Giving HDOC authority to enforce core elements of the Honors Program at its

6   sole discretion is inconsistent with preventing HDOC from enforcing the Honors Terms. Instead,

7   the fact that the Honors Terms expressly contemplate the involvement of HDOC further evinces

8   intent for parent corporations to be party to the Terms, which both HDOC and Defendant would

9   be under the plain and ordinary meaning of "affiliate."

10   Because the Honors Terms do not clearly manifest an intent for "affiliate" to have a special

11   meaning, the Court relies on the plain and ordinary meaning of the term. That plain and ordinary

12   meaning includes parent corporations. Thus, Defendant – as the ultimate parent corporation of

13   HDOC and HHW – is an affiliate under the Honors Terms and has standing to seek to enforce the

14   contract.

## IV.   CONCLUSION

Because the Court finds that the scope of the Honors Terms applies to Plaintiffs' lawsuit and that Defendant can enforce the agreement, transfer is compelled by the venue-selection clause. For the foregoing reasons, the motion to transfer to the Eastern District of Virginia is GRANTED.[6]

**IT IS SO ORDERED.**

Dated: January 7, 2026

Eumi K. Lee
United States District Judge

---

[6] Given that personal jurisdiction over Defendant in the Eastern District of Virginia is undisputed, *see* Mot. at 16-17, the Court terminates Defendant's motion to dismiss, ECF No. 33. This is done without prejudice to Defendant refiling the motion, as appropriate, in the Eastern District of Virginia.

13