**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| VISHAL SHAH, JONATHAN GABRIELLI, and CHRISTINE Q. WILEY, as individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br>v.<br><br>HILTON WORLDWIDE HOLDINGS INC.,<br>Defendant. | Case No. 1:26-cv-00059-RDA-WEF |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT HILTON WORLDWIDE HOLDINGS INC.'S MOTION TO DISMISS**

Defendant Hilton Worldwide submits this Memorandum in support of its Motion to Dismiss the First Amended Complaint under Federal Rule of Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim.

## INTRODUCTION

This lawsuit was filed by serial litigants and is without merit. Now that the case has been transferred to the venue required by the forum selection clause in the Hilton Honors Terms & Conditions ("HH Terms"), Plaintiffs' claims under the California Invasion of Privacy Act ("CIPA") and California common law must be dismissed because Plaintiffs also agreed pursuant to the HH Terms that New York law applies, and these claims are not recognized under New York law. Even if the Court applied California law, the First Amended Complaint ("FAC") still fails to plausibly state a single claim for relief. The FAC should also be dismissed because Plaintiffs fail to allege an injury-in-fact sufficient to confer Article III standing stemming from their brief interactions with www.hilton.com (the "Website").

Plaintiffs allege that in 2023 and 2024, they visited the Website "to browse information about Hilton's hotels and resorts." FAC ¶¶ 114, 123, 132. The crux of Plaintiffs' allegations is that, upon visiting the Website, they saw a cookie banner that allowed them to "Opt Out" of certain common website cookies, but certain cookies were not disabled and transmitted data to third parties. *See id.* ¶¶ 61, 115-16, 124-25, 133-34. Absent from Plaintiffs' FAC is any allegation that Hilton Worldwide ***intended*** this malfunction—or that it actually caused Plaintiffs' private information to be collected or disclosed to third parties. Accordingly, Plaintiffs' sprawling FAC should be dismissed for multiple, independent reasons:

*First*, Plaintiffs agreed that the HH Terms and Global Privacy Statement (the "Privacy Statement"), which the District Court for the Northern District of California found apply to

Plaintiffs' claims, "are to be construed under the laws of the State of New York, U.S.A., without giving effect to any choice of law or conflict of law rules or provisions that would cause the application of any other state laws." Ex. 2 to the Declaration of Matthew C. Danaher ("Danaher Decl."), at 1. Plaintiffs' statutory and common law privacy claims predicated on California law are not recognized under New York law.

*Second*, Plaintiffs agreed under the HH Terms that their claims "may not be resolved through any form of class action," and this contractual waiver is clearly enforceable. *Id.*

*Third*, Plaintiffs consented to the tracking and sharing of information at issue pursuant to the HH Terms and Privacy Statement. *Id.* at 18-19.

*Fourth*, Plaintiffs fail to allege they suffered an actual injury-in-fact to confer Article III standing because they do not clearly allege any of their personal information was actually collected or disclosed or that they were injured by any alleged disclosure.

*Fifth*, even if the Court applied California law, Plaintiffs' invasion of privacy and intrusion upon seclusion claims fail to allege any intentional or "highly offensive" conduct.

*Sixth*, Plaintiffs' CIPA claims also fail because they do not allege Hilton Worldwide or any third party intended to commit an unlawful "wiretap" and Plaintiffs expressly plead themselves out of their novel "pen register" theory by alleging the cookies can generally capture "some" data elements that can be "contents" of communications.

*Seventh*, under both California and New York law, Plaintiffs' claims for fraud, breach of contract, and breach of the implied covenant of good faith and fair dealing fail to allege damages, their equitable claims and remedies are foreclosed because money damages are adequate, their unjust enrichment claim is duplicative of the contract claim, their breach of implied covenant claim is superfluous, and they fail to plead the requisite knowledge or intent to support their fraud claim

to satisfy Rule 9(b).

*Eighth*, Plaintiffs' trespass to chattels claim fails under both New York and California law because Plaintiffs do not allege intentional conduct or a significant interference with their devices.

For each and all of these reasons, the FAC should be dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Hilton.com Website

Hilton Worldwide "is a Delaware corporation with its headquarters and principal place of business in McLean, Virginia." FAC ¶ 9. It is the ultimate parent of a global hospitality enterprise. *See id.* ¶ 14. According to the FAC, Hilton Worldwide "owns and operates" the Website, which visitors may use to make hotel reservations and browse information about Hilton hotels. *See id* ¶ 25. The Website contains first and third-party cookies (*see id.* ¶ 59) and had a cookie banner (the "Cookie Banner"), which immediately displayed when a visitor navigated to the Website. *See id.* ¶ 61. The Cookie Banner informed visitors that the Website contains "cookies and similar technologies," provides a link to the Hilton Global Privacy Statement, and also provides a "Do Not Sell My Personal Information" link. *Id*. The Cookie Banner allowed visitors to select an "Opt Out" button to "opt out of cookies and similar technologies" identified in the Hilton Global Privacy Statement, which describes how information is collected from the use of the Website and shared with third parties. See *id*. ¶¶ 1, 60 n.1.

### B. Plaintiffs' Interactions with Hilton.com

Plaintiffs allege they visited the Website in either 2023 or 2024 "to browse information about Hilton's hotels and resorts." FAC ¶¶ 114, 123, 132. Plaintiffs allege they "typ[ed] in search strings for the location(s)" they "wished to visit," "input[ed] various options (e.g., dates of visit, number of visitors)," "selected filters to prioritize display of types of rooms . . . favored," and "selected

some of the displayed properties and clicked through to look at them in more detail." *Id.* ¶¶ 119, 128, 137. Plaintiffs claim that "[a]s each property and room was clicked, URLs containing Private Communication in the form of details input by [Plaintiffs] (e.g., the location, room type, number of visitors, dates of visit, etc.) were transmitted to Hilton and captured by Third Party cookies and recorded." *Id.* ¶¶ 119, 128, 137. Plaintiffs still do not allege that they booked reservations or entered their personal information during this browsing. *See generally id.* On the Website, Plaintiffs claim they selected the "Opt Out" button on the Cookie Banner. *See id.* ¶¶ 115-16, 124-25, 133-34. Plaintiffs allege that despite clicking the "Opt Out" button, third-party tracking technology, such as cookies, continued to function on Plaintiffs' devices. *See id.* ¶¶ 120, 129, 138. The FAC claims that as a result, Plaintiffs' "private" communications with the Website were intercepted by and disclosed to the third-party cookie providers.

### C. Hilton Worldwide Moves for Dismissal, Transfer, and Sanctions in California.

Plaintiffs filed their original class action complaint in the Northern District of California on January 31, 2025. (ECF No. 1.) On March 28, 2025, Defendant filed a motion to dismiss Plaintiffs' complaint. (ECF No. 20.) On June 11, 2025, the Court granted the motion to dismiss based on a lack of personal jurisdiction over Hilton Worldwide with leave to amend. (ECF No. 30.) On June 25, 2025, Plaintiffs filed their first amended class action complaint ("FAC"). (ECF No. 31.) On July 9, 2025, Defendant filed a motion to dismiss the FAC. (ECF No. 33.)

On October 3, 2025, Hilton Worldwide filed a motion to transfer because Plaintiffs agreed to the HH Terms, including its venue provision specifying that all actions must be brought in the Eastern District of Virginia. (ECF No. 52.) Hilton Worldwide also filed a motion for sanctions against Plaintiffs' counsel (ECF No. 54) for failure to produce information about Plaintiffs that would have revealed they were Hilton Honors members who agreed to the HH Terms, including

the venue provision. On January 7, 2026, the Court granted the Parties' stipulation awarding sanctions against Plaintiffs' counsel. (ECF No. 82.) On January 7, 2026, the Court also granted Defendant's motion to transfer and transferred the case to this Court.[1] (["Transfer Order"], ECF No. 83.) In the same Transfer Order, the Court "terminate[d] Defendant's motion to dismiss . . . without prejudice to Defendant refiling the motion, as appropriate, in the Eastern District of Virginia." *Id*. Pursuant to the Parties' proposed schedule (ECF No. 100), Hilton Worldwide now refiles its dismissal motion.

**D. Plaintiffs Agreed to the HH Terms with a New York Choice of Law Provision.**

Plaintiffs do not dispute that they are Hilton Honors members. *See Hilton Worldwide II*, 2026 WL 45093 at *3. In the Transfer Order, the Court found that "[t]he named Plaintiffs are members of the Honors Program" who "agree[d] to the Hilton Honors Program Terms and Conditions and [] agree[d] to the collection, use, sharing and transfer of information as set out in the Hilton Global Privacy Statement[2]," and to the "venue-selection clause, which provides that "[m]embers consent that venue for all suits will be in the Eastern District of Virginia[.]" *Id*. at *4. "The Honors Terms incorporate and supplement the Privacy Statement, and jointly the documents govern the collection of personal information for Honors Members."[3] *Id.* The HH Terms also

[1] The Transfer Order is ECF No. 83, *Shah v. Hilton Worldwide Holdings Inc*., No. 25-CV-01018-EKL, 2026 WL 45093 (N.D. Cal. Jan. 7, 2026) ("*Hilton Worldwide II*").

[2] The Privacy Statement is linked in footnote 1 of the FAC, and extensively quoted in paragraphs 42, 60, 72, and 234, cited in paragraphs 121, 130, 139, 218, and is the alleged contract in Plaintiffs' seventh cause of action for breach of contract. It is thereby incorporated by reference into the FAC and is attached as Exhibit 1 to Danaher Decl.

[3] The Privacy Statement is thereby part of the HH Terms, and therefore the HH Terms are also incorporated by reference as the into the FAC as the entire agreement between the parties. The HH Terms are attached as Exhibit 2 to Danaher Decl. The HH Terms were also filed with the Court for consideration of Hilton Worldwide's Motion to Transfer, and the Transfer Order cites and relies on the HH Terms as supplemental to the Privacy Statement. The HH Terms are now properly before this Court for this additional reason. ECF No. 52-2.

contain a New York choice-of-law provision, and a class action waiver. *See id*. n.4; Danaher Decl., Ex. 2 (HH Terms). The Court found that "there is a plain nexus here between Plaintiffs [sic] lawsuit and the Honors Terms, meaning that the Terms apply to this lawsuit." *Id*.

## LEGAL STANDARDS

### A. Rule 12(b)(1): Standing

A complaint should be dismissed if the court lacks subject matter jurisdiction due to a plaintiff's lack of Article III standing. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *see also Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Cedar Park Assembly of God of Kirkland, Washington v. Kreidler*, 2025 WL 716341, at *5 (9th Cir. Mar. 6, 2025) (quoting *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1057 (9th Cir. 2023)). The plaintiff, as "[t]he party invoking federal jurisdiction[,] bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

### B. Rule 12(b)(6): Failure to State a Claim

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts do not have to "accept as true allegations . . . that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

## ARGUMENT

**A. New York Law Applies, Requiring Dismissal of the California State Law Claims.**

Because this is a diversity action (*see* FAC ¶¶ 6-10), Virginia choice of law rules control the governing law. *See Olawole v. ActioNet, Inc.*, 258 F. Supp. 3d 694, 703 (E.D. Va. 2017) ("Virginia's rules apply because a federal court sitting in diversity applies the choice-of-law rules of the forum state. . . . This is so despite the fact that this case . . . was transferred here pursuant to 28 U.S.C. § 1404(a)."). "Virginia adheres to the use of traditional rules applicable to conflicts of laws." *Frye v. Commonwealth*, 231 Va. 370, 376 (1986) (citation omitted); *Knapp v. Zoetis Inc.*, 2021 WL 1225970, at *6 (E.D. Va. Mar. 31, 2021) ("In cases involving choice-of-law questions, Virginia adheres to the use of traditional rules applicable to conflicts of laws and rejects the 'most significant relationship' analysis adopted by some other states.").

"Virginia law looks favorably upon choice-of-law clauses in a contract, giving them full effect except in unusual circumstances." *Run Them Sweet, LLC v. CPA Global Ltd.*, 224 F. Supp. 3d 462, 465-466 (E.D. Va. 2016) (citations omitted) (enforcing choice-of-law provision given no "unusual circumstances"). "Virginia does not look at the public policy of other states in making its choice of law decisions." *Precision Pipeline, LLC v. Dominion Transmission, Inc.*, 2017 WL 1100903, at *3 (E.D. Va. Mar. 23, 2017). "[I]f the evidence indicates that the parties expressly intended for the law of a specific jurisdiction to govern the validity of the contract, the law of the designated jurisdiction will be applied instead" of the law of the place where the parties executed the contract. *Black v. Powers*, 48 Va. App. 113, 128 (2006).

The HH Terms to which each Plaintiff agreed state that "[t]hese Hilton Honors Program Terms and Conditions are governed by and are to be construed under the laws of the State of New York, U.S.A, without giving effect to any choice of law or conflict of law rules or provisions that

would cause the application of any other state laws." (Ex. 2 to Danaher Decl. at 1.) Further, the HH Terms apply because of the "plain nexus" between Plaintiffs' lawsuit and the HH Terms. *Hilton Worldwide II*, 2026 WL 45093 at *3. Under Virginia law, this New York choice of law provision is to be given full effect and preclude claims not recognized under New York law. *See Run Them Sweet, LLC v. CPA Glob. Ltd.,* 224 F. Supp. 3d 462, 465 (E.D. Va. 2016) (dismissing California statutory claims because Virginia law applied).

**B. New York Law Forecloses Plaintiffs' Privacy Claims.**

Plaintiffs' privacy claims are not recognized under New York substantive law and must be dismissed. In *Run Them Sweet, LLC v. CPA Glob. Ltd*., a case transferred to the Eastern District of Virginia from a California district court pursuant to a valid forum selection clause, the defendant moved to dismiss claims for violations of California's Business and Professions Code § 17200 on the basis that California law did not govern the action. 224 F. Supp. 3d 462, 465 (E.D. Va. 2016). The court found that "the choice-of-law provision [in the parties' contract] make[s] clear that the parties intended that the provision apply broadly." *Id*. at 466. The court held that the provision, which stated that "the Agreement's conditions shall be 'governed by and construed in accordance with' Virginia law," was intended "to cover contract-related tort and unjust enrichment claims." *Id.* The court found "further firm support in the very close factual relationship between plaintiff's breach-of-contract, California tort, and unjust enrichment claims." *Id.* at 467. Finally, the court held that because another state's law "applies to plaintiff's California tort and unjust enrichment claims, both claims must be dismissed." *Id.* at 468. The same result follows here.

Plaintiffs' California statutory and common law privacy claims should likewise be dismissed because New York law applies to this dispute. Each of Plaintiffs' claims are based on the same factual allegations relating to Hilton Worldwide permitting Third Parties to use "cookies and other

tracking technologies" to collect, track, and compile users' "Private Communications" on the Website. *See* FAC ¶¶ 163, 172, 188, 191, 196, 205, 213, 225, 236, 244, 253. The choice of law provision's broad language that the HH Terms "are governed by and are to be construed" under New York law covers not only Plaintiffs' contract claims, but also Plaintiffs' California statutory and common law privacy claims based on the same underlying allegations. *See Hitachi Credit Am. Corp. v. Signet Bank,* 166 F.3d 614, 628 (4th Cir. 1999) (holding that tort claim was covered by the choice-of-law provision because of its language and the tort claim's "close relationship" to plaintiff's breach-of-contract claim). Under New York law, "the right to privacy is governed exclusively by sections 50 and 51 of the Civil Rights Law." *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 123 (1993). New York does not recognize causes of action for intrusion upon seclusion and has "no common law of privacy." *Id*. Therefore, Plaintiffs' first through fourth privacy-based causes of action should be dismissed. *See Metro Mail Servs., Inc. v. Pitney Bowes, Inc.*, 2017 WL 1230848, at *5 (E.D. Va. Mar. 31, 2017) (applying Virginia law and dismissing Connecticut Unfair Trade Practices Act because "CUTPA is not a claim recognized under Virginia substantive law").

**C. Plaintiffs Waived Their Right to Pursue Class Action Claims.**[4]

Plaintiffs agreed to the HH Terms, including that "[c]laims may not be resolved through any form of class action." *See* Danaher Decl., Ex. 2 at 1. This class action waiver appears on the first page of the HH Terms, in the same size text in the sentence following the forum selection clause, and Plaintiffs do not argue that the HH Terms are facially invalid. *Hilton Worldwide II*,

---

[4] "Where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 461 (4th Cir. 2007); *see also Marriott*, 78 F.4th at 686 (holding that class-waiver is an affirmative defense). Because the Privacy Statement and HH Terms are incorporated by reference in the FAC, the HH Terms contain the class action waiver, the Northern District of California has already ruled that Plaintiffs are Hilton Honors members who agreed to the HH Terms, and they apply to Plaintiffs' claims (*Hilton Worldwide II*, 2026 WL 45093, at *5), all facts sufficient to rule on an affirmative defense are before the Court.

2026 WL 45093, at *3. "By signing a valid and enforceable class waiver, as alleged here, a plaintiff promises . . . to give up, in exchange for some contractual benefit, the right to proceed by way of an 'actual class action.'" *Marriott Int'l, Inc. v. Accenture LLP*, 78 F.4th 677, 686 (4th Cir. 2023).[5] In New York, "a contractual proscription against class actions is neither unconscionable nor violative of public policy." *Maldini v. Marriott Int'l, Inc.*, 140 F.4th 123, 135 (4th Cir. 2025); *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009) ("Courts applying New York law . . . have uniformly held that class action waivers are not unconscionable.") Plaintiffs expressly waived their right to bring a class action. Their class claims must be dismissed.

**D. Plaintiffs Consented to Hilton Worldwide's Alleged Conduct.**

Plaintiffs' claims fail because Plaintiffs *consented* to the HH Terms and Privacy Statement, which require Plaintiffs to agree to the use of cookies and similar technologies. Plaintiffs' consent to sharing information allegedly gathered by these technologies obviates their ability to plausibly allege that Hilton Worldwide unlawfully intercepted their information "without the consent of all parties" to the communication, as required to plead a CIPA violation (*see* Cal. Penal Code § 631(a); Cal. Penal Code § 632(a)) and to state any other claim based on "unauthorized" sharing of information. *See* FAC ¶¶ 43-44, 172 (intrusion upon seclusion), 216 (common law fraud).

"Where lack of consent is an express element of a claim, as is the case here, it must be alleged in the complaint," and a party may rely on documents incorporated by reference, including the HH Terms and Privacy Statement, to challenge this element. *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136-37 (N.D. Cal. 2015) (dismissing CIPA § 637.6 claim due to "failure to adequately allege lack of consent"). Plaintiffs consented to Hilton Worldwide's conduct under the

---

[5] Although it is more common to consider a class action waiver before class certification and "usually as the first order of business," (*see Marriott*, 78 F.4th at 686), the Court may determine now whether the class action waiver bars Plaintiffs' class claims.

express provisions of the HH Terms and Privacy Statement incorporated in the HH Terms:

> We partner with certain third-party service providers to collect information to engage in analytics, auditing, research, and reporting. These third parties may use server logs, web beacons, tags, pixels, and similar technologies, and they may set and access Cookies on your computer or other device.

Ex. 1 to Danaher Decl.

Plaintiffs' consent to the alleged tracking and sharing of information requires dismissal.

**E. Plaintiffs Suffered No Injury-In-Fact and Lack Article III Standing.**

Plaintiffs have not attempted to allege a cognizable injury recognized under New York law. However, even if the Court applies California law, Plaintiffs lack Article III standing. Plaintiffs allege two theories of harm: (i) a privacy interest in the information they provided on the Website, and (ii) diminishment of the value of their information. Neither amounts to an injury-in-fact.

A plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 331 (2016), *as revised* (May 24, 2016). Rather, "[a] plaintiff establishes an injury in fact when she shows that she suffered 'an invasion of a legally protected interest' that is "concrete and particularized." *Heiting v. FKA Distributing Co.*, 2025 WL 736594, at *2 (C.D. Cal. Feb. 3, 2025) (quoting *Spokeo*, 578 U.S. at 339).

***No Alleged Collection or Disclosure of Plaintiffs' Personal Information*:** "[S]ince this is a class action, at least one of the named plaintiffs must have suffered an injury in fact." *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 930 (N.D. Cal. 2015). "To sufficiently allege an injury in fact and survive a motion to dismiss, a plaintiff must identify the specific personal information she disclosed that implicates a protectable privacy interest." *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *3 (N.D. Cal. June 24, 2025) (finding plaintiff lacked standing when plaintiff failed to specify personal information disclosed).

While the FAC defines a series of data elements as "Private Communications" that *may* be disclosed through cookies by Website users at large, FAC ¶¶ 3, 56, 58, 63, 65, 69, 161, 163, 166, 172, 175, 191, 193, 216, 225, 236, 244, the FAC does not allege that ***Plaintiffs themselves*** entered any personal information on the Website or took any action on the Website other than merely "brows[ing for] information about Hilton's hotels and resorts." *See* FAC ¶¶ 114, 123, 132. Plaintiffs do not allege they provided any private information to Hilton through their interactions with the Website. Because there was no collection of private information, Plaintiffs cannot, and do not, allege the disclosure of private information.

In website "wiretapping" and similar cases, courts routinely hold plaintiffs lack Article III standing where, as here, plaintiffs fail to identify the personal information ***they*** entered on a defendant's website or whether the defendant actually collected the plaintiff's personal information. *See, e.g., Mikulsky v. Noom, Inc.* 682 F. Supp. 3d 855, 864-65 (S.D. Cal. 2023) (collecting cases); *Stevens v. TD Bank, N.A.*, 2025 WL 1779164, at *6 (D.N.J. June 27, 2025) (no standing because "[p]laintiff explains what information the Pixel may capture when a hypothetical person uses [defendant's] website, but provides no information from which the Court can infer that the Pixel actually captured *his* information.").

Plaintiffs are serial litigants who have burdened California's courts with numerous similar lawsuits against other companies, including other cases prosecuted by Plaintiffs' counsel. As Plaintiffs should know from their other litigation forays,[6] the same result follows here. The FAC

[6] Plaintiffs Gabrielli, Wiley, and Shah each filed multiple identical lawsuits over approximately the past year. *See, e.g.*, *Brown, et al. v. Pepsico, Inc., et al.*, No. 3:25-cv-6929 (N.D. Cal.) (Plaintiff Gabrielli); *Gabrielli, et al. v. Upbound Group, Inc., et al.*, No. 4:25-cv-631 (N.D. Cal.) (Plaintiff Gabrielli); *Shah v. Politico LLC*, No. 5:25-cv-5213 (N.D. Cal.) (Plaintiff Shah); *Shah, et al. v. MyFitnessPal, Inc.*, No. 5:25-cv-4430 (N.D. Cal.) (Plaintiffs Shah and Wiley); *Wiley, et al. v. Universal Music Group, Inc.*, No. 5:25-cv-3095 (N.D. Cal.) (Plaintiffs Shah and Wiley); *De Ayora, et al. v. Inspire Brands, Inc., et al.*, No. 3:25-cv-3645 (N.D. Cal.) (Plaintiff Wiley).

does not allege Hilton Worldwide collected ***Plaintiffs'*** personal information. Plaintiffs' allegations arise from merely browsing the Website. As the FAC demonstrates, "seeking hotel rooms" (at most) implicated information about a ***hotel's*** features or location and a visit date. Plaintiffs still do not allege they actually entered any actionable information on the Website (e.g., their "demographic information"). Instead, Plaintiffs allege only an illusory harm based on hypothetical and generalized allegations—the opposite of "concrete" and "particularized." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "As Plaintiff[s do] not clearly allege what personalized information of [theirs] was actually collected, [they] do[] not identify any harm to [their] privacy" and fail to establish standing. *Hughes v. Vivint, Inc.*, 2024 WL 5179916, at *5 (C.D. Cal. July 12, 2024), *adopted*, 2024 WL 5179917 (C.D. Cal. Aug. 5, 2024); *see also Gabrielli v. Insider, Inc.*, 2025 WL 522515, at *4 (S.D.N.Y. Feb. 18, 2025) (dismissing CIPA claims brought by ***Plaintiff Gabrielli*** for failure to allege an injury-in-fact); *Saeedy, et al. v. Microsoft Corp.*, 2023 WL 8828852, at *7 (W.D. Wash. Dec. 21, 2023) (dismissing CIPA, invasion of privacy, and similar claims brought by ***Plaintiff Shah*** for failure to allege injury-in-fact).

In any event, Plaintiffs fail to plead their alleged harm "has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Popa v. Microsoft Corp.*, 153 F.4th 784, 789 (9th Cir. 2025) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021)). Tracking information such as a hotel visit dates, hotel room preference, and location, does not rise to the level of "embarrassing, invasive, or otherwise private information" that would intrude on Plaintiffs' privacy." *Popa*, 153 F.4th at 791. Moreover, Plaintiffs do not allege that the "Third Parties" at issue or Hilton Worldwide "made public or otherwise widely disseminated" Plaintiffs' information so as to resemble a public disclosure of Plaintiffs' allegedly private information. *Kieliszewski v. Relias, LLC*, 2026 WL 262766, at *7 (E.D.N.C. Jan. 30, 2026).

***No Diminution in Value*:** The FAC summarily alleges "Plaintiffs and Class members have also suffered harm by diminution of the value of their private and personally identifiable information and communications." FAC ¶ 216. This ignores that "[c]ourts have routinely rejected the proposition that an individual's personal identifying information has an independent monetary value." *Welborn v. IRS*, 218 F. Supp. 3d 64, 78 (D.D.C. 2016) (collecting cases); *Saeedy*, 2023 WL 8828852, at *7 (noting ***Plaintiff Shah and co-Plaintiffs*** failed to allege "they provided their data in a transaction in which they were not paid the fair value for the data provided.").

Here, the FAC makes only generalized allegations about the value of certain data. *See* FAC ¶¶ 109-112. None of the Plaintiffs plausibly allege "that they personally lost the opportunity to sell their information or that the value of their information was somehow diminished after it was collected by [a third party.]" *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d at 931-32. Because Plaintiffs have not demonstrated the alleged "conduct resulted in some concrete and particularized harm, they have not articulated a cognizable basis for standing pursuant to Article III." *Id.* at 932. Accordingly, each of Plaintiffs' claims fail for lack of Article III standing.

### F. Claims 1–2: Plaintiffs' Invasion of Privacy Claims Fail to Allege Intentional or "Highly Offensive" Conduct.

Plaintiffs agreed under the HH Terms that New York law applies to their claims, and New York does not recognize a cause of action for invasion of privacy or intrusion upon seclusion, foreclosing them. *See* discussion *supra* Section B. However, even if the Court applied California law (it should not), Plaintiffs *still* fail to state an intrusion upon seclusion or invasion of privacy claim. Courts consider these claims together because of the similarities in their analyses. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022). To determine whether plaintiffs have sufficiently alleged these claims, courts first ask whether the complaint alleges the defendant "'***intentionally intrude[d]***, physically or otherwise, upon the solitude or seclusion of another."

*Shulman v. Group W Productions, Inc.*, 955 P.2d 469, 490 (Cal. 1998) (emphasis added) (citations omitted). Second, under either theory, courts must also determine whether the invasion of privacy is "sufficiently serious in nature, scope, and actual or potential impact to constitute an ***egregious breach of the social norms*** underlying the privacy right." *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1193 (N.D. Cal. 2020) (emphasis added) (internal quotation marks and citation omitted). Plaintiffs cannot satisfy either prong.

First, the FAC does not (and cannot) allege any intentional conduct. Instead, Plaintiffs allege the cookies placed on Plaintiffs' browsers were the result of defects in the "Opt Out" button rather than intentional conduct by Hilton Worldwide. *See* FAC ¶ 65 ("Defendant failed to prevent cookies from being transmitted . . ."). For this reason alone, these claims fail because they rely on an alleged error rather than intentional conduct. *See Shulman*, 955 P.2d at 490 (noting the defendant must have "intentionally intrude[d]").

Second, courts routinely reject intrusion upon seclusion and invasion of privacy claims involving website interactions where the plaintiffs do not allege the collection of their private information. As set forth above, *see* discussion *supra* Section E, Plaintiffs do not allege they provided any personal information on the Website or that Hilton Worldwide collected any private information about them. But even if Plaintiffs had alleged ***their*** personal information was involved, the information allegedly collected and disclosed would not be "highly offensive" if intercepted.

The FAC generally alleges "Private Communications" includes browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behavior, device and user information, geolocation data, session information, and referring URLs. FAC ¶ 56. Courts have concluded disclosure of each of the data elements identified in the FAC are ***not*** "highly offensive" invasions of privacy. *See In re Google, Inc. Privacy Pol'y Litig.*, 58

F. Supp. 3d 968, 973, 988 (N.D. Cal. 2014) (disclosure of "personal identifying information, browsing habits, search queries, responsiveness to ads, demographic information, declared preferences and other information" not highly offensive); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (same for browsing history); *Hammerling*, 615 F. Supp. 3d at 1089 (same for geolocation information); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (same for unique device identification number, geolocation information). Moreover, "dates of visits," "number of people," and "location preferences within a city" are not "highly offensive" or even personal information (and, here, do not concern room reservations). *See In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d at 988. "Even disclosure of very personal information"—which is ***not*** present here—"has not been deemed an egregious breach of social norms sufficient to establish a constitutional right to privacy." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014) (internal quotation marks and citation omitted). Therefore, Plaintiffs fail to satisfy either prong of the combined inquiry, and each claim should be dismissed.[7]

**G. Claims 3–4: Plaintiffs' CIPA Claims Fail to Allege Intent or Contents of Communications, and Contain Other Deficiencies.**

Plaintiffs' CIPA claims are not recognized under New York law, and must be dismissed. *See* discussion *supra* Section B. The following independent bases also require dismissal.

1. <u>The Section 631(a) Wiretapping Claim Fails to Allege the Contents of Plaintiffs' Communications or Intent to Commit an Unlawful Wiretap.</u>

Plaintiffs fail to state a wiretapping claim under Section 631(a) of CIPA. Section 631(a)

[7] Although some out-of-circuit courts in similar cookie banner lawsuits have not dismissed these two claims at the pleadings stage, *see, e.g.*, *MyFitnessPal*, *Inc.,* 2026 WL 216334, at *4-6, Hilton Worldwide respectfully disagrees with their reasoning. Indeed, "the type of information at issue, standing alone, may not involve information in which users have an unqualified expectation of privacy." *Id.* at *4. To the extent Plaintiffs allege their privacy was invaded due to a "misrepresentation" in the cookie banner, they still fail to allege an invasion of privacy of *their own* data in a highly offensive manner.

prohibits "three distinct and mutually independent patterns of conduct: [(1)] intentional wiretapping, [(2)] wilfully attempting to learn the contents or meaning of a communication in transit over a wire, and [(3)] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Superior Ct.*, 583 P.2d 737, 741 (Cal. 1978). A "fourth basis for liability" exists for anyone who "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done" any of the other three 631(a) bases for liability. Cal. Penal Code § 631(a); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021). Plaintiffs fail to plead a violation of any of the four clauses.

*a. Plaintiffs cannot state a claim under Section 631(a)'s first three clauses.*

***Clause 1***: The "overwhelming weight of authority" limits this to its plain text—i.e., "telegraph[s] or telephone wire[s]." Cal. Penal Code § 631(a); *Mastel*, 549 F. Supp. 3d at 1135 (holding the first clause is inapplicable to wiretapping via the Internet, including wiretapping on a smartphone's mobile web browser). It is inconsequential that Plaintiffs (vaguely) allege they visited the Website on a "device." *See, e.g.*, FAC ¶¶ 118, 127, 136. Doing so does not bring the communications within the scope of the first clause, and there is no basis for liability.

***Clause 2***: Hilton Worldwide cannot be liable under the second clause because Plaintiffs allege Hilton Worldwide "owns and operates" the Website. FAC ¶ 25. Hilton Worldwide is therefore a party to the communication. "[I]t is established that a party to the communication cannot be liable for recording its own conversations under § 631(a)." *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 744 (N.D. Cal. 2023).

Moreover, Plaintiffs fail to allege their visits to the Website involved the interception of the *"contents"* of their communications, as required under the second clause. Under Section 631(a), the "contents" of a communication means "the substance, purport or meaning of [the]

communication"—i.e., the "intended message conveyed by the communication," which is distinct from "record information regarding the characteristics of the message that is generated in the course of [that] communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Non-actionable "record information" includes "webpage titles, webpage keywords, the date and times of website visits, IP addresses, page visits, purchase intent signals, and add-to-cart actions." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 n.9 (N.D. Cal. 2023).

While Plaintiffs allege several types of "record information" are transmitted to third parties through interactions on the Website, they do not allege the "contents" of ***their*** communications were ever intercepted. Plaintiffs also do not allege they ever inputted data by completing form fields or that they conducted searches on the Website that could include the "contents" of their communications. Plaintiffs merely allege they selected the "Opt Out" button on the banner and then browsed the Website. FAC ¶¶ 115-16, 124-25, 133-34. That is not enough.[8]

A court "will not assume out of whole cloth what the contents of any communications were." *Heiting v. Taro Pharms. USA*, 709 F. Supp. 3d 1007, 1018, 1021 (C.D. Cal. 2023) (granting motion to dismiss). For example, in *Heiting*, the court dismissed similar website wiretapping claims, finding that allegations the website operator "generally collects personal information from website users," such as "personal identifiers," and "may deduce additional demographic details," were not sufficient to allege "contents" of communications within the purview of California's wiretapping statute. *See id.* at 1018; *see also King v. Hard Rock Cafe Int'l (USA), Inc.*, 2025 WL 1635419, at *4 (E.D. Cal. June 9, 2025) (finding no "contents" for, among other items, descriptive

[8] Courts regularly dismiss claims brought by Plaintiffs and Plaintiffs' counsel in similar lawsuits. *See, e.g.*, *MyFitnessPal*, 2026 WL 216334, at *6 (dismissing Plaintiff Shah's claim in identical lawsuit); *Wiley v. Universal Music Grp., Inc.*, 2025 WL 3654085, at *7 (N.D. Cal. Dec. 17, 2025) (dismissing Plaintiff Wiley's claim in identical lawsuit); *D'Antonio v. Smith & Wesson Inc.*, 2026 WL 446310, at *4 (N.D. Cal. Feb. 17, 2026) (dismissing claim in identical lawsuit); *Walsh v. Dollar Tree Stores, Inc.*, 2025 WL 2939229, at *17 (N.D. Cal. Oct. 16, 2025) (same).

URLs on hotel website when plaintiff failed to allege that ***she*** created those URLs).

Here, the absence of "allegations describing the content of those conversations" dooms Plaintiffs' wiretapping claim. *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 833 (N.D. Cal. 2020) (dismissing breach of contract claims and noting generic allegations provided "no basis upon which to infer that Plaintiffs' 'sensitive personal information' is implicated"). Therefore, Plaintiffs' allegations fail to plausibly allege liability under the second clause.

***Clause 3*****:** Section 631(a)'s third clause is derivative of the first two and necessarily fails here as a matter of law. *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) ("Plaintiffs must establish that the information at issue . . . was obtained through a violation of the first or second clauses. Because [p]laintiffs have not done so, they also have failed to plead a violation of the third clause of § 631(a).").

*b. Plaintiffs fail to allege aiding and abetting liability under the fourth clause.*

The fourth clause of 631(a) applies when a defendant "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section." Cal. Penal Code § 631(a). Plaintiffs must allege that Hilton Worldwide had "both knowledge of the conduct that will violate the statute ***and a purpose of aiding, agreeing with, or employing the third party to commit those acts***." *Smith v. YETI Coolers, LLC*, 2024 WL 4539578, at *4 (N.D. Cal. Oct. 21, 2024) (emphasis added).

***Hilton had no intent to unlawfully wiretap*****:** First, to the extent Plaintiffs allege Hilton Worldwide had a purpose to violate Section 631(a), their allegations are insufficient. For example, in *Esparza v. UAG Escondido A1 Inc.*, the plaintiff alleged that the defendant car dealership was liable under Section 631(a) on an aiding and abetting liability theory because the dealer embedded a third-party's chat software onto its website. *See* 2024 WL 559241, at *1 (S.D. Cal. Feb. 12,

2024). The court held that simply alleging a website operator knowingly implemented certain software on its website was insufficient to establish aiding and abetting liability under clause four. *Id.* at *6*; see also Smith v. YETI Coolers, LLC*, 2025 WL 877127, *1 (N.D. Cal. Mar. 14, 2025).

Likewise, Plaintiffs here allege that Defendant willfully aided and abetted Third Parties "[b]y configuring the Website . . . in [a] manner" that it "caused Plaintiffs' [] browsers to store the Third Parties' cookies and to transmit those cookies . . . alongside Private Communications . . . to the Third Parties without Plaintiff[s'] and Class members' consent." FAC ¶ 191. However, Plaintiffs also allege that Hilton Worldwide used a Cookie Banner to affirmatively disclose cookies and provide options to customize the Website experience. *See* FAC ¶ 1. Plaintiffs' allegations, accepted as true, show Hilton did *not* intend to aid the surreptitious collection of communications. At best, the FAC suggests that the alleged failure of the "Opt Out" button was a good faith mistake rather than *intentional* conduct.

***The "Third Parties" had no intent to unlawfully wiretap*: **Second, in any event, Plaintiffs failed to plead that the "Third Parties" have the predicate liability necessary for an aiding and abetting claim. As set forth above, the first clause of section 631(a) fails as a matter of law when applied to internet communications. Further, there is no underlying violation of the second clause because the "Third Parties" lack the requisite intent.

Alleging a website operator allows third-party cookies to operate on its website does not plausibly allege that those third parties intended to commit an unlawful wiretap. Indeed, courts have rejected similar allegations. *See, e.g.*, *B.K. v. Desert Care Network.*, 2024 WL 5338587, at *3 (C.D. Cal. Aug. 22, 2024) (rejecting arguments that Meta "intentionally received and used user data" from the defendants because plaintiffs "d[id] not allege that Meta knew or should have known that the data it received from [d]efendants was collected without users' consent"). In

*Wilson v. Google LLC*, this Court recently confirmed this approach, denying a motion to dismiss where the complaint alleged the defendant "intentionally encourage[d]' website operators to use its tools in a way that circumvents users' privacy settings." 2025 WL 901941, at *6 (N.D. Cal. Mar. 25, 2025). Those allegations are nothing like the unintentional malfunction alleged here. Therefore, Plaintiffs fail to state a claim for aiding and abetting liability under the fourth clause.

2. <u>Plaintiffs' Section 638.51 Pen Register Claim Fails Because It Does Not Apply to the Internet and, Regardless, Statutory Exclusions Apply.</u>

Pen registers are devices law enforcement physically install to track every outbound number that a telephone dials, and trap and trace devices are used by law enforcement to record every inbound number that a telephone receives by using electronic impulses to reveal the telephone number. *See Smith v. Maryland*, 442 U.S. 735, 736 n.1 (1979); *United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1112 (9th Cir. 2005), *amended on denial of reh'g*, 437 F.3d 854 (9th Cir. 2006). Neither device captures the "contents" of the telephone call. Plaintiffs allege that the third-party "cookies and the corresponding software code" each constitute "pen registers" because those cookies captured "the IP address and user-agent information" from Plaintiffs' computers. FAC ¶ 204. This novel theory fails for numerous reasons.

***Plain Language*:** In 2015, the California Legislature enacted Section 638.51 and its accompanying statutes through A.B. 929 to allow California law enforcement agencies to obtain authorization to install pen register or trap and trace devices like their federal counterparts without running afoul of state law. *See* Request for Judicial Notice ("RJN"), Danaher Decl., Ex. 3, Stats. 2015, Ch. 204, Sec. 2 ("An Act to add Sections 638.50, 638.51, 638.52, and 638.53 to the Penal Code") ("A.B. 929"). The plain language of California's pen register statutes limits their application to telephones and the dialing, routing, addressing or signaling information collected through these devices. Among other requirements, a court order authorizing the use of a pen

register or trap and trace device must specify the identity of the person "in whose name . . . the ***telephone line*** to which the pen register or trap and trace device is to be attached," and the number and location of the "***telephone line***" to which the pen register or trap and trace device would be attached. Cal. Penal Code § 638.52(d)(1), (3) (emphasis added). Moreover, Section 638.52, also enacted as part of A.B. 929, provides that information acquired pursuant to a pen register or trap and trace device may only disclose location information "to the extent that the location may be determined from the ***telephone number***." Cal. Penal Code § 638.52(c) (emphasis added). Thus, the plain language of A.B. 929 confirms it applies only to telephone numbers.

***Legislative History*:** A.B. 929's legislative history underscores that the California legislature did not intend the statutes to apply to websites collecting IP addresses. A.B. 929 does not mention IP addresses or imply IP addresses are within the bill's purview. *See* RJN, Danaher Decl., Ex. 4, Senate Committee on Public Safety Analysis of California Assembly Bill 929, California 2015-2016 Regular Session (June 16, 2015). Instead, the Legislative Counsel's Digest preceding the bill states that A.B. 929 "would clarify that any location information obtained by a pen register or a tra[p] and trace device is limited to the information that can be determined from the ***telephone number***." RJN, Danaher Decl., Ex. 3, at 1 (emphasis added); *see also* Danaher Decl. Ex. 4, at 11 ("Pen registers and track and trace devices generally track incoming and outgoing ***telephone calls***.") (emphasis added). And, given that A.B. 929 was enacted ***in 2015***, there can be no plausible argument that the Legislature was unaware of IP addresses or internet communications. Plaintiffs' invocation of CIPA's preamble language regarding "new devices and techniques" does not extend the statutes beyond telephones. FAC ¶ 201.

***Plaintiffs Plead These Tools Generally Capture Contents*:** In any event, Plaintiffs'

generalized wiretapping allegations defeat their specific pen register claim.[9] The pen register statutes define a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, ***but not the contents*** of a communication." Cal. Penal Code § 638.50(b) (emphasis added). By specifically pleading that "some" contents of communications are intercepted (FAC ¶ 157), Plaintiffs plead themselves out of a pen register claim. *See Mitchener v. CuriosityStream, Inc.*, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025), *appeal dismissed,* 2025 WL 3191910 (9th Cir. Oct. 23, 2025).

***No Dialing, Routing, Addressing, or Signaling Information:*** Lastly, Plaintiffs fail to allege how any of their own information was used by the "Third Parties" as "dialing, routing, addressing, or signaling information." Plaintiffs allege that "[a]t all relevant times, Defendant caused third-party cookies and software code—which are pen registers—to be placed on Plaintiffs' and Class members' browsers and devices, and/or to be used to transmit Plaintiffs' and Class members' IP address and user-agent information." FAC ¶ 205. Yet, the FAC does not allege that such information was actually used during Plaintiffs' alleged Website visits. Multiple courts facing Plaintiffs' identical, generalized allegations have dismissed their pen register claims. *See MyFitnessPal*, 2026 WL 216334, at *8 (dismissing Plaintiff Shah's claim); *Universal Music Grp.*, 2025 WL 3654085, at *9 (dismissing Plaintiff Wiley's claim). This Court should follow suit.

**H. Claims 5-8: Plaintiffs' Fraud, Contract, and Quasi-Contract Claims Fail to Allege Damages and Suffer Further Deficiencies.**

1. <u>Claims 5, 7, 8 Fail for Lack of Damages.</u>

[9] Like the CIPA wiretapping claim, courts have dismissed Plaintiffs' pen register claims for similarly generalized allegations. *See MyFitnessPal*, 2026 WL 216334, at *8 (dismissing Plaintiff Shah's claim); *Universal Music Grp.*, 2025 WL 3654085, at *9 (dismissing Plaintiff Wiley's claim); *Smith & Wesson Inc.*, 2026 WL 446310, at *5 (dismissing claim).

Under New York law, Plaintiffs' claims for common law fraud, deceit and/or misrepresentation (Claim Five), breach of contract (Claim Seven), and breach of the implied covenant (Claim Eight) each fail because they do not allege actual damages. *Connaughton v. Chipotle Mexican Grill, Inc.*, 29 N.Y.3d 137, 142 (2017) (holding that in New York, fraud damages are limited to "actual pecuniary losses" under the "out-of-pocket" rule). Even if the Court were to apply California law (it should not), these claims still fail for the same reasons. *See Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 66 (2007) ("[A] defrauded party is ordinarily limited to recovering out-of-pocket damages.") (citation omitted); *Ruiz v. Gap, Inc.*, 380 F. App'x 689, 692 (9th Cir. 2010) (rejecting nominal damages argument and noting "a breach of contract claim requires a showing of appreciable and actual damage.").

Plaintiffs' fraud damages boil down to "diminution of the value of their private and personally identifiable information and communications." FAC ¶ 216. Under their breach of contract and implied covenant claims, Plaintiffs allege that they "were damaged in an amount at least equal to the difference in value between that which was promised and Defendant's partial, deficient, and/or defective performance." FAC ¶ 239. Plaintiffs do ***not*** allege they intended to participate in a market for their data or paid for services for which they did not receive full value. In similar cases, courts resoundingly conclude these allegations fail to plausibly allege damages. *In re JetBlue Airways Corp. Privacy Litig.*, the plaintiffs alleged violations of their privacy rights by unlawful transfer and disclosure their personally identifiable travel information to a third party without authorization. 379 F. Supp. 2d 299, 303 (E.D.N.Y. 2005). The court dismissed plaintiffs' contract and unjust enrichment claims, because "the only damage that can be read into the present complaint is a loss of privacy" and "this is not a damage available in a breach of contract action." *Id.* at 326. The court did not permit plaintiffs to amend to allege "the loss of the economic value

of their information" because "there is absolutely no support for the proposition that the personal information of an individual JetBlue passenger had any value for which that passenger could have expected to be compensated." *Id*. at 327. *See also Shah v. Politico LLC*, 2026 WL 323269, at *10 (N.D. Cal. Feb. 6, 2026) (dismissing Plaintiff Shah's claims on same grounds); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *13 (N.D. Cal. July 14, 2025) (dismissing Plaintiff Gabrielli's breach of contract claim on same grounds).

Likewise, Plaintiffs do not allege they paid money to browse the Website. "[A] benefit of the bargain measure of damages is intended to give the injured party the benefit of his bargain and insofar as possible to place him in the same position he would have been in had the promisor performed the contract." *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 833 (N.D. Cal. 2020) (internal quotation marks and citation omitted). Because Plaintiffs do not allege that they paid anything to browse the Website, they fail to adequately alleged damages for their fraud, breach of contract, and breach of implied covenant claims. These claims should be dismissed.

"New York law also requires that a fraud claim, raised in a case that stems from breach of contract, be sufficiently distinct from the breach of contract claim.'" *Great Earth Int'l Franchising Corp. v. Milks Dev.*, 311 F. Supp. 2d 419, 425 (S.D.N.Y. 2004) (citation omitted). "Even an allegation of an intentionally false statement that meets all the elements of a proper fraud claim cannot support a cause of action where a fraud claim is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement.'" *Id.* Here, Plaintiffs' fraud claim relies on the same allegations as their claim for breach of contract, namely, that "Defendant's relationship with its users is governed by the Website's Privacy Statement" and "Defendant breached contractual duties and violated promises by causing third-party cookies to be stored on

consumers' devices and browsers that enabled the Third Parties to track and collect Plaintiffs' and Class member's Private Communications." *Compare* FAC ¶¶ 235-36 *with* ¶¶ 213-214. For this additional reason, Plaintiffs' fraud claim should be dismissed.

2. <u>Plaintiffs' Equitable Claims and Remedies are Foreclosed.</u>

"Generally, claimants seeking equitable relief . . . must show that they have no other available or adequate remedy." *Tibbetts v. President & Fellows of Yale Coll.*, 303 F. App'x 935, 936 (2d Cir. 2008). "Under the traditional equitable analysis, a plaintiff seeking injunctive relief must demonstrate . . . that remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *SAS Inst., Inc. v. World Programming Ltd.*, 952 F.3d 513, 527 (4th Cir. 2020).

Here, Plaintiffs have not pled that they lack an adequate remedy at law and they affirmatively seek damages for alleged injuries. *See* FAC ¶¶ 167, 178, 198, 209, 221, and 240. Plaintiffs "rel[y] on 'the same factual predicates'" under their unjust enrichment claim as alleged under their fraud, deception, and/or misrepresentation claims, for which they allege an adequate legal remedy exists. *Compare* FAC ¶ 224 ("Defendant created and implemented a scheme to increase its own profits through a pervasive pattern of false statements and fraudulent omissions.") *with id.* ¶ 212 ("Defendant fraudulently and deceptively informed Plaintiffs and Class members that they could 'Opt Out' of cookies.") *and* ¶ 214 ("Defendant also gained financially from, and as a result of, its breach."). Under *Sonner* and its progeny, the FAC alleges adequate legal remedies, and Plaintiffs' unjust enrichment claim and equitable relief—including the Prayer—are foreclosed equitable remedies that should be dismissed. *See* FAC Prayer ¶¶ E, F, G. *See Edleson v. Travel Insured Int'l, Inc.*, 2021 WL 4334075, at *6 (S.D. Cal. Sept. 23, 2021) ("[A] plaintiff may seek equitable relief for past harm only if he has no adequate remedy at law.").

3. Plaintiffs' Unjust Enrichment Claim is Duplicative of the Contract Claim.

"Under New York law, an unjust enrichment claim cannot survive where it simply duplicates, or replaces, a conventional contract or tort claim." *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014). Alternatively, "[u]nder California law, unjust enrichment is an action in quasi-contract," which "cannot lie where a valid express contract covering the same subject matter exists between the parties." *Gerlinger v. Amazon.Com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) (citation omitted).

Plaintiffs rely on the language of an alleged contract as the basis for their unjust enrichment claims. *Compare* FAC ¶ 225 (unjust enrichment) ("Defendant was unjustly enriched . . . through its misrepresentation that users could 'Opt Out' of cookies) *with id.* ¶ 235 (breach of contract) ("The Website's Privacy Statement contains enforceable promises that Defendant made to Plaintiffs [] including, . . . If you would like to opt out of the sale of your personal information, you may do so by clicking on the banner. . . ."). "Accordingly, a valid express contract covering the same subject matter exists between the parties, and therefore an action in quasi-contract is inappropriate." *Gerlinger v. Amazon.Com, Inc.*, 311 F. Supp. 2d at 856 (N.D. Cal. 2004) (holding that plaintiffs cannot plead unjust enrichment in the alternative when they rely on contract); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290 (S.D.N.Y. 2014) (dismissing unjust enrichment claim as "merely duplicative of their other causes of action."); *Politico*, 2026 WL 323269, at *9 (N.D. Cal. Feb. 6, 2026) (dismissing Plaintiff Shah's claim in identical suit because "[t]he fatal flaw in Shah's unjust enrichment claim is his insistence, elsewhere in his complaint, that an enforceable contract exists between the parties").

4. Plaintiffs' Breach of Implied Covenant Claim is Superfluous

"New York law does not recognize a separate cause of action for breach of the implied

covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pleaded." *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 451-52 (S.D.N.Y. 2014) (citation omitted). Likewise, in California, "[i]f the allegations in a breach of implied covenant claim do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215, 1221 (N.D. Cal. 2011).

Here, for their breach of contract and implied covenant claims, Plaintiffs allege that "Defendant's relationship with its users is governed by the Website's Privacy Statement," quote the same provisions from that alleged contract, regurgitate the same word-for-word allegations in support of breach, and seek the same relief. *Compare* FAC ¶ 234 *with id*. ¶ 242, *id*. ¶ 236 *with id*. ¶ 244, and *id*. ¶ 240 *with id*. ¶ 251. Since Plaintiffs' allegations in support for their claims for breach of the implied covenant and breach of contract are the same, the duplicative implied covenant claim must be dismissed.

5. Plaintiffs Do Not Adequately Plead the Requisite Knowledge or Intent to Support their Fraud Claim.

Under New York law, the elements of common law fraud are "misrepresentation, ***knowledge of its falsity***, ***intent to defraud***, justifiable reliance and resulting damage." *Helm v. Alderwoods Grp., Inc.*, 696 F. Supp. 2d 1057, 1079 (N.D. Cal. 2009) (emphasis added). Rule 9(b) requires these elements "must be pled with sufficient particularity." *Helm* at 696 F. Supp. 2d at 1079-80; *see also Lapin* 238 A.D.3d at 1129 ("When a plaintiff brings a cause of action based upon fraud, the circumstances constituting the wrong shall be stated in detail."). Under Rule 9(b), Plaintiffs must plead specific "facts demonstrating that defendants knew the statements were false when they made them." *Id.* at 1080 (dismissing fraud claims).

Plaintiffs here allege that the misrepresentations about the ability to "opt out" of certain cookies were "known exclusively to, and actively concealed by Defendant . . . at the time they were made. Defendant knew, or *should have known*, how the Website functioned . . . and the third-party cookies in use on the Website, through testing the Website, evaluating its performance metrics . . . or otherwise, and knew, or *should have known*, that the Website's programming allowed the third-party cookies to be placed. . . ." FAC ¶ 214 (emphasis added). Plaintiffs do not allege any specific facts that Hilton Worldwide *knew* that the alleged statements were false aside from a vague reference to "testing" of the Website—and the remaining allegations suggest only that Hilton Worldwide *should have known*—which does ***not*** amount to the requisite knowledge. Further, Plaintiffs fail to make *any* allegation that Defendant intended to defraud them. Just as Plaintiffs' wiretapping and trespass claims suggest only a mistake (*see* discussion *supra* section G and *infra* section I), so too here the allegations do not support an inference of knowledge of falsity or intent to deceive. The fraud claim should be dismissed on this additional basis.

**I. Claim 9: The Trespass to Chattels Claim Fails to Allege Intentional Conduct or Significant Interference with Possession.**

Under New York law, "[t]he cause of action alleging trespass to chattel" is only viable in a case like this when there is some "indication that the condition, quality or value of the computer, its hard drive, or any of the information on the computer was diminished . . . ." *Twin Sec., Inc. v. Advocate & Lichtenstein, LLP*, 113 A.D.3d 565, 565-66 (NY App. Div. 1st Dept.). Similarly, as set forth by the California Supreme Court in *Intel Corp. v. Hamidi*, "[u]nder California law, decisions finding electronic contact to be a trespass to computer systems have generally involved some actual or threatened interference with the computers' functioning." *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 846 (N.D. Cal. 2024) (internal quotation marks omitted) (citing *Hamidi*, 71 P.3d at 926). Under California law, trespass to chattels additionally requires "an ***intentional*** interference with the

***possession*** of personal property' causes injury." *Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 968 (9th Cir. 2024) (emphasis added) (citation omitted).

Here, the FAC fails to explain how the alleged conduct caused "a significant reduction in service" or "diminished condition, quality or value" of Plaintiffs' devices, let alone how this was an "intentional" interference to Plaintiffs' "possession of personal property." *Twin Sec., Inc. v. Advocate & Lichtenstein, LLP*, 113 A.D.3d at 565-66. The FAC makes only conclusory allegations claiming Plaintiffs experienced a "loss of value" and "[r]eduction of storage, disk space, and performance" of their devices (FAC ¶ 256), but these vague claims do not constitute the requisite "harm to the condition, quality or material value of the chattels at issue" ("*J. Doe No. 1" v. CBS Broad. Inc.*, 24 A.D.3d 215, 215, 806 N.Y.S.2d 38, 39 (App. Div. 1st Dept.) or "significant reduction in service." *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1069.

In other words, Plaintiffs failed to allege that the cookies—which are merely "small text files" (FAC ¶ 53) ubiquitous on the Internet—"physically impair[ed] the functioning" of Plaintiffs' devices. Courts have uniformly dismissed Plaintiffs' trespass to chattels claims asserted in other recent lawsuits for failure to plead these facts. *See, e.g.*, *MyFitnessPal*, 2026 WL 216334, at *9 (Plaintiff Shah); *Universal Music Grp.*, 2025 WL 3654085, at *11 (Plaintiff Wiley).

**J. <u>CONCLUSION</u>**

For the reasons stated, Hilton Worldwide respectfully requests that the Court grant its Motion to Dismiss Plaintiffs' FAC in its entirety.

Respectfully submitted,

Date: February 20, 2026

*<u>/s/ Benjamin Boyd</u>*
Benjamin Boyd (VSB #28427)
DLA Piper LLP (US)
500 8th Street, N.W.

Washington, D.C. 20004
(202) 799-4502
benjamin.boyd@us.dlapiper.com

Isabelle Ord (*pro hac vice*)
DLA Piper LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA 94105
(714) 878-9849
isabelle.ord@us.dlapiper.com

Ashley L. Barton (*pro hac vice*)
Matthew C. Danaher (*pro hac vice*)
DLA Piper LLP (US)
4365 Executive Drive, Suite 1100
San Diego, CA 92101
(619) 699-2781
ashley.barton@us.dlapiper.com
matt.danaher@us.dlapiper.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 20th day of February, 2026, a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which will send a notice of electronic filing (NEF) to all counsel of record.

*/s/ Benjamin Boyd*
Benjamin Boyd